**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                          No. CR 14-2783 JB

THOMAS R. RODELLA
THOMAS R. RODELLA, JR.,

       Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**

     **THIS MATTER** comes before Court on: (i) the Defendant Rodella's Request for Jury to be Drawn from Northern New Mexico Jury Panel, filed September 5, 2014 (Doc. 39)("Request"); and (ii) the Plaintiff United States' Motion to Deny Request, filed September 9, 2014 (Doc. 47)("Motion to Deny"). The Court held a hearing on September 11, 2014. The primary issues are: (i) whether the Jury Selection Plan of the United States District Court for the District of New Mexico ("Jury Plan") requires the Court to select a venire from the Central Division if the case is tried in Albuquerque, New Mexico; (ii) whether the Court can deviate from the requirements of the Jury Plan in the interest of justice; and (iii) whether drawing a jury from the Central Division violates Defendants Thomas R. Rodella's rights under the Sixth Amendment to the Constitution of the United States when he resides in the Northern Division and the alleged acts occurred in the Northern Division. Because the Santa Fe courthouse is not available for the trial in this case, because the Jury Plan requires the Court trying a case in Albuquerque to use a Central Division draw, because the Jury Plan does not allow the Court to deviate from its requirements in the interest of justice, and because a draw of the Central

Division will not violate Rodella's rights under the Sixth Amendment to have a jury that represents a fair cross section of the community, the Court will deny Defendant's Request.

## FACTUAL BACKGROUND

The Superseding Indictment, filed September 9, 2014 (Doc. 55)("Indictment"), alleges that on March 11, 2014, in Rio Arriba County, New Mexico, Rodella, while acting under color of law, subjected a person to "unreasonable seizure by a law enforcement officer."  Indictment at 1.  Specifically, Rodella allegedly used unreasonable force and caused an "unlawful arrest by deputies of the Rio Arriba County Sheriff's Office."  Indictment at 1.  "This offense resulted in bodily injur[ies]" to a person and included the "use and threatened use of a dangerous weapon."  Indictment at 1.  The Indictment further alleges that Rodella carried and brandished a firearm "during and in relation to a crime of violence for which the defendant may be prosecuted in a court of the United States," and that "in furtherance of such crime, possessed and brandished said firearm."  Indictment at 1-2.

## PROCEDURAL BACKGROUND

A grand jury indicted Rodella under 18 U.S.C. § 242 for willfully depriving a person "of the right, protected by the Constitution and laws of the United States, not to be subjected to unreasonable seizure by a law enforcement officer."  Indictment at 1.  The Court, through its Courtroom Deputy ("CRD"), inquired where the parties wanted to try the case and from what Division the venire should be drawn.  Rodella expressed a desire to try the case in Santa Fe.  The CRD contacted the chambers of the Honorable Martha A. Vazquez, United States District Judge for the District of New Mexico, who sits in Santa Fe, to see if it could use her courtroom for the

week of September 22, 2014, when the case is set for trial.  The Court learned that the courtroom in Santa Fe is unavailable that week.

Rodella now requests that the Court draw a jury panel from the Northern Division of the District of New Mexico, which includes Colfax, Curry, De Baca, Harding, Los Alamos, Mora, Quay, Rio Arriba, San Miguel, Santa Fe, Taos, Roosevelt, and Union Counties.  <u>See</u> Request at 1.  Rodella argues that the "underlying events of the instant case took place in Rio Arriba County," which is located in the Northern Division, and that he "requests a jury of his peers to come from the Northern Division jury panel."  Request at 2.  Rodella notes that no courtroom is available the week of September 22, 2014 -- the week set for trial -- at the Santiago E. Campos United States Courthouse in Santa Fe, New Mexico, which is in the Northern Division.  Request at 1.

The United States responds by moving for the Court to deny Rodella's request, by arguing that it is "contrary to the Jury Selection Plan for the United States District Court for the District of New Mexico."  Motion to Deny at 1.  The United States argues that the United States District Court for the District of New Mexico has implemented the Plan in accordance with 28 U.S.C. § 1861.  <u>See</u> Motion to Deny at 1.  The United States contends that the "Plan established three petit jury divisions designated as the Northern, Central and Southern Divisions," and that "the Plan specifies that the jurors 'will be drawn for each place of *holding court*.'"  Motion to Deny at 1 (quoting Jury Selection Plan (D.N.M.) at 1 ("Jury Plan"))(emphasis in motion but not in original).  The United States contends that Rodella has not requested that the trial be held in Santa Fe, but instead requests that jurors "be drawn from the Northern Division jury panel,"

which is "from a division other than the place of holding court," and contrary to "the clear mandate of the Plan."  Motion to Deny at 1-2.

The United States provides additional arguments for the Court to deny Rodella's request. See Motion to Deny at 2-6.  The United States argues that Rodella has not followed the process, which 28 U.S.C. § 1867(a) establishes, to challenge the jury pool.  See Motion to Deny at 2.  The United States also argues that Rodella has no substantive right to draw a jury from the Northern Division, because the jury, under the Plan, is to be drawn from the "place of holding court, not the site of the crime."  Motion to Deny at 3.  The United States argues that, to challenge the jury composition, Rodella must challenge the "community composition of a jury pool," which requires a showing that: (i) "the group alleged to be excluded is a 'distinctive' group in the community," (ii) the "representation of this group in venires from which the juries are selected is not fair and reasonable in relation to the number of such persons in the community," and (iii) this "underrepresentation is due to systematic exclusion of the group in the jury-selection process." Motion to Deny at 3 (quoting Duren v. Missouri, 439 U.S. 357, 364 (1979)).  The United States contends that "[g]eographic location does not define a distinctive group" and that Rodella "has not articulated any basis for objecting to a Central Division jury panel."  Motion to Deny at 3 (citing United States v. Green, 435 F.3d 1265, 1272 (10th Cir. 2006)).  The United States also argues that Rodella is requesting a Northern Division jury pool, because he "is seeking to tap into a jury pool that has been inundated with sustained coverage by local news media."  Motion to Deny at 4-5.

The Court held a hearing on September 11, 2014.  At the hearing, Rodella requested that the jury be drawn either from both the Northern and Central Divisions, or from the entire District

of New Mexico.[1]     See Transcript of Hearing at 7:13-7:18 (taken September 11, 2014)(Gorence)("Tr.").[2]   Rodella argued that the Jury Plan as applied to him is "arbitrary and capricious." Tr. at 7:19-8:9 (Gorence).  Specifically, Rodella argued that, under the Jury Plan, a computer randomly selected a judge sitting in Albuquerque judge to hear the case; then, even though the Court expressed willingness to try the case in Santa Fe, which is in the Northern Division, by random chance, no courtroom is available during the week of the trial.   Tr. at 7:23-8:9 (Gorence).  Rodella contended that there is no rational basis for requiring a jury to be drawn from the Division in which the court sits.  See Tr. at 8:10-8:12 (Gorence).  Rodella argued that the trial "is a political trial,"[3] and similar to the great political trials of the Sixteenth and Seventeenth Centuries that Antonin Scalia, Associate Justice of the Supreme Court of the United States, discussed in Crawford v. Washington, 541 U.S. 36 (2004).  Tr. at 8:10-9:3 (Gorence). Rodella argued that when there is a "great political trial[] of our day," there needs to be a fair cross-section of the community the Sixth Amendment requires.   Tr. at 8:10-9:3 (Gorence). Rodella contended that drawing a jury from the entire district, or from both the Central and Northern Divisions, would alleviate any concern that the United States has with the trial's publicity tainting the jury.  See Tr. at 11:3-11:14 (Gorence).  Rodella noted that he would "get a fair cross-section by the way the Court actually selects people who live in various counties," but

---

[1]Because of the time constraints on the Jury Selection Services in the Clerk's Office, it is too late to draw a jury from the entire District without delaying Rodella's requested trial date.

[2]The Court's citations to the transcripts of the hearing refer to the court reporter's original, unedited version.  Any final transcripts may contain slightly different page and/or line numbers.

[3]Rodella is the publicly elected sheriff of Rio Arriba County, New Mexico.

- 5 -

he contended that he wants "a fair cross-section from the entire State of New Mexico." Tr. 14:21-15:1 (Gorence).

The United States responded by arguing that 28 U.S.C. § 1867 provides for a mechanism to challenge the Jury Plan, but that Rodella has not complied with the procedures. See Tr. at 12:5-12:13 (Pena). The United States contended that the Jury Plan's random assignment of judges does not make it arbitrary and capricious. See Tr. at 12:22-13:10 (Pena). Additionally, the United States argued that it is not required to show a rational basis for opposing the Request, but rather the "only thing that the Court needs to know . . . is that the" United States refuses to consent to Rodella's request. Tr. at 13:6-13:10 (Pena). The Court asked the United States if it had "any interest in either combining the" Northern and Central Divisions or doing a "statewide venire," but the United States responded that it did not. Tr. at 13:11-13:14 (Pena, Court).

## LAW REGARDING JURY SELECTION PLANS

Congress has required every United States district court to "devise and place into operation a written plan for random selection of grand and petit jurors" that ensures that juries are "selected at random from a fair cross section of the community" and that comply with the provisions of the Federal Jury Selection Act. 28 U.S.C. §§ 1861, 1863. The written plan must be approved "by a reviewing panel consisting of the members of the judicial council of the circuit" and by either "the chief judge of the district . . . or such other active judge of that district as the chief judge of the district may designate." 28 U.S.C. § 1863. "The district court may modify a plan at any time." 28 U.S.C. § 1863. Modifications to a plan "shall become effective after approval by the panel." 28 U.S.C. § 1863. After a plan is modified, the district court must

promptly "notify the panel, the Administrative Office of the United States Courts, and the Attorney General of the United States."  28 U.S.C. § 1863.

"Once adopted, the plan is intended to provide a uniform procedure for assembling jurors in that district court binding upon each district judge."  In re United States, 426 F.3d 1, 6 (1st Cir. 2006).  A violation of a jury selection plan is treated as a violation of the Act.  See United States v. Schmidt, 711 F.2d 595, 600 (5th Cir. 1983)("Violation of a local plan is analyzed in the same manner as the Act.").  The Act provides specific requirements for challenging a violation of the Act.  See 28 U.S.C. § 1867.  If there is a "substantial failure to comply with the provisions of" the Act, then either the United States or a defendant can move to stay the proceedings or dismiss the indictment either "before voir dire begins, or within seven days after" the violation could have been discovered.  28 U.S.C. § 1867(a)-(b).  A motion to dismiss the indictment or stay the proceedings must contain a "sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions of" the Act.  28 U.S.C. § 1867(d).  Additionally, the "procedures prescribed by" 28 U.S.C. § 1867 are the "exclusive means by which a person accused of a Federal crime" or "the Attorney General . . . may challenge any jury on the ground that such jury was not selected in conformity with the provisions of" the Act.  28 U.S.C. § 1867.

A substantial violation, which requires staying the proceedings of a trial, occurs only if the violation frustrates the Act's purposes.  See United States v. Kamahele, 748 F.3d 984, 1022 (10th Cir. 2014).  A mere "technical or inadvertent deviation from the mandated procedure" is not considered to be a substantial failure to comply.  United States v. Bailey, 76 F.3d 320, 322 (10th Cir. 1996)(citing United States v. Gregory, 730 F.2d 692, 699 (11th Cir. 1984)). "A failure is considered 'substantial' when it 'frustrates one of the three principles underlying the Act': (1)

the random selection of jurors, (2) culling of the jury from a fair cross-section of the community, and (3) determination of disqualifications, exemptions, and exclusions based on objective criteria."  United States v. Kamahele, 748 F.3d at 1022 (quoting United States v. Carmichael, 560 F.3d 1270, 1277 (10th Cir. 2009)).

One United States Court of Appeals, however, reversed a district court's decision to deviate from that district's jury selection plan, despite the lack of a substantial violation.  See In re United States, 426 F.3d at 1.  In In re United States, a district court found that, even though African Americans comprised over six percent of the population in the Eastern Division of United States District Court for the District of Massachusetts, only three percent of returned jury questionnaires identified the potential juror as an African American.  See   426 F.3d at 3.  The district judge determined that this disparity was owing, in part, to out-of-date or incorrect addresses, which resulted in a large number of questionnaires being returned as undeliverable or not being returned at all.  See   426 F.3d at 3-4.  A larger percentage of questionnaires were mis-delivered or did not receive a response in "areas that contained more poor or minority inhabitants," than in other communities.  426 F.3d at 4.  While the district judge concluded that this disproportionate representation of African American jurors did not violate the Sixth Amendment, the judge decided to alleviate the under representation by directing the federal jury administrator to "draw an additional name from the master [jury] wheel, but from the same zip code, for each name to whom a questionnaire was sent" and returned as undeliverable or not returned at all.  426 F.3d at 4.  "This procedure would draw proportionately more supplemental names from zip codes where the original response rate had been low -- which the evidence showed would tend to have a larger than average population of African Americans."  426 F.3d

at 4.   The United States objected to this procedure and sought a writ of mandamus from the

United States Court of Appeals for the First Circuit, because the procedure was inconsistent with

28 U.S.C. § 1983 and with the Jury Selection Plan for the District of Massachusetts.   See 426

F.3d at 4.   The First Circuit, in an opinion that Judge Boudin wrote and Judges Stahl and Lynch

joined, held that this process deviated from the Jury Selection Plan adopted under 28 U.S.C.

§ 1863.   See 426 F.3d at 6.   The Jury Selection Plan required jurors to be drawn from a jury

wheel, containing names from the entire Division, so that each potential juror had an equal

opportunity of being drawn, and the Jury Selection Plan only permitted a supplemental jury draw

if there were a shortage of qualified jurors.   See 426 F.3d at 6.   The district judge's order

amounted "to a de facto amendment" without following the formal amendment process

established in 28 U.S.C. § 1863.   426 F.3d at 7.   Because 28 U.S.C. § 1863 establishes specific

procedures to modify a jury selection plan, the First Circuit held that, once a plan is adopted, it is

"binding upon each district judge."   426 F.3d at 6.   The First Circuit relied, in part, on the

legislative history for 28 U.S.C. § 1863 to support the notion that a jury selection plan is intended

to be binding on district court judges.   See In re United States, 426 F.3d at 6.   Specifically, the

First Circuit noted that the House Report states:

> The specific and comprehensive nature of the provisions of the act and the local
> plan will assure that there are readily available standards against which the
> selection procedures may be measured.   Thus, procedural regularity is the
> measure of the validity of the selection system.   It is an appropriate measure since
> the bill sets up a largely mechanical process in which the role of human discretion
> is minimized.   The bill does not guarantee that each venire or each jury will
> mirror the structure of the community.   It guarantees only that appropriate
> selection procedures have been used.

In re United States, 426 F.3d at 6 n.4 (quoting H. Rep. No. 90-1076 (1968), as reprinted in 1968

U.S.C.C.A.N. 1792, 1805).  The Senate report contains identical language.  See S. Rep. No. 90-891, at 34 (1967); In re United States, 426 F.3d at 6 n.4.  The First Circuit noted that the "district court has always been free to revise its jury plan in compliance with the statute," but, because the district court modified the plan on its own, without following the procedures set out in 28 U.S.C. § 1863, the First Circuit directed the district court to not implement its revised jury selection process and to follow the procedures set out in the Jury Selection Plan.  426 F.3d at 9.

## THE DISTRICT OF NEW MEXICO JURY SELECTION PLAN

The Jury Plan states:

> The Court finds that establishing within the District jury divisions, *composed of counties from which jurors will be drawn for each place of holding court*, will result in impartial trials, will avoid unnecessary expense, and will reduce burdens on persons reporting for jury service.  The Court, therefore, establishes petit jury and grand jury divisions.

Jury Plan at 1 (emphasis added).  The Jury Plan establishes three petit jury divisions within the District of New Mexico.  See Jury Plan at 1.  Unlike the Local Rules of Civil or Criminal Procedure, the Plan does not contain a provision permitting a judge to waive or deviate from the Jury Plan.  Compare Jury Plan at 1-5, with D.N.M.LR-Civ. 1.7 ("These rules may be waived by a Judge to avoid injustice."), and D.N.M.LR-Crim. 57.1 ("The Court may waive any of the Rules when necessary to meet unusual circumstances or to avoid injustice.").  The Plan, thus, requires that a petit jury be drawn from the division in which trial is held, and it does not provide for waiving or deviating from the Jury Plan.  See Jury Plan at 1-5.

## LAW REGARDING JURY COMPOSITION

The Constitution requires federal courts to try a person in the state where the crimes were committed.  The Constitution also ensures a defendant an impartial jury of the state and district

where the crime was committed.  The Courts have also read the Sixth Amendment to require that a jury selection process produce a fair cross-section of the community.

The Constitution mandates that "[t]he Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed."  U.S. Const., Art. III, § 2, cl. 3.  The Sixth Amendment requires that "[i]n all criminal prosecutions the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed."  U.S. Const. amend. VI.  This principle is reflected in rule 18 of the Federal Rules of Criminal Procedure, which provides that "the government must prosecute an offense in a district where the offense was committed."  Fed. R. Crim. P. 18.

A defendant's right to a jury that reflects a cross-section of the community is a well-established feature of American jurisprudence.  See Taylor v. Louisiana, 419 U.S. 522, 528 (1975).  The Supreme Court in Taylor v. Louisiana noted that "the American concept of the jury trial contemplates a jury drawn from a fair cross-section of the community."  419 U.S. at 527.  A criminal defendant's right to a jury drawn from a cross-section is not a mere technicality; on the contrary, "the selection of a petit jury from a representative cross-section of the community is an essential component of the Sixth Amendment right to a jury trial."  Taylor v. Louisiana, 419 U.S. at 527.

To establish a prima-facie case that a jury selection process does not produce a fair cross-section of the community as the Sixth Amendment requires, a defendant must demonstrate:

> (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

- 11 -

United States v. Kamahele, 748 F.3d at 1023 (quoting Duren v. Missouri, 439 U.S. 357, 364 (1979)).  Failure to demonstrate any one of the prima-facie elements ends a jury-composition challenge under the Sixth Amendment.  See United States v. Pepe, 747 F.2d 632, 649 (11th Cir. 1984).

With respect to the geographical parameters of the community from which the jury is selected, the Sixth Amendment's "vicinage[4] provision" provides that criminal defendants are entitled to trial "'by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law.'"  United States v. Grisham, 63 F.3d 1074, 1079 (11th Cir. 1995)(quoting U.S. Const. amend. VI).  "'Neither the language of the vicinage provision nor its legislative history suggest that the geographical area from which the jury is summoned must be smaller than the judicial district created by Congress.'"  United States v. Gould, 508 F. Supp. 2d 896, 901 (D.N.M. 2007)(Browning, J.)(quoting United States v. Grisham, 63 F.3d at 1080)(alterations omitted).  The vicinage provision does not require that any potential jurors reside in the immediate area of the occurrence of the alleged offense.  United States v. Grisham, 63 F.3d at 1080 (citing United States v. James, 528 F.2d 999, 1021 (5th Cir. 1976)).  Additionally, the Sixth Amendment does not require that the jury be drawn from an entire district.  See Ruthenberg v. United States, 245 U.S. 480, 482 (1918).

> It is contended that plaintiffs in error were not tried by a jury of the state and district in which the crime was committed, in violation of the Sixth Amendment, because the jurors were drawn not from the entire district but only from one

---

[4]The Black's Law Dictionary defines "vicinage" as "Vicinity; proximity" and as "The place where a crime is committed or a trial is held; the place from which jurors are to be drawn for trial; esp., the locale from which the accused is entitled to have jurors selected."  Black's Law Dictionary 1702 (9th ed. 2009).

> division thereof.   The proposition disregards the plain text of the Sixth
> Amendment, the contemporary construction placed upon it by the Judiciary Act of
> 1789 . . . , and the continuous legislative and judicial practice from the beginning.

Ruthenberg v. United States, 245 U.S. at 482.  See United States v. Cannady, 54 F.3d 544, 547

(9th Cir. 1995)("[T]here is no constitutional right to a jury drawn from an entire judicial district,

rather than from one division of the district . . . .  [D]emographic differences between divisions

do not render division-based jury selection invalid."); Zicarelli v. Dietz, 633 F.2d 312, 316-318

(3d Cir. 1980)(holding that there is no constitutional right to a jury selected from the whole

district despite differences between divisions).

Rule 18 of the Federal Rules of Criminal Procedure provides:

> Unless a statute or these rules permit otherwise, the government must prosecute
> an offense in a district where the offense was committed.  The court must set the
> place of trial within the district with due regard for the convenience of the
> defendant and the witnesses, and the prompt administration of justice.

Fed. R. Crim. P. 18.  The 1966 amendments to rule 18 eliminated the requirement that the

prosecution of an alleged offense must take place in the congressionally designated division, if

one exists, in which the alleged offense was committed.  See Fed. R. Crim. P. 18, advisory

committee's notes on 1966 amendment.

> The former requirement for venue within the division operated in an irrational
> fashion.   Divisions have been created in only half of the districts, and the
> differentiation between those districts with and those without divisions often bears
> no relationship to comparative size or population.  In many districts a single judge
> is required to sit in several divisions and only brief and infrequent terms may be
> held in particular divisions.  As a consequence under the original rule there was
> often undue delay in the disposition of criminal cases . . . .

Fed. R. Crim. P. 18, advisory committee's notes on 1966 amendment.  The 1979 amendments to

rule 18 were intended to eliminate inconsistency between rule 18 and the Speedy Trial Act of

- 13 -

1974, which was intended to permit the trial of a case at any place within a judicial district.  See

Fed. R. Crim. P. 18, advisory committee's notes on 1979 amendment.

> The change does not offend the . . . vicinage provisions of the Constitution. . . . [T]he Sixth Amendment defines the vicinage as "the State and district wherein the crime shall have been committed, which the district shall have been previously ascertained by law."  The latter provision makes "no reference to a division within a judicial district."  United States v. James, 528 F.2d 999 (5th Cir. 1976).  "It follows a fortiori that when a district is not separated into divisions, . . . trial at any place within the district is allowable under the Sixth Amendment . . . ."  United States v. Fernandez, 480 F.2d 726 (2d Cir. 1973).

Fed. R. Crim. P. 18, advisory committee's notes on 1979 amendment.  The 1966 and 1979

amendments to rule 18 are consistent with Congress' elimination of divisional venue in criminal

cases.

> [C]iting the elimination of divisional venue in criminal cases years earlier, that nothing at all seems to have been lost by its erasure, and that the break-up of a district into divisions is not related either to size or population anyway, Congress repealed as well the divisional venue for which § 1393 had provided on the civil side.

28 U.S.C.A. § 1393 (repealed 1988), David D. Siegel, Commentary on 1988 Repeal of § 1393

(discussing Congress' 1988 elimination of divisional venue in civil cases).  The District of New

Mexico does not contain Congressionally assigned divisions.  See 28 U.S.C. § 111.  Cf. 28

U.S.C. § 115 (dividing the Northern and Southern Districts of Ohio into two divisions each).

In United States v. Grisham, the United States Court of Appeals for the Eleventh Circuit

addressed whether it was necessary for a jury to be selected from the division of a district in

which the defendant allegedly committed the offense at issue.  See 63 F.3d at 1078-81.

Acknowledging that the Sixth Amendment gives Congress the power to determine the

parameters of vicinage area under the Sixth Amendment, the Eleventh Circuit held that

Congress' creation of divisions within districts did not require potential jurors to be selected

from the division in which the alleged crime took place.  See United States v. Grisham, 63 F.3d at 1078.  The Eleventh Circuit reached that conclusion, reasoning: (i) that Congress did not express such an intention when it created divisions within districts; (ii) that neither the statute that created divisions nor the statute that created the district in which the case was brought dictated a division-based vicinage requirement -- 28 U.S.C. § 1861, "does not stipulate which political subdivision within a district [from which] the federal courts should select, committing that decision to the courts' discretion" -- and (iii) that no legislative history supports the contention that Congress intended to require division-based jury selection.  United States v. Grisham, 63 F.3d at 1078.

Other Courts of Appeals have reached similar conclusions.  In United States v. Balistrieri, 778 F.2d 1226 (10th Cir. 1985), the district court ordered that the jury be drawn from the Green Bay Division of the United States District Court for the Eastern District of Wisconsin, even though the alleged crime occurred in Milwaukee, Wisconsin, and the trial was held in the Milwaukee Division.[5]  See 778 F.2d at 1228.  The Seventh Circuit held, in an opinion that Judge Bauer wrote and Judges Eschbach and Swygert joined, that, despite Green Bay being more rural than Milwaukee, there was no error, because "the jury is not required to be selected either from the entire district or from the division in which the crime was committed."  United States v. Balistrieri, 778 F.2d at 1229 (citing Zicarelli v. Dietz, 633 F.2d 312, 317 (3d Cir. 1980)).  The Eighth Circuit, in United States v. Baker, 98 F.3d 330 (8th Cir. 1996), similarly held, in an opinion that Judge McMillian wrote and Judges Lay and Hansen joined, that the district court did not error by refusing the defendant's request to draw jurors from the division in which the

---

[5]It is unclear whether the Jury Selection Plan for the Eastern District of Wisconsin required the jury to be drawn from the division where the court held trial.

offense occurred.  See 98 F.3d at 337.  The Eighth Circuit held that there "is no statutory or constitutional right to a jury drawn either from the entire judicial district or from the division in which the offense occurred."  98 F.3d at 337.  The Second Circuit held, in an opinion that Judge J. Joseph Smith wrote and Judges Smith and Feinberg joined, in United States v. Mase, 556 F.2d 671 (2d Cir. 1977), that the district court did not violate the defendant's Sixth Amendment rights by having trial and drawing jurors from Hartford, Connecticut, even though the alleged crime was committed in New Haven County, Connecticut, which was in a different division.  556 F.2d at 675.  The Second Circuit noted that the Sixth Amendment refers only to "the State and district wherein the crime shall have been committed," but makes no mention of divisions.  United States v. Mase, 556 F.2d at 675 (quoting U.S. Const. amend. VI).  The Second Circuit went on to discuss the 1966 amendments to Rule 18 by noting that the Amendment "delete[d] the requirement that the trial take place in the same jury division as the crime" and that the Second Circuit had previously suggested that the amendment was constitutional.  United States v. Mase, 556 F.2d at 675 (citing United States v. Fernandez, 480 F.2d 726, 730 (2d Cir. 1973)).  With these considerations, the Second Circuit held that the district court properly denied the defendant's request that "the trial be held in New Haven," where the alleged crime occurred. United States v. Mase, 556 F.2d at 675-76.

## ANALYSIS

The Jury Plan requires the Court to draw the jury from the division in which trial is held. While the Court thinks that it would be preferable to give Rodella a trial by jurors drawn from the Northern Division, Rodella is not entitled to have a jury drawn from the Northern Division,

and the Jury Plan does not make exceptions for the interest of justice.  Moreover, the Jury Plan, as applied to Rodella, does not violate his Sixth Amendment rights.

I.      **THE JURY PLAN REQUIRES THE JURY BE DRAWN FROM THE CENTRAL DIVISION.**

The Jury Plan requires a jury to be drawn from the division in which court is held.  <u>See</u> Jury Plan at 1.  The Jury Plan was enacted under the Act and cannot be modified without the approval of a panel of Tenth Circuit Court of Appeals judges and the Chief Judge of the United States District Court for the District of New Mexico, or another active district court judge, whom she designates.  <u>See</u> 28 U.S.C. § 1863.  The Jury Plan is "binding" on the Court, <u>In re United States</u>, 426 F.3d at 6, and any deviation or violation of the Jury Plan is considered to be violation of the Act, <u>see</u> <u>United States v. Schmidt</u>, 711 F.2d at 600.  While drawing a jury from the Northern Division may be considered a technical violation of the Plan, rather than a substantial one -- because it would not violate the principles undermining the Act, <u>see</u> <u>United States v. Kamahele</u>, 748 F.3d at 1022, the Court feels bound to honor the law and not purposely defy an Act of Congress.  The Court is sympathetic with Rodella's desire to have a jury drawn from the division in which the events giving rise to the case occurred; however, the Court is bound by the Jury Plan, which requires the jury to be drawn from the division in which court is held, which in this case, is the Central Division.

The Jury Plan may need to be revised to give a judge discretion to draw from a particular Division to make a criminal defendant believe he is being tried by his peers.  After all, the appearance of justice is as important in a criminal trial as getting the science of the law right.  Several United States District Courts' Jury Plans permit judges to draw juries from another division or from several divisions within the district.  <u>See</u> Jury Selection Plan of the United

- 17 -

States District Court for the District of Minnesota for the Random Selection of Grand and Petit Jurors (As amended September 13, 2012)(D. Minn.) at 3 (permitting a jury to be drawn from "the appropriate division or combination of divisions"); Amended Plan Providing for the Random Selection of Grand and Petit Jurors in the Western District of Texas (W.D. Tex) at 7 ("When the Court orders a grand and/or petit jury to be drawn for any division or divisions, . . . .). Also, the public in the Northern Division may have a more intense interest in this case than the people in Albuquerque, Gallup, Belen, or Farmington; and again, the appearance of justice may counsel for a jury from the Northern Division. Furthermore, The Court's experience has been that, when the parties waive the Jury Plan, jurors do not mind traveling to Albuquerque from the North or the South for high profile trials.[6] Also, it could be

---

[6]The Court continues to maintain that it may deviate from the Jury Plan's requirements, and draw either from a statewide venire panel or from a different Division, if the parties consent, stipulate, and otherwise waive their rights under the Jury Plan to have a jury drawn from the place of trial. Litigants and criminal defendants often waive certain rights -- even constitutional rights -- with no fanfare or controversy. See, e.g., United States v. Christy, 785 F. Supp. 1044, 1027-28 (D.N.M. 2011)(Browning, J.)(waiving Fifth Amendment Miranda rights and Sixth Amendment right to counsel); United States v. Clark, 373 F. Supp. 2d 1230, 1231 (D.N.M. 2005)(Browning, J.)(waiving speedy trial right). If a criminal defendant can freely waive protections that the Constitution guarantees, the Court may permit litigants to waive protections from a court-created Jury Plan. While the Court may not permit litigants to waive certain provisions of the Jury Plan that deal with drawing from a fair cross-section of the community or that prohibit discrimination, permitting a jury be drawn from another Division or from the entire state, does not affect the partiality of the venire panel or the representation of a fair cross-section of society.

It is true that the Tenth Circuit and the Court have held that certain procedural rights are not waivable and that the Court cannot deviate from them. See United States v. Torres-Palma, 290 F.3d 1244, 1248 (10th Cir. 2002)(holding that criminal defendant cannot be sentenced via video teleconference); United States v. Jones, 410 F. Supp. 2d 1026, 1031-33 (D.N.M. 2005)(Browning, J.)(holding that criminal defendant cannot be sentenced via video conference even if defendant consents). It is also true that the Jury Plan's provisions do not protect only the litigants, but also the Federal Treasury and the convenience of jurors. See Jury Plan at 1 ("[E]stablishing within the District jury divisions . . . will avoid unnecessary expense, and will reduce burdens on persons reporting for jury service."). Arguably, the Court should not be able

desirable sometimes to select a statewide venire when publicity on a case is intense.  One side should not be able to prohibit the Court from drawing a statewide venire.

## II.     DRAWING A JURY FROM THE CENTRAL DIVISION DOES NOT VIOLATE RODELLA'S SIXTH AMENDMENT RIGHTS.

Following the Jury Plan requirements, by drawing a jury from the Central Division, does not violate Rodella's Sixth Amendment Rights.  The United States argues that Rodella has not complied with the statutory procedure of 28 U.S.C. § 1867 to challenge jury selection.  See Motion to Deny at 2.  The United States misreads § 1867.  Section 1867(e) states that the "procedures prescribed by this section shall be the exclusive means by which a person accused of a Federal crime . . . may challenge any jury on the ground that such jury was not selected in conformity with the provisions of this title."  28 U.S.C. § 1867(e).  Section 1867 provides the exclusive procedures to challenge a jury that was not selected in conformity with the Act, but not the exclusive procedure for challenging the selection of a jury on constitutional grounds.  See United States v. Morales, 108 F.3d 1213, 1218-19 (10th Cir. 1997)(holding that defendant's challenges under the Act were barred by failure to comply with § 1867, but considering defendants' challenge under the Fifth and Sixth Amendments).  Also, § 1867 does not bar a party from asking for a different Division or the parties stipulating to a different Division or some mix of Divisions; § 1867 does not require the Court first summon jurors before hearing from the parties themselves.  If the Court agrees with the parties, such a requirement would waste time

_____

to waive the protections for the nation's financial institutions or for the juror's convenience.  The difference here, it seems, is that the District of New Mexico could have overrode these two interests if it had wanted in its Jury Plan; although, the District of New Mexico is not free to override in any way.  See 28 U.S.C. § 1863 (stating that individual district's jury selection plans must "comply with the provisions" of the Act).  If the Court could have allowed waiver at the beginning, it should be able to allow waiver at a later part.

and further delay the trial.  In any case, Rodella is not arguing that the Court failed to comply with the Act or with the Jury Plan, but rather is arguing that the Court's compliance with the Act and Jury Plan violates his Sixth Amendment rights.  The Court, therefore, concludes that § 1867 does not bar his request and challenge; however, his challenge still lacks a sound basis in the law.

Rodella does not have a constitutional right to be tried by a jury drawn from the entire district or from the division in which the events giving rise to this case occurred.  See, e.g., Ruthenberg v. United States, 245 U.S. at 482; United States v. Baker, 98 F.3d at 337.  Drawing a jury from the Central Division, rather than from the entire District of New Mexico or from the Northern Division, does not violate Rodella's Sixth Amendment Rights.  See United States v. Baker, 98 F.3d at 337.  Rodella additionally does not have any statutory rights for the jury to be drawn from the Northern Division.  United States v. Kamahele, 748 F.3d at 1023.  While Rodella would prefer to have a "fair cross-section from the entire State of New Mexico," Tr. at 14:25-15:1 (Gorence), the Sixth Amendment only guarantees a fair cross-section of the community, not the entire state or district.  See, e.g., Ruthenberg v. United States, 245 U.S. at 482.

Rodella argues that the Jury Plan, as applied to him, is arbitrary and capricious and lacks any rational basis.  This is contrary to the Jury Plan's language.  The Jury Plan states that "establishing within the District jury divisions, . . . will result in impartial trials, will avoid unnecessary expense, and will reduce burdens on persons reporting for jury service."  Jury Plan at 2.  The rational basis of requiring a court to draw a jury from the division where court is held is to avoid unnecessary expenses and reduce burdens on persons reporting for jury service.  See

Jury Plan at 2.  The Plan, thus, has a rational basis for requiring the jury be drawn from the "place of holding court."  Jury Plan at 2.

The Court agrees with Rodella that the random manner in which the District of New Mexico assigns cases to Judges could have just as easily assigned the case to a judge in Santa Fe. That the case is being tried in Albuquerque is in part because of random chance.  This random assignment does not, however, violate the Sixth Amendment.  Rodella is unable to show how the random assignment of judges and then requiring the Judges to draw juries from the place that court is held somehow results in: (i) the exclusion of a distinctive group in the community, (ii) the underrepresentation of a group in a manner that "is not fair and reasonable in relation to the number of such persons in the community," or (iii) a underrepresentation that is "due to systemic exclusion of the group in the jury-selection process," let alone all three.  United States v. Kamahele, 748 F.3d at 1023.  If anything, assigning judges to cases in a random fashion ensures that no distinctive group is underrepresented, because it ensures that juries are continuously being drawn from every division within the state.  If anything, randomness is generally viewed as a virtue.  See 28 U.S.C. § 1861 ("It is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at *random* from a fair cross section of the community in the district or division wherein the court convenes." (emphasis added)).  The Court sees more complaints about a perceived lack of randomness than an excess of randomness.  Society has decided that it is not good, for example, for litigants to game the filing system so that they secure one judge and avoid other judges; a random case-distribution system ensures, among other things, equitable distribution of workloads.

- 21 -

Accordingly, because Rodella cannot show how the Jury Plan, on its face or in its application to this case, excludes a distinctive group in the community in a manner that creates an unfair and unreasonable underrepresentation because of systematic exclusion from the jury-selection process, see United States v. Kamahele, 748 F.3d at 1023, the Court concludes that the Jury Plan in its application here does not violate Rodella's Sixth Amendment Rights.

**IT IS ORDERED** that Rodella's Request for Jury to be Drawn from Northern New Mexico Jury Panel, filed September 9, 2014 (Doc. 39), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzales
    United States Attorney
Tara C. Neda
Jeremy Pena
    Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Robert J. Gorence
Louren M. Oliveros
Gorence & Oliveros PC
Albuquerque, New Mexico

      *Attorneys for the Defendants*

- 22 -