

**State of New Mexico**
**Judicial Standards Commission**
Post Office Box 27248
Albuquerque, New Mexico 87125-7248
Telephone (505) 222-9353
Fax (505) 222-9358

# CONFIDENTIAL
# FAX TRANSMITTAL

| | | | |
|---|---|---|---|
| **To:** | New Mexico Supreme Court | **Fax:** | 505-827-4178 |
| **From:** | James A. Noel | **Date:** | 04-29-08 |
| **Re:** | | | 32, including coversheet |

No.

IN THE MATTER OF THOMAS R.
RODELLA
Magistrate Court Judge, Rio Arriba
County, New Mexico

INQUIRY CONCERNING A JUDGE
JSC Inquiry Nos. 2006-133, 2007-062, 2007-
71, 2007-078

☐ URGENT     ☐ FOR REVIEW     ☐ PLEASE FILE     ☐ PLEASE REPLY

PLEASE FILE THE FOLLOWING:

<u>PETITION FOR PERMANENT REMOVAL</u>

The information transmitted in this facsimile message is legally confidential, privileged, and intended solely for the use of the individual or entity addressed on this coversheet. If you are not the intended recipient, be aware that any review, dissemination, distribution, copy or use of this information is strictly prohibited by law. If you have received this fax in error, please notify us immediately by telephone so that we may arrange for the retrieval of the document(s) at no cost to you. Thank you.

GOVERNMENT
EXHIBIT
4



ORIGINAL

**FAXED**

**08/31086**

## IN THE SUPREME COURT
## OF THE STATE OF NEW MEXICO

No.

IN THE MATTER OF THOMAS R. RODELLA
Magistrate Court Judge, Rio Arriba County, New Mexico

**FILED**

INQUIRY CONCERNING A JUDGE
JSC Inquiry Nos. 2006-133, 2007-062, 2007-071, 2007-078

APR 2 9 2008

---

### PETITION FOR PERMANENT REMOVAL

JUDICIAL STANDARDS COMMISSION
Post Office Box 27248
Albuquerque, New Mexico 87125-7248
TEL (505) 222-9353
FAX (505) 222-9358

JAMES A. NOEL, ESQ.
*Executive Director & General Counsel*

ELIZABETH A. GARCIA, ESQ.
*Staff Attorney*

PAUL J. KENNEDY, ESQ.
*Special Examiner*

*Counsel for the Judicial Standards Commission,*
*Petitioner*

HON. THOMAS R. RODELLA
c/o TONY SCARBOROUGH, ESQ.
Scarborough Law Office
P.O. Box 268
Española, NM 87532-0268
TEL (505) 753-7888
FAX (505) 753-7888

*Respondent*

IN THE SUPREME COURT
OF THE STATE OF NEW MEXICO

No.

IN THE MATTER OF THOMAS R. RODELLA
Magistrate Court Judge, Rio Arriba County, New Mexico

INQUIRY CONCERNING A JUDGE
JSC Inquiry Nos. 2006-133, 2007-062, 2007-071, 2007-078

## PETITION FOR PERMANENT REMOVAL

1.  Petitioner Judicial Standards Commission, upon a unanimous vote of participating

Commissioners, and pursuant to art. VI, § 32 of the New Mexico Constitution and Article 4, §§ 27-

401, *et seq.*, of the Supreme Court's Rules Governing Review of Judicial Standards Commission

Proceedings, hereby petitions the Supreme Court to sanction Respondent Hon. Thomas R. Rodella,

Rio Arriba County Magistrate Court Judge, as follows:

> A.  <u>PERMANENT REMOVAL FROM OFFICE</u>:  Respondent shall be immediately and permanently removed from judicial office, and barred from ever holding judicial office in the State of New Mexico.
>
> B.  <u>ASSESSMENT OF THE COMMISSION'S COSTS AND EXPENSES</u>: Respondent shall reimburse the Commission's costs and expenses.
>
> C.  <u>FORMAL REPRIMAND:</u> The Supreme Court is to issue a formal public reprimand, to be published in the New Mexico Bar Bulletin.

2. Jurisdiction is invoked pursuant to the Petitioner's power to recommend judicial discipline and the Supreme Court's power to discipline judges under N.M. Const. art. VI, §32, as amended, and the Court's power of superintending control under N.M. Const. art. VI, §3.

3. The grounds for disciplining Respondent are set forth completely in the Judicial Standards Commission's *Findings of Fact, Conclusions of Law, and Recommendation for Permanent Removal From Judicial Office*, attached hereto as Exhibit A and incorporated herein by reference. Following is a brief and plain statement of the adjudicated basis for the recommended sanction:

    A. <u>Inquiry 2006-133</u>: Respondent, Thomas J. Rodella, abused his judicial power and improperly involved himself in the matter of *State v. Carlos Manzanares, M-191-DR-2100500028*, Rio Arriba County Magistrate Court. Respondent and Mr. Manzanares' son, Carl Manzanares, belong to a religious brotherhood, *Los Hermanos Penitentes*. Judge Rodella called the Rio Arriba County Detention Center where Mr. Manzanares was being held on a DWI arrest, set bond, drove approximately 70 miles from his home in La Mesilla, New Mexico to the detention center in Tierra Amarilla, New Mexico after he had already gone to bed, to hand carry a release order for Mr. Manzanares, and released Mr. Manzanares to the custody of his wife, Debbie Manzanares, without bond being posted. Judge Rodella became embroiled in Mr. Manzanares' arrest and went to extraordinary lengths to secure Mr. Manzanares' release from the Rio Arriba County Detention Center, and then assigned Mr. Manzanares' case to himself and presided over his arraignment. In so doing, Judge Rodella violated Canons 21-100 NMRA 1995; 21-200(A) and (B) NMRA 1995; and 21-400(A)(1) NMRA 2004 of the New Mexico Code of Judicial Conduct.

    B. <u>Inquiries 2007-062 and 2007-078</u>: Respondent, Thomas J. Rodella, improperly agreed to assist Pete and Dorothy Martinez of Chimayo, New Mexico with their

2

landlord-tenant dispute (eventually captioned *Pete Martinez v. Elizabeth Martinez*, M-43-CV-200700175, Rio Arriba County Magistrate Court). Prior to the 2006 primary election, but after declaring his candidacy for Magistrate Judge, Rio Arriba County Magistrate Court, in March 2006, Judge Rodella met with Mr. and Mrs. Martinez, discussed the dispute they had with their tenant (which had not yet been filed), and solicited their support in his upcoming election. Judge Rodella later assured Mr. and Mrs. Martinez that they would not have a problem winning in court, told them not to file their case until after Judge Rodella was elected, and told them to disqualify the only other Rio Arriba County Magistrate Judge should their case not be initially set before Judge Rodella. In addition, after receiving the *Notice of Preliminary Investigation* in these inquiries, and with the assistance of his lawyer's office, Judge Rodella wrote a letter to the Director of the Administrative Office of the Courts requesting a criminal investigation of Pete Martinez, the Complainant and a witness in these inquiries, for allegedly forging a document in the underlying landlord-tenant case in Magistrate Court. He additional requested that his letter remain secret. In so doing, Judge Rodella harassed and intimidated a Commission witness, or attempted to harass and intimidate a Commission witness, and thereby obstructed Commission business in violation of Commission Rule 4(D), and committed contempt of the Commission in violation of Commission Rule 4(E). This conduct also violated Canons 21-100 NMRA 1995; 21-200(A) and (B) NMRA 1995; 21-300(B)(2), (B)(7), (B)(11) NMRA 1995; 21-400(A)(1) NMRA 2004; and 21-700(B)(1) NMRA 2004 of the New Mexico Code of Judicial Conduct.

C. **Inquiry 2007-071:** Respondent, Thomas R. Rodella, engaged in an *ex parte* conversation with the victim in a misdemeanor "battery on a household member" case pending before him, during which *ex parte* conversation Respondent told the victim that there would be no legal consequences for her if she chose not to testify in

the trial, even though she had been subpoenaed by the district attorney's office to appear as a witness in the trial. In so doing, Judge Rodella overstepped his mandated boundary as a neutral arbiter of the law, provided legal advice regarding the District Attorney's subpoena, and improperly interjected himself into the underlying case pending before him. Judge Rodella also tampered with evidence by altering or destroying his original recusal document in the underlying case pending before him. Judge Rodella's conduct in this matter violated Canons 21-200 NMRA 1995; 21-200(A) NMRA 1995; 21-300(B)(7) and (B)(8) NMRA 1995; and 21-400(A) NMRA 2004 of the New Mexico Code of Judicial Conduct.

4. Clear and convincing evidence established that Respondent committed willful misconduct as a candidate for judicial office, and willful misconduct in office.

5. The Commission specifically found that Respondent's testimony in many respects was not credible. The Commission did not find Respondent's testimony regarding Inquiries 2007-062 and 2007-078, and Inquiry 2007-071 to be credible. For the Commission to have accepted Respondent's testimony as true, the Commission would have needed to find that all of the other witnesses in those inquiries perjured themselves. Moreover the Commission did not find Respondents' explanation of his conduct regarding Inquiry 2006-133 to be reasonable bearing in mind his ethical obligations under the New Mexico Code of Judicial Conduct. Finally, the Commission specifically found as aggravating circumstances, and to be most disturbing, Respondent's egregious behavior in the potential intimidation of a witness as set forth above, and more fully described in ¶¶ 33-35, pp 7-8 of Exhibit A.

6. Pursuant to Supreme Court Rule 27-302 NMRA 1996, the Commission will file the complete trial record in this matter with the Supreme Court. The record consists of the following: title page, certified copies of all pleadings filed in the Commission's proceedings, the original exhibits admitted at trial, and the original stenographic transcript of the trial proceedings.

7. Pursuant to Judicial Standards Commission Rule 36(B), the Commission will promptly file a pleading detailing the Commission's costs, pursuant to a certified memorandum of costs.

WHEREFORE, Petitioner Judicial Standards Commission respectfully requests that the Supreme Court accept its recommendation for discipline of Respondent as set forth in paragraphs 1(A) - (C) above.

Respectfully submitted,

JUDICIAL STANDARDS COMMISSION

JAMES A. NOEL
*Executive Director & General Counsel*

ELIZABETH A. GARCIA
*Staff Attorney*

PAUL J. KENNEDY
*Special Examiner*

Post Office Box 27248
Albuquerque, NM 87125-7248
(505) 222-9353

5

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via Email, U.S. Post First Class, and U.S. Post Certified Mail, Return Receipt Requested, on this ____ day of April, 2008, to the following:

*HON. THOMAS R. RODELLA*
*c/o Tony Scarborough, Esq.*
*Scarborough Law Office*
*P.O. Box 268*
*Española, NM 87532-0268*

JAMES A. NOEL

6



**FILED**

APR 2 9 2008

NM JUDICIAL
STANDARDS COMMISSION

## BEFORE THE JUDICIAL STANDARDS COMMISSION
## OF THE STATE OF NEW MEXICO

INQUIRY CONCERNING A JUDGE          Inquiry Nos.  2006-133, 2007-062,
                                                  2007-078, & 2007-071

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATION
### FOR PERMANENT REMOVAL FROM JUDICIAL OFFICE

These matters came before the Judicial Standards Commission ("Commission")

for hearing on April 15-17, 2008, pursuant to N.M. Const., art. VI, §32 (as amended);

NMSA 1978, §34-10-2.1 (as amended); and the Judicial Standards Commission Rules.

The hearing was held in the Commission's hearing room located at 111 Lomas Blvd.

NW, Suite 220, Albuquerque, New Mexico. The following eight Commissioners

participated in the hearing, deliberation, decision, and adoption of these findings,

conclusions, and recommendation in this matter:

> Hon. Nan G. Nash, *Trial Presiding Officer*
> Larry Garcia
> Hon. Buddy J. Hall
> David S. Smoak, *Chairman*
> Hon. Dan Sosa, Jr. (Ret.)
> Gloria Taradash, Ph.D., *Vice-Chair*
> Bob F. Turner, Esq.
> William R. Valentine, D.M.D.

Examiners James A. Noel, Esq. and Paul J. Kennedy, Esq. presented evidence

before the Commission. Respondent, Hon. Thomas R. Rodella, appeared personally and

through his attorney, Tony Scarborough, Esq. of Scarborough Law Office.

The Commission was advised in these proceedings by counsel, Randall D.

Roybal, Esq.

The Commission heard testimony from the following witnesses during the

hearing:



For Inquiry No. 2006-133:

1. Officer Daniel E. Barde;
2. Mr. Carl Manzanares;
3. Mr. Carlos Manzanares;
4. Ms. Debbie Manzanares;
5. Officer Edward Mercure;
6. Hon. Thomas R. Rodella;
7. Officer Frank Trujillo.

For Inquiry Nos. 2007-062 & 2007-078:

1. Mr. Daniel Lopez;
2. Ms. Dorothy Martinez;
3. Mr. Pete Martinez;
4. Ms. Pamela Martinez-Mondragon;
5. Hon. Thomas R. Rodella;
6. Yvonne Sandoval-Tidwell.

For Inquiry No. 2007-071:

1. Mr. Thomas Banner, Esq.;
2. Mr. David Foster, Esq.;
3. Hon. Thomas R. Rodella;
4. Ms. Yvonne Sandoval-Tidwell;
5. Ms. Stephanie Sandoval;
6. Mr. Julian Varela, Esq.

The Commission also considered and reviewed all exhibits admitted into evidence.

Having considered the pleadings, the testimony of the witnesses, all exhibits admitted into evidence, the arguments by the Examiners and Respondent's counsel, and applicable law, the Commission makes the following findings of fact and conclusions of law pursuant to N.M. Const., art. VI, §32; NMSA 1978, §34-10-2.1; and Rule 36 of the Judicial Standards Commission Rules:

## FINDINGS OF FACT

1. Respondent, Hon. Thomas R. Rodella, was appointed to the Rio Arriba Magistrate Court in April 2005. He resigned from that position in July 2005. Respondent

declared his candidacy for judicial office (Rio Arriba County Magistrate Judge) on March 21, 2006, and was subsequently elected Rio Arriba County Magistrate Judge in November 2006 and sworn in as judge in January 2007.

2. The Judicial Standards Commission has jurisdiction over the Respondent and the subject matter thereof.

3. The *Notice of Formal Proceedings* ("NFP") for Inquiry No. 2006-133 was issued and filed on September 13, 2007.

4. Respondent's *Response by the Hon. Thomas R. Rodella to the Notice of Formal Proceedings for Inquiry No. 2006-133* was filed on October 4, 2007. The response put each count at issue.

5. The *NFP* for Inquiry Nos. 2007-062 & 2007-078 was issued and filed on November 20, 2007.

6. Respondent's *Response by the Hon. Thomas R. Rodella to the Notice of Formal Proceedings for Inquiry Nos. 2007-062 & 2007-078* was filed on December 10, 2007. The response put each count at issue.

7. The *NFP* for Inquiry No. 2007-071 was issued and filed on November 20, 2007.

8. Respondent's *Response by the Hon. Thomas R. Rodella to the Notice of Formal Proceedings for Inquiry No. 2007-071* was filed on December 10, 2007. The response put each count at issue.

9. As a Rio Arriba County Magistrate Court Judge in the State of New Mexico, Respondent was and is, at all times material to the referenced Inquiries, subject to, and his conduct on and off the bench is governed by, the New Mexico Code of Judicial Conduct, §§21-001, *et seq.*, NMRA.

<u>INQUIRY NO. 2006-133</u>

10. On Monday, July 4, 2005, at approximately 6:30 pm, Carlos Manzanares was arrested for DWI and placed in custody in the jail in Tierra Amarilla.

11. Because Carl Manzanares, Carlos Manzanares' son, knew Respondent, he obtained Respondent's cell phone number and called him directly to obtain Respondent's assistance in the release of Carlos Manzanares.

12. Respondent and Carl Manzanares are part of a religious brotherhood, *Los Hermanos Penitentes*.

13. Directly following the arrest and before Carlos Manzanares had even been booked, Respondent had several contacts with the Manzanares family and called the jail, and set a $500.00 bond for Carlos Manzanares.

14. Throughout the evening of July 4, 2005, Respondent engaged in a series of at least ten phones calls concerning Carlos Manzanares' arrest and attempts to secure his release from custody. These phone calls were either placed to and/or received from Debbie Manzanares, Carl Manazanares, Edward Mercure, and Anthony Valdez.

15. Respondent made his first call to the Rio Arriba County Detention Center inquiring about Carlos Manzanares before the detention center had even completed the processing of Carlos Manzanares.

16. Ultimately on the evening of July 4, 2005, at approximately 10:00 p.m. Respondent got out of bed and drove from Española to the detention center in Tierra Amarilla to hand carry a release order to bond out Carlos Manz anares, w hich required the posting of 10% of a $500.00 bond with the Court ($50.00).

17. Upon learning that no official was able to accept the $50.00 bond, Respondent changed his release order to release Carlos Manzanares into the custody of his wife, Debbie Manzanares, without posting any bond.

18. Respondent ordered Carlos Manzanares' arraignment set before him.

19. On July 13, 2005, Respondent presided over the arraignment of Carlos Manzanares, at the Rio Arriba Magistrate Court in Chama, New Mexico.

20. After news media published articles about the Manzanares case and the personal relationship between Respondent and the Manzanares family, Respondent filed a *Notice of Recusal* in the matter, on July 18, 2005. The *Notice of Recusal* gave no reasons for the Respondent's recusing himself.

### INQUIRY NOS. 2007-062 & 2007-078

21. When Respondent was a candidate for the judicial office of Magistrate Judge, Rio Arriba County, he visited the house of Pete and Dorothy Martinez of Chimayo, New Mexico. This was approximately one to two months before the primary election of 2006.

22. Respondent asked for support from Mr. and Mrs. Martinez, and said that if he won the election to the Magistrate Judge position, he would be able to help Mr. and Mrs. Martinez if they ever had a problem in court.

23. After the primary election, but before the general election, Respondent encountered Pamela Martinez-Mondragon, daughter of Mr. and Mrs. Martinez, at the Sears store in Santa Fe, New Mexico. Upon learning from Ms. Martinez-Mondragon that her parents were experiencing a problem with a renter, Respondent instructed Ms. Martinez-Mondragon that her parents should call Respondent directly.

24. Respondent was subsequently contacted by Mr. and Mrs. Martinez concerning their landlord-tenant issue.

25. Subsequent to Mr. and Mrs. Martinez contacting Respondent, Respondent contacted Ms. Martinez-Mondragon at least three times asking her to bring her parents' rental documents to him. Ms. Martinez-Mondragon requested that Respondent speak with her parents directly concerning the issue.

26. Respondent met Mr. and Mrs. Martinez for a second time at their home and reviewed the rental agreement and other documents concerning their landlord-tenant dispute. Respondent indicated to the Martinez family that the contract looked good and that they should bring a case in court. He instructed them to wait until he got into office, by which he was referring to the upcoming November general election, in which he was standing as candidate for Magistrate Judge, Rio Arriba County. Respondent later assured Mr. and Mrs. Martinez that they would not have any problem winning in court.

27. While at their house, Respondent also informed the Martinez family that should their case be assigned to the other judge once it was filed in Rio Arriba Magistrate Court, they should disqualify that other judge so that their case would be reassigned to Respondent. Respondent and Judge Naranjo are the only two Magistrate Court judges for Rio Arriba County.

28. Mr. and Mrs. Martinez waited to file their lawsuit until after Respondent was elected as Magistrate Judge, Rio Arriba County in November 2006. The underlying case is captioned *Pete Martinez v. Elizabeth Martinez*, M-43-CV-200700175. The case was initially assigned to Judge Alex M. Naranjo. As previously instructed by Respondent, Mr. and Mrs. Martinez filled out the form given to them by the Rio

Arriba Magistrate Court clerk to disqualify Judge Naranjo from their case. As a consequence, Respondent became the judge assigned to the Martinez's case.

29. There was a hearing before Respondent in Mr. and Mrs. Martinez's landlord-tenant dispute on July 9, 2007. The defendant was Elizabeth Martinez (no relation to Mr. and Mrs. Martinez). When Mrs. Dorothy Martinez started to explain her and her husband's side of the case, Respondent cut her off and told her, "You talk too much."

30. Ms. Elizabeth Martinez, the defendant, gave Respondent some documents. Respondent then asked Ms. Elizabeth Martinez to leave the courtroom to make copies at the clerk's office. Respondent left the courtroom simultaneously, using a door next to the judicial bench.

31. Respondent and the defendant returned to the courtroom at the same time, approximately ten minutes later. When Respondent resumed the bench, he stated, "It is not fair that there is two of you and just one of her." Mrs. Dorothy Martinez responded by saying that it was not her and her husband's fault that Ms. Elizabeth Martinez was divorced and did not have anyone else with her in court. Respondent then stated, "I am this close to disqualifying myself."

32. Respondent then disqualified himself, said that another judge would have to hear the case, and left the courtroom.

33. On November 9, 2007, two weeks after the NPI was issued in Inquiry Nos. 2007-062 & 2007-078, Respondent and Jean-Claude dei Fiori Arnold (a.k.a. Jake Arnold), an employee of Respondent's attorney, drafted a letter to the Administrative Office of the Courts requesting that the Complainant in those Inquiries be investigated by "law enforcement or prosecutorial agency." The letter was signed by Respondent in

his capacity as Magistrate Judge, and had a heading indicating it was written by "Hon. Thomas R. Rodella." Respondent suggested in his letter that a document had been forged by Pete Martinez in his case before Respondent. Respondent promised the cooperation of himself, his counsel's office, and Elizabeth Martinez, the defendant in the *Martinez v. Martinez* case at issue in these Inquiries.

34. Respondent's letter initiated an investigation of Pete and Dorothy Martinez by the New Mexico State Police, at the prompting of Henry Valdez, District Attorney for the First Judicial District.

35. The purpose of the complaint was to harass Mr. Pete Martinez and/or compromise Mr. Pete Martinez's testimony before this tribunal.

<u>INQUIRY NO. 2007-071</u>

<u>Background to the underlying case, *State v. Mark Sandoval*</u>

36. *State of New Mexico v. Mark Sandoval*, M43-VR-2006-00111, filed in Rio Arriba County Magistrate Court, was a misdemeanor battery on a household member case. Respondent was the judge initially assigned to the case.

37. On May 9, 2007, the Rio Arriba County Magistrate Court set a bench trial in the *Sandoval* case for June 6, 2007 before Respondent. On May 17, 2007, the Assistant District Attorney assigned to the case caused a subpoena to be issued commanding Ms. Sandoval to appear at her husband's bench trial. Ms. Sandoval admits to receiving the subpoena.

38. On May 22, 2007, Ms. Sandoval had a conversation with Denise Nava, a Victim Advocate employed by the First Judicial District Attorney's Office. During this conversation, Ms. Sandoval indicated to Ms. Nava her reluctance to testify against her husband, and also expressed her desire to see the case dropped. Ms. Nava

advised Ms. Sandoval that failure to comply with the subpoena could result in the judge finding her in contempt of court. Ms. Nava scheduled an appointment for May 25, 2007 for Ms. Sandoval to come to the District Attorney's office to discuss the case in order to demonstrate the need for compliance with the subpoena, but Ms. Sandoval failed to appear for the appointment.

### Facts directly pertinent to Inquiry No. 2007-071

39. During May of 2007, Respondent had an *ex parte* meeting in his courtroom with Stephanie Sandoval, who was both the victim and witness in *State v. Mark Sandoval*. The *ex parte* meeting occurred after Ms. Sandoval had been subpoenaed for trial.

40. During Respondent's *ex parte* meeting with Ms. Sandoval, she expressed that she did not want to testify against her husband. Respondent then indicated to her that she knew her husband best, and that if she did not want to testify at trial there would be no adverse legal consequences to her for failing to appear to testify.

41. On June 4, 2007, Ms. Sandoval had another telephone conversation with Ms. Nava, the Victim Advocate. During that conversation, Ms. Sandoval told Ms. Nava about her conversation with Respondent, and that the Respondent had led her to believe that she could decide for herself whether to appear and testify at her husband's trial, and that there would be no adverse consequences if she elected not to obey the subpoena.

42. Ms. Sandoval failed to appear for the trial on June 6, 2007.

43. When the case was called on June 6, 2007, the Assistant District Attorney assigned to the case, Thomas W. Banner, asked Respondent if counsel could approach the bench to discuss an important matter. Mr. Banner informed Respondent and the attorney for the defendant, Julian Varela, that the State had learned that Ms. Sandoval was

under the impression after an *ex parte* conversation with a judge, that she was not required to appear in response to the subpoena, that her failure to appear would be overlooked, and that the case would be dismissed.

44. Respondent did not disclose his conversation with Ms. Sandoval and indicated that he was recusing himself from the case. He immediately started drafting a document to recuse himself from *State v. Mark Sandoval*. Respondent showed the document to Mr. Banner for review, and then signed it. The parties understood that Respondent was recusing from the matter and that all witnesses could leave.

45. Approximately an hour and a half later, Ms. Sandoval appeared at the courthouse, having heard that an order might be issued for her arrest for not responding to the subpoena. Ms. Nava took her into the courtroom when Respondent finished his docket.

46. Despite Respondent's docket having been completed, and despite Respondent having already recused from the *Sandoval* case, Respondent re-called the case and dismissed it without prejudice, citing the State's lack of readiness to produce its witnesses at trial. Mr. Banner protested that Respondent had already recused from the case. No Motion to Dismiss was offered by Mr. Varela or ruled upon by Respondent.

47. Upon learning at a later date that Mr. Banner sought access to the recusal document that Respondent had shown him in court on June 6, 2007, Respondent removed the original document from the court file and denied Mr. Banner access to the document.

48. During discovery in the Inquiry, Respondent was asked by the Examiners, and subsequently was ordered by the Commission, to produce the recusal document he had signed and shown to counsel in court on June 6, 2007. The document

Respondent produced was different from the document that was shown to Mr. Banner in court on June 6, 2007.

49. On September 28, 2007, Mr. Banner reviewed a document provided by Respondent purported to be the document on which Respondent recused himself during the June 6, 2007 trial. The document produced was not the same document that Respondent created on the bench when he recused himself.

## CONCLUSIONS OF LAW

1. The Judicial Standards Commission has jurisdiction over the parties and the subject matter under N.M. Const., art. VI, §32 (as amended), and NMSA 1978, §34-10-2.1 (as amended).

2. Respondent is a Rio Arriba County Magistrate Court Judge in the State of New Mexico. Respondent was appointed to the bench in April 2005, and resigned from that office in July 2005. Respondent was subject to the New Mexico Code of Judicial Conduct, §§21-001, *et seq.*, NMRA, while on the bench as an appointed magistrate. Respondent was a candidate for judicial office beginning March 21, 2006, and remained a candidate for judicial office until elected to that office on November 7, 2006. As a candidate for judicial office, Respondent was subject to the provisions of the New Mexico Code of Judicial Conduct, §§21-001, *et seq.*, NMRA. At all times material to the referenced Inquiries, Respondent was and is subject to, and his conduct on and off the bench is and was governed by, the New Mexico Code of Judicial Conduct, §§21-001, *et seq.*, NMRA.

## INQUIRY NO. 2006-133

3. As alleged in Inquiry No. 2006-133, Respondent abused his judicial power and improperly involved himself in the matter of *State v. Carlos Manzanares*, M-191-DR-

200500038 (original case number M-191-DR-200500028). Respondent and Mr. Manzanares' son, Carl Manzanares, are part of a religious brotherhood, *Los Hermanos Penitentes*. Respondent called the detention center where Mr. Manzanares was being held on a DWI arrest, set bond, drove to the jail to hand carry a release order for Mr. Manzanares, and released Mr. Manzanares to his wife's custody without bond being posted. Respondent became embroiled in Mr. Manzanares' arrest and went to extraordinary lengths to secure Mr. Manzanares' release from the Rio Arriba County Detention Center, including, but not limited to, engaging in a minimum of ten telephone calls with the Manzanares family, law enforcement, and the Rio Arriba County Detention Center, and including getting out of bed on the night of July 4, 2005 to drive from Española to Tierra Amarilla. Respondent then presided over Mr. Manzanares' arraignment, all in violation of Canons 21-100 NMRA 1995, 21-200(A) and (B) NMRA 1995; and 21-400(A)(1) NMRA 2004 of the Code of Judicial Conduct.

4. Canon 21-100 of the Code of Judicial Conduct requires:

> **21-100. A judge shall uphold the integrity and independence of the judiciary.**
> A judge shall participate in establishing, maintaining and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved.

By embroiling himself with the case of someone with whom his impartiality might reasonably be questioned, Respondent demonstrably failed to uphold the integrity and independence of the judiciary and failed to observe the high standard of conduct expected of a judge.

5. Canon 21-200(A) of the Code of Judicial Conduct requires:

> **21-200. A judge shall avoid impropriety and the appearance of impropriety in all the judge's activities.**

> A. Respect for the law.  A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

By embroiling himself with the case of someone with whom his impartiality might reasonably be questioned, Respondent failed to avoid impropriety and the appearance of impropriety in his activities, and failed to act in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

6.  Canon 21-200(B) of the Code of Judicial Conduct requires:

> 21-200. A judge shall avoid impropriety and the appearance of impropriety in all the judge's activities.
> B. Impartiality.  A judge shall not allow family, social, political or other relationships to influence the judge's judicial conduct or judgment.  A judge shall not lend the prestige of judicial office to advance the private interest of the judge or others; nor should a judge convey or permit others subject to the judge's direction and control to convey the impression that they are in a special position to influence the judge. . . .

By embroiling himself with the case of someone with whom his impartiality might reasonably be questioned, Respondent allowed family and social relationships to influence his conduct and judgment.  Respondent also conveyed the impression that the Manzanares family was in a special position to influence the Judge.

7.  Canon 21-400(A)(1) of the Code of Judicial Conduct requires:

> 21-400. Disqualification.
> A. Recusal.  A judge is disqualified and shall recuse himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:
>> (1) the judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding.

By embroiling himself with the case of someone with whom his impartiality might reasonably be questioned, by calling the jail where Mr. Manzanares was being held

and setting the bond for Mr. Manzanares after consultation with Mr. Manzanares' family, by personally hand carrying the release order for Mr. Manzanares to the jail, by releasing Mr. Manzanares without the bond being posted, and by assigning Mr. Manzanares' case to himself and then presiding over Mr. Manzanares' arraignment, Respondent did not recuse himself in a proceeding where his impartiality would reasonably be questioned, given that Respondent has a personal bias concerning one of the parties (Mr. Manzanares), and had personal evidence of disputed evidentiary facts concerning the proceeding after his conversations with the Manzanares family.

8.  Respondent's conduct in Inquiry No. 2006-133 was established by clear and convincing evidence and constituted willful misconduct in office.

### INQUIRY NOS. 2007-062 & 2007-078

9.  On its own motion, the Commission consolidated Inquiry No. 2007-062 with Inquiry No. 2007-078 for trial and pretrial proceedings.

10. As alleged in Inquiry Nos. 2007-062 & 2007-078, Respondent improperly agreed to assist Pete and Dorothy Martinez of Chimayo, New Mexico with their landlord-tenant dispute case (eventually captioned *Pete Martinez v. Elizabeth Martinez*, M-43-CV-200700175). Prior to the 2006 primary election and after declaring candidacy for judicial office, Respondent met with Mr. and Mrs. Martinez, discussed their case, and solicited their support in his upcoming election. Respondent later assured Mr. and Mrs. Martinez that they would not have any problem winning in court, told them not to file their case until after Respondent was elected Magistrate Court Judge, and told Mr. and Mrs. Martinez to disqualify the only other Rio Arriba County Magistrate Court Judge should their case not be set before Respondent. Additionally, by writing a letter with the assistance of his lawyer's office to the

14

Director of the Administrative Office of the Courts requesting that his correspondence remain secret, and requesting a criminal investigation of the complainant in this matter, and by doing so only after he was given notice of the complaint, Respondent used his position as judge in an effort to intimidate and harass the Complainant and witness in this matter, Pete Martinez. In so doing, Respondent harassed and intimidated a Commission witness, or attempted to harass and intimate a Commission witness, and thereby obstructed Commission business in violation of Commission Rule 4D, and committed contempt of the Commission in violation of Commission Rule 4E. This conduct is also in violation of Canons 21-100 NMRA 1995; 21-200(A) and (B) NMRA 1991; 21-300(B)(2), (B)(7), (B)(11) NMRA 1995; 21-400(A)(1) NMRA 2004; and 21-700(B)(1) NMRA 2004 of the Code of Judicial Conduct.

11. Canon 21-100 of the Code of Judicial Conduct requires:

> 21-100. A judge shall uphold the integrity and independence of the judiciary.
> A judge shall participate in establishing, maintaining and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved.

By repeatedly discussing and reviewing a case that might come before Respondent with one of the parties to the case and by promising to rule in a certain way, by instructing one of the parties how to disqualify a judge in order that the case might be heard by Respondent, and by improperly, and for his own personal benefit, causing a Complainant in this case to be investigated by the State Police, Respondent failed to establish, maintain, and enforce the high standards of conduct required of a judge, and failed to preserve the integrity and independence of the judiciary.

12. Canon 21-200(A) of the Code of Judicial Conduct requires:

> **21-200. A judge shall avoid impropriety and the appearance of impropriety in all the judge's activities.**
> **A. Respect for the law.** A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

By repeatedly discussing and reviewing a case that might come before Respondent with one of the parties to the case and by promising to rule in a certain way, by instructing one of the parties how to disqualify a judge in order that the case might be heard by Respondent, and by improperly, and for his own personal benefit, causing a Complainant in this case to be investigated by the State Police, Respondent neither respected nor complied with the law, nor did he act in a way that promoted public confidence in the integrity and impartiality of the judiciary.

13. Canon 21-200(B) of the Code of Judicial Conduct requires:

> **21-200. A judge shall avoid impropriety and the appearance of impropriety in all the judge's activities.**
> **B. Impartiality.** A judge shall not allow family, social, political or other relationships to influence the judge's judicial conduct or judgment. A judge shall not lend the prestige of judicial office to advance the private interest of the judge or others; nor should a judge convey or permit others subject to the judge's direction and control to convey the impression that they are in a special position to influence the judge. . . .

By repeatedly discussing and reviewing a case that might come before Respondent with one of the parties and by promising to rule in a certain way, and by instructing one of the parties how to disqualify a judge in order that the case might be heard by Respondent, Respondent allowed political relationships to influence his conduct, he intimated that he would use the prestige of his judicial office to advance the private interests of political supporters, and he conveyed the impression that the Martinez's were in a special position to influence him. By causing a Complainant in this case to

be investigated by the State Police, in an attempt to influence, interfere with, and/or harass that Complainant in these Inquiries, Respondent used his office, and the authority and prestige surrounding it, to advance his own private interests and legal position vis-à-vis the Commission. Moreover, by virtue of the same acts, Respondent hindered and obstructed a Commission investigation of him.

14. Canon 21-300(B)(2) of the Code of Judicial Conduct requires:

> **21-300. A judge shall perform the duties of office impartially and diligently.**
> **B(2). Adjudicative responsibilities.** A judge shall be faithful to the law and maintain professional competence in it. A judge shall not be swayed by partisan interests, public clamor or fear of criticism.

By repeatedly discussing and reviewing a case that might come before Respondent with one of the parties and by promising to rule in a certain way, by instructing one of the parties how to disqualify a judge in order that the case might be heard by Respondent, and by improperly, and for his own personal benefit, causing a Complainant in this case to be investigated by the State Police, Respondent was not faithful to the law, and allowed his actions to be swayed by partisan interests.

15. Canon 21-300(B)(7) of the Code of Judicial Conduct requires:

> **21-300. A judge shall perform the duties of office impartially and diligently.**
> **B(7). Adjudicative responsibilities.** A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law. A judge shall not initiate, permit, or consider *ex parte* communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding . . . .

By repeatedly discussing and reviewing a case that might come before Respondent with one of the parties and by promising to rule in a certain way, and by instructing

17

one of the parties how to disqualify a judge in order that the case might be heard by

Respondent, Respondent did not accord all persons who had a legal interest in the

*Martinez* matter the right to be heard according to the law. Additionally,

Respondent initiated and allowed *ex parte* communications about the proceedings.

16. Canon 21-300(B)(11) of the Code of Judicial Conduct requires:

> **21-300. A judge shall perform the duties of office impartially and diligently.**
> B(11). Adjudicative responsibilities. A judge shall not, with respect to cases, controversies or issues that are likely to come before the court, make pledges, promises or commitments that are inconsistent with the impartial performance of the adjudicative duties of the office.

By repeatedly discussing and reviewing a case that might come before Respondent

with one of the parties and by promising to rule in a certain way, and by instructing

one of the parties how to disqualify a judge in order that the case might be heard by

Respondent, Respondent made pledges, promises and commitments in a

controversy likely to come before him.

17. Canon 21-400(A)(1) of the Code of Judicial Conduct requires:

> **21-400. Disqualification.**
> A. Recusal. A judge is disqualified and shall recuse himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:
> 1) the judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding;

By repeatedly discussing and reviewing a case that might come before Respondent

with one of the parties and by promising to rule in a certain way on that case, and by

instructing one of the parties how to disqualify a judge in order that the case might

be heard by Respondent, Respondent had personal knowledge of disputed evidentiary facts concerning the *Martinez* proceeding.

18. Canon 21-700(B)(1) of the Code of Judicial Conduct requires:

> **21-700. Elections and Political Activity.**
> B. Candidates for election to judicial office.   Candidates for election to judicial office in partisan, non-partisan and retention elections, including judges, lawyers and non-lawyers, are permitted to participate in the electoral process, subject to the requirements that all candidates:
> (1) shall maintain the dignity appropriate to judicial office, act in a manner consistent with the impartiality, integrity and independence of the judiciary and shall encourage members of the candidate's family to adhere to the same standards of political conduct in support of the candidate.

By repeatedly discussing and reviewing a case that might come before Respondent with one of the parties and by promising to rule in a certain way, and by instructing one of the parties how to disqualify a judge in order that the case might be heard by Respondent, all to obtain the votes of Mr. and Mrs. Martinez in the primary and the general election, Respondent did not, as a candidate for judicial office, act in a manner that was consistent with the impartiality, integrity or independence of the judiciary.

19. Respondent's conduct in Inquiry Nos. 2007-062 & 2007-078 was established by clear and convincing evidence and constituted willful misconduct in office.

<u>INQUIRY NO. 2007-071</u>

20. As alleged in Inquiry No. 2007-071, Respondent had an *ex parte* conversation with a victim, who was also a key witness, who had been subpoenaed in a misdemeanor battery on a household member case, *State v. Mark Sandoval*, during which conversation Respondent told the victim that there would be no legal consequences

for her if she chose not to testify. Respondent overstepped his mandated boundary as a neutral arbiter of the law, provided legal advice regarding the District Attorney's subpoena, and improperly interjected himself into the *Sandoval* case. Respondent also tampered with evidence by altering or destroying his original recusal document. This conduct is in violation of Canons 21-100 NMRA 1995; 21-200(A) NMRA 1991; 21-300(B)(7) and (B)(8) NMRA 1995; and 21-400(A) NMRA 2004 of the Code of Judicial Conduct.

21. Canon 21-100 of the Code of Judicial Conduct requires:

> **21-100. A judge shall uphold the integrity and independence of the judiciary.**
> A judge shall participate in establishing, maintaining and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved.

By having an *ex parte* conversation with a victim in a battery case, by telling her that there would be no adverse legal consequences to her if she failed to appear to testify against her husband despite her being subpoenaed, and by tampering with evidence in this inquiry, Respondent did not maintain or enforce high standards of conduct nor did he preserve the integrity and independence of the judiciary.

22. Canon 21-200(A) of the Code of Judicial Conduct requires:

> **21-200. A judge shall avoid impropriety and the appearance of impropriety in all the judge's activities.**
> <u>A. Respect for the law.</u>  A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

By having an *ex parte* conversation with a victim in a battery case, by telling her that there would be no adverse legal consequences to her if she failed to appear to testify against her husband despite her being subpoenaed, and by tampering with evidence

in this inquiry, Respondent neither had respect for nor complied with the law, nor did he act in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

23. Canon 21-300(B)(7) of the Code of Judicial Conduct requires:

> **21-300. A judge shall perform the duties of office impartially and diligently.**
> **B(7). Adjudicative responsibilities.** A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law. A judge shall not initiate, permit, or consider *ex parte* communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding . . . .

By having an *ex parte* conversation with a victim in a battery case, and by telling her that there would be no adverse legal consequences to her if she failed to appear to testify against her husband despite her being subpoenaed, Respondent did not accord all persons with a legal interest in the proceeding *State v. Mark Sandoval* the right to be heard according to law. He initiated an *ex parte* conversation outside of the presence of the other parties in an impending proceeding.

24. Canon 21-300(B)(8) of the Code of Judicial Conduct requires:

> **21-300. A judge shall perform the duties of office impartially and diligently.**
> **B(8). Adjudicative responsibilities.** A judge shall dispose of all judicial matters promptly, efficiently and fairly.

By having an *ex parte* conversation with a victim in a battery case, and by telling her that there would be no adverse legal consequences to her if she failed to appear to testify against her husband despite her being subpoenaed, Respondent did not dispose of the judicial matter *State v. Mark Sandoval* fairly.

25. Canon 21-400(A) of the Code of Judicial Conduct requires:

> **21-400. Disqualification.**
> A. Recusal. A judge is disqualified and shall recuse himself or
> herself in a proceeding in which the judge's impartiality might
> reasonably be questioned, including but not limited to instances
> where:
> 1) the judge has a personal bias or prejudice concerning a
> party or a party's lawyer, or personal knowledge of disputed
> evidentiary facts concerning the proceeding;

By having an *ex parte* conversation with a victim in a battery case, and by telling her that there would be no adverse legal consequences to her if she failed to appear to testify against her husband despite her being subpoenaed, Respondent had personal knowledge of disputed evidentiary facts concerning the proceeding, and should have recused himself without ever having held a hearing in this case.

26. Respondent's conduct in Inquiry No. 2007-071 was established by clear and convincing evidence and constituted willful misconduct in office.

## RECOMMENDATION FOR DISCIPLINE

A. After the Commission made its determination regarding the individual counts in this matter, the parties were given the opportunity to present any additional evidence or argument regarding the recommendation for discipline to the New Mexico Supreme Court.

B. After deliberation, the Commission respectfully recommends that the Supreme Court do the following:

1. Permanently remove Respondent from judicial office, barring him from ever holding judicial office in the State of New Mexico in the future;

2. Publish a written formal reprimand to Respondent; and

3. Reimburse the Commission's costs incurred in these matters.

C.     The Commission specifically found that Respondent's testimony in many respects was not credible.  The Commission did not find Respondent's testimony regarding the *Martinez* and *Sandoval* matters to be credible.  For the Commission to have accepted Respondent's testimony as true, the Commission would have needed to find that all of the other witnesses in the *Martinez* and *Sandoval* matters perjured themselves.

D.     The Commission did not find Respondent's explanation of his conduct regarding the *Manzanares* matter to be reasonable bearing in mind his ethical obligations under the Code of Judicial Conduct.

E.     The Commission further specifically found as aggravating circumstances, and to be most disturbing, Respondent's egregious behavior in the potential intimidation of a witness as set forth in paragraphs 33, 34, and 35 of the Findings of Fact.

### CERTIFICATION

Pursuant to Rule 36 of the Judicial Standards Commission Rules, I hereby certify that the above constitute the Judicial Standards Commission's findings of fact, conclusions of law and recommendation for discipline.

JUDICIAL STANDARDS COMMISSION

By _____
DAVID S. SMOAK, Chairman
Post Office Box 27248
Albuquerque, New Mexico 87125-7248
(505) 222-9353

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was served on this 29ᵗʰ

day of April 2008, to the following:

*Via Email, First Class Mail, And Certified*
*Mail, Return Receipt Requested*
Hon. Thomas Rodella
c/o Tony Scarborough, Esq.
Scarborough Law Office
P.O. Box 268
Espanola, NM 87532-0268
tonycom@espanola-nm.com

*Via Hand-Delivery*
James A. Noel, Esq.
Elizabeth A. Garcia, Esq.
Paul Kennedy, Esq.
Judicial Standards Commission
P.O. Box 27248
Albuquerque, NM 87125-7248


RANDALL D. ROYBAL, ESQ.
Commission Counsel