## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                  No. CR 14-2783 JB

THOMAS R. RODELLA and
THOMAS R. RODELLA, JR.,

      Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the United States' Motion *In Limine* to

Permit Evidence of Rio Arriba County Sheriff Office Procedures as Part of the Training

Materials, filed September 9, 2014 (Doc. 45)("Motion").  The Court held a hearing on September

15, 2014.[1]  The primary issues are: (i) whether evidence of training materials that Defendant

Thomas R. Rodella received at a training course in October, 2010, is admissible to show that

Rodella acted willfully; and (ii) whether evidence of the Standard Operating Procedures

("SOPs") of the Rio Arriba Sheriff's Office ("RASO"), which were used during the October,

2010, training course, may be admitted as training materials to prove that Rodella acted willfully.

Because the United States Court of Appeals for the Tenth Circuit has permitted evidence of

training materials in determining the reasonableness of a police officer's conduct in an excessive

force case; because the Tenth Circuit has distinguished between the admissibility of training

materials and SOPs; and because Rodella's training at the October, 2010, training course is

---

[1]The parties initially argued the Motion at a hearing on September 15, 2014; however, the
parties continued to discuss the Motion, and the Plaintiff United States of America continued to
refine its request, up until -- and even during -- the trial, specifically on September 22, 2014, and
September 23, 2014.

relevant to whether he acted willfully, the Court will grant the Motion.  The Court will permit the United States to introduce evidence of the training that Rodella received at the October, 2010, training course and will permit Plaintiff United States of America to admit evidence of RASO's SOPs, if the United States can first show that the SOPs were part of the training materials from the October, 2010, training course.

## FACTUAL BACKGROUND

In October, 2010, Rodella attended a two-week course at the New Mexico Law Enforcement Academy to become re-certified as a law enforcement officer.  See Motion at 1.  At this course, Rodella was "thoroughly instructed on proper pursuit procedures."  Motion at 1. This training also required Rodella to "review and discuss" RASO's procedures for conducting pursuits.  Motion at 1.

The Superseding Indictment, filed September 9, 2014 (Doc. 55)("Indictment"), alleges that, on March 11, 2014, in Rio Arriba County, New Mexico, Rodella, while acting under color of state law, subjected a person -- Michael Tafoya -- to "unreasonable seizure by a law enforcement officer."  Indictment at 1.  Specifically, Rodella allegedly used unreasonable force and caused an "unlawful arrest by deputies of the Rio Arriba County Sheriff's Office." Indictment at 1.  "This offense resulted in bodily injury" to Tafoya, and included the "use and threatened use of a dangerous weapon."   Indictment at 1.  The Indictment further alleges that Rodella carried and brandished a firearm "during and in relation to a crime of violence for which the defendant may be prosecuted in a court of the United States," and that, "in furtherance of such crime, possessed and brandished said firearm."  Indictment at 1-2.

The United States alleges that Rodella was riding in his personal Jeep SUV with his son when they rapidly approached Tafoya's Mazda from behind and began tailgating him.  See

Notice of Intention to Introduce Evidence Pursuant to Federal Rule of Evidence 404(b) at 1, filed August 28, 2014 Doc. 35)("Notice").[2]   According to the United States, Rodella and his son began flashing their headlights at Tafoya.  See Notice at 1.  The United States further alleges that Tafoya pulled over to the side of the road and that Rodella stopped the Jeep a short distance in front of Tafoya's Mazda.  See Notice at 1.  The United States alleges that Rodella and his son were wearing plain clothes.  See Notice at 1.  According to the United States, Rodella and his son exited the Jeep and approached Tafoya in a threatening manner, "gesturing as if to invite a physical confrontation."  Notice at 1-2.  The United States maintains that Tafoya did not know that Rodella was the Sheriff of Rio Arriba County and that Tafoya drove away out of fear for his safety, which resulted in a pursuit and confrontation.  See Notice at 2.

## PROCEDURAL BACKGROUND

The United States seeks to introduce evidence of the training materials from the October, 2010, training course as well as RASO's pursuit procedures, for "the limited purpose of showing the defendant's knowledge."  Motion at 2.  The United States seeks to introduce this evidence through testimony of Rodella's instructors and by introducing the written training materials provided during the training sessions.  See Motion at 2.  The United States alleges that the charged incident involved "an unlawful hot pursuit of" Tafoya, and argues that the training materials and SOPs will show that Rodella knew that the pursuit was unlawful yet decided to conduct it anyway.  See Motion at 1, 3.

---

[2]The Court cites to the Notice, which is subject to a different motion, merely to provide context for this Memorandum Opinion and Order and to show the relevance of the SOPs and training materials that concern high-speed pursuits.

1.      **The Briefing.**

The United States argues that the Tenth Circuit has held that "evidence of the defendant's training in a civil rights case is admissible to demonstrate the reasonableness of the defendant's actions."   Motion at 2 (citing Weigel v. Broad, 544 F.3d 1143, 1154-55 (10th Cir. 2008); Montoya v. Sheldon, No. CIV 10-0360 JB/WDS, 2012 WL 5476882, at *13 n.4 (D.N.M. Oct. 31, 2012)(Browning, J.)).   The United States contends that the Court has permitted evidence of a defendant's training on "the use of a non-lethal firearm and on proper uses of force in a law enforcement setting to show the defendant's state of mind and knowledge."   Motion at 3 (citing United States v. Gould, No. CR 03-2274 JB, 2007 WL 1302596, at *1 (D.N.M. Mar. 17, 2007)(Browning, J.)).   The United States argues that the Court distinguishes between using SOPs to show the objective reasonableness of a defendant's conduct and to show what a defendant learned about the SOPs from training to prove a defendant's subjective willfulness.   See Motion at 3.   The United States contends that, in Montoya v. Sheldon, the Court gave a jury instruction, cautioning the jury that it could "'only use the testimony about the training for determining the defendant's state of mind or their knowledge.'"   Motion at 3 (quoting Montoya v. Sheldon, 2012 WL 5476882, at *13 n.5).

The United States argues that it is seeking to introduce evidence of Rodella's training, including training on RASO's SOPS, "for the limited purpose of demonstrating the defendant's state of mind and his knowledge."   Motion at 3.   The United States argues that this evidence "is critical" given the United States' burden of proving beyond a reasonable doubt that Rodella acted willfully, which requires proof that "Rodella knew during the pursuit of the victim that what he was doing was wrong, yet chose to do it anyway."   Motion at 3.   The United States notes that the Court and the Tenth Circuit have held that "violations of SOPs do not rise to the level of a

constitutional violation."  Motion at 3.  The United States maintains that it does not intend to elicit an opinion whether Rodella violated RASO's SOPs or whether a violation of the SOPs would constitute a constitutional violation.  See Motion at 3-4.  The United States argues that it seeks to introduce evidence of RASO's SOPs and of the training materials solely to show Rodella's "state of mind and knowledge," which is "admissible to demonstrate the defendant's subjective willfulness."  Motion at 4.  The United States further contends that the relevance of RASO's SOPs is "heightened by the fact that, upon becoming sheriff in January 2011, the defendant expressly prescribed and adopted the RASO's procedure as his own," which the United States argues causes the SOPs to be admissions by Rodella and admissible as non-hearsay.  Motion at 4.  The United States requests the Court to permit evidence of the relevant training to "aid in determining whether the constitutional violation was willful."  Motion at 4.

Rodella responds by arguing that the Motion is subject to the United States' Notice of Intention to Offer Expert Testimony, filed August 27, 2014 (Doc. 34)("Notice"), and the Defendant's Motion to Strike Expert Testimony of Manuel T. Overby, filed September 9, 2014 (Doc. 50)("Motion to Strike").  Defendant's Response in Opposition to United States' Motion In Limine to Permit Evidence of Rio Arriba County Sheriff Office Procedures as Part of the Training Materials at 1, filed September 12, 2014 (Doc. 72)("Response").  Rodella argues that he opposes introduction of the training materials and SOPs for the same reasons set forth in the Motion to Strike.  See Response at 1.  Rodella contends that RASO's SOPs "have no relevance to this case."  Response at 1.  Rodella argues that the United States is simply attempting to introduce evidence of RASO's SOPs and training materials to show that he did not act in conformance the SOPs.  See Response at 1-2.  Rodella argues that the United States' "expert disclosure of Manuel T. Overby" demonstrates that the United States' sole, limited purpose for

the evidence is not to show Rodella's state of mind and knowledge.  Response at 2.  Rodella contends that Overby's testimony and the SOPs will be used as evidence that Rodella did not conform to the SOPs.  See Response at 2.

2.      **The September 15, 2014, Hearing.**

The Court held a hearing on September 15, 2014.  See Transcript of Hearing at 139:1-156:17 (taken September 15, 2014)(Neda, Gorence, Court)("Sept. 15, 2014, Tr.").[3]  At the hearing, the United States argued that, in United States v. Gould, the Court allowed training materials to be admitted into evidence to show the defendant's knowledge.  See Sept. 15, 2014, Tr. at 141:1-3 (Neda).  The United States argued that there is a power-point slide in the training materials that states that Rodella was required to bring RASO's "SOPs regarding high speed pursuit under the Safe Pursuit Act," N.M. Stat. Ann. § 29-20-1, to a training session.  Sept. 15, 2014, Tr. at 141:3-12 (Neda).  The United States further argued that, during one training session, Rodella and the other students spent several hours discussing their SOPs and how the SOPs related to the Safe Pursuit Act and discussing what is appropriate conduct during a pursuit.  See Sept. 15, 2014, Tr. at 142:3-143:21 (Neda, Court).  The United States argued that it wants to introduce the SOPs, because the SOPs were part of the training materials from the October, 2010, training course, and not to show that Rodella violated the SOPs.  See Sept. 15, 2014, Tr. at 143:8-21; id. at 144:14-24 (Neda).  The United States contended that it would call, as witnesses, two instructors from the training courses to testify that Rodella received training in how to conduct a high-speed pursuit.  See Sept. 15, 2014, Tr. at 144:25-145:21 (Neda, Court).  The United States argued that the SOPs should come into evidence as part of the training materials

---

[3]The Court's citations to the transcripts of the hearings refer to the court reporter's original, unedited versions.  Any final transcripts may contain slightly different page and/or line numbers.

from the October, 2010, training course.  See Sept. 15, 2014, Tr. at 149:23-150:4 (Neda, Court).

The United States addressed Rodella's argument that the SOPs did not apply to Rodella by

arguing that, while the SOPs explicitly state that they apply to deputies and supervisors, the

SOPs do not state that they do not also apply to the sheriff.  See Sept. 15, 2014, Tr. at 152:15-22

(Neda).

Rodella argued that a violation of a training manual or SOP does not constitute a

constitutional violation.  See Sept. 15, 2014, Tr. at 146:16-25 (Gorence).  Rodella contended

that, even with a limiting instruction, there is a fear that the jury would believe that a violation of

a training manual or SOP would constitute a constitutional violation.  See Sept. 15, 2014, Tr. at

147:1-20 (Neda, Gorence, Court).  When the Court mentioned the United States' burden of

proving scienter, Rodella argued that, because the issue of SOPs and training manuals has been

so well litigated in the 42 U.S.C. § 1983 context, the concern remains how the jury will use the

evidence.  See Sept. 15, 2014, Tr. at 147:8-20 (Gorence, Court).  Rodella also argued that, by

their terms, RASO's SOPs do not apply to him, because they apply only to deputies and

supervisors.  See Sept. 15, 2014, Tr. at 147:24-148:8 (Gorence).

The Court told the parties that the United States would need to show that Rodella was

told to bring the SOPs to the October, 2010, training course, that Rodella brought the SOPs to the

course, and that the SOPs were discussed as part of the course, for the SOPs to be considered

training materials.  See Sept. 15, 2014, Tr. at 150:7-14 (Court).  The Court noted that it was

inclined to allow the training materials and SOPs to be introduced into evidence, but that it

would first need to look through the power-point slides from the training course and through the

SOPs.  See Sept. 15, 2014, Tr. at 155:12-17 (Court).  The United States had previously provided

the Court with RASO's SOPs, and, in the evening, after the September 15, 2014, hearing, the

- 7 -

United States sent the Court a copy of the training materials and SOPs via electronic mail transmission.

**3.** **The Trial.**

On the day before the trial began, the Court reviewed some of the RASO's SOPs and all of the training materials. See Rio Arriba Sherriff's Office Policies & Procedures, (dated Sept. 22, 2014)(Proposed Trial Ex. 14)(Bates-Numbers RASO_0033 through RASO_0571); NMDPS/LEA CBW Defensive Tactics Student Guide, (dated Sept. 22, 2014)(Proposed Trial Ex. 15-A)(Bates-Numbers Training_0001-0144). On the first day, the United States informed the Court that it was not going to use the SOPs, because they would "add to[o] much to the presentation." Transcript of Trial at 6:21-25 (taken September 22, 2014)(Neda, Court)("Trial Day 1 Tr."). The Court informed the parties that it had read through the training materials, and found that some of it was irrelevant to the case and that some of it was incorrect, because it is grounded on state law and not on federal law. See Trial Day 1 Tr. at 4:5-16 (Court). The Court gave a few examples, including from a power-point slide that discussed officer tort liability and another that discussed lawsuits against police officers. See Trial Day 1 Tr. at 4:16-5:3 (Court). The Court also noted that some of the power-point slides discussed sovereign immunity, which does not always apply when the federal government brings an action, and others discussed the potential criminal sanctions an officer may face under 18 U.S.C. § 242, which the Court noted is not something the jury should consider. See Trial Day 1 Tr. at 5:5-15 (Court). The Court informed the United States that some of the training materials would need to be redacted and asked the United States to identify which portions of the training materials it wanted to present to the jury. See Trial Day 1 Tr. at 5:20-6:20 (Neda, Court). The United States told the Court that it

would identify the portions of the training materials that it wanted to use.  <u>See</u> Trial Day 1 Tr. at 7:7 (Neda).

On the second day of trial, the United States provided the Court with a redacted version of the power-point presentation, which the United States noted was the only portion of the training materials that it wished to introduce into evidence.  <u>See</u> Transcript of Trial at 1:7-18 (taken September 23, 2014)(Neda, Court).  The Court reviewed the redacted document.  The Court eventually admitted this redacted power-point presentation into evidence as Trial Exhibit 15-B.  <u>See</u> Transcript of Trial at 102:12-17 (taken September 24, 2014)(Neda, Court)("Sept. 24, 2014, Tr.").  Before Trial Exhibit 15-B was admitted into evidence, counsel for the parties approached the bench, and the Court asked Rodella's counsel if he had anything else to say about the exhibit.  <u>See</u> Sept. 24, 2014, Tr. at 101:24-102:3 (Gorence, Court).  Rodella's counsel said that he did not have anything to add to his earlier arguments, but that he wished to preserve his objection to the admission of Trial Exhibit 15-B.  <u>See</u> Sept. 24, 2014, Tr. at 102:4-11 (Gorence, Court).  At the end of the trial, the Court gave the jury the following limiting instruction:

### INSTRUCTION NO. 9

You have heard evidence regarding the training Mr. Rodella personally received.  This evidence has been admitted for a limited purpose.  You may use it only to determine whether Mr. Rodella acted willfully, that is, with a bad purpose, to violate a right protected by the Constitution of the United States.  It is, of course, wholly up to you to determine whether Mr. Rodella acted inconsistent with his training.

I caution you that an instance of inappropriate behavior on the part of a sheriff or deputy does not necessarily rise to the level of a federal constitutional violation.  It is possible for a law enforcement officer to act contrary to the officer's training, without violating the United States Constitution, just as it is possible for an officer to violate the Constitution without acting inconsistent with his training.

In other words, if you determine that Mr. Rodella acted contrary to the training he received, you should consider that evidence only in determining

whether Mr. Rodella acted willfully and not consider this evidence in determining
whether his actions violated the Constitution in the first instance.

Court's Final Jury Instructions (Given)(without citations) at 10, filed September 26, 2014

(Doc. 130).

## LAW REGARDING STANDARD OPERATING PROCEDURES

In Whren v. United States, 517 U.S. 806 (1996), the Supreme Court of the United States

examined the application of SOPs in traffic-stop cases to determine whether an officer made a

pretextual stop.  See 517 U.S. at 813-14.  In concluding that the Fourth Amendment to the

Constitution of the United States of America's reasonableness requirement "allows certain

actions to be taken in certain circumstances," despite the police officer's subjective intent, the

Supreme Court stated:

> Indeed, it seems to us somewhat easier to figure out the intent of an individual
> officer than to plumb the collective consciousness of law enforcement in order to
> determine whether a "reasonable officer" would have moved to act upon a traffic
> violation.  While police manuals and standard procedures may sometimes provide
> objective assistance, ordinarily one would be reduced to speculating about the
> hypothetical reaction of a hypothetical constable -- an exercise that might be
> called virtual subjectivity.
>
> Moreover, police enforcement practices, even if they could be practicably
> assessed by a judge, vary from place to place and time to time.  We cannot accept
> that the search and seizure protections of the Fourth Amendment are so variable
> and can be turned upon trivialities.

517 U.S. at 815 (citations omitted).

The Supreme Court has additionally stated that "[o]fficials sued for constitutional

violations do not lose their qualified immunity merely because their conduct violates some

statutory or administrative provisions."  Davis v. Scherer, 468 U.S. 183, 194 (1984)(footnote

omitted).  Consistent with other Courts of Appeals, the Tenth Circuit held that the violation of

state law or of an SOP will not turn an otherwise constitutional use of force into a constitutional

violation.  See Tanberg v. Sholtis, 401 F.3d 1151, 1167 (10th Cir. 2005)("Even if [the defendant officer] violated the SOPs, this violation would not create a violation of a clearly established constitutional right ex nihilo."); Medina v. Cram, 252 F.3d 1124, 1133 (10th Cir. 2001)(excluding expert affidavit which stated that the "officers' use of force did not conform with accepted police guidelines and practices," because "claims based on violations of state law and police procedure are not actionable under § 1983"); Romero v. Bd. of Cnty. Comm'rs, 60 F.3d 702, 704 (10th Cir. 1995)("[V]iolations of state law and police procedure generally do not give rise to a § 1983 claim.")(citations omitted).  See also Greenridge v. Ruffin, 927 F.2d 789, 792 (4th Cir. 1991)(upholding district court's decision to exclude evidence of officer's failure to follow standard arrest procedures, because it was not relevant to whether the officer acted reasonably); Diaz v. Salazar, 924 F. Supp. 1088, 1097 (D.N.M. 1996)(Hansen, J.)("The fact that their conduct may not have conformed with police regulations or training does not operate to create constitutional liability under Section 1983.").

The clearly established law also does not permit introduction of evidence that officers violated SOPs to establish a constitutional violation.  See, e.g., Tanberg v. Sholtis, 401 F.3d at 1167-68.  Clearly established law requires the exclusion of any evidence regarding the violation of SOPs, because such evidence is irrelevant to the Fourth-Amendment inquiry.  See Tanberg v. Sholtis, 401 F.3d at 1168.  In Tanberg v. Sholtis, the Tenth Circuit, in an opinion that the Honorable Michael W. McConnell, United States Circuit Judge for the Tenth Circuit, authored, and the Honorable Carlos F. Lucero and Stephen H. Anderson, United States Circuit Judges for the Tenth Circuit, joined, discussed the propriety of admitting SOPs as evidence of a constitutional violation in an excessive-force and an assault-and-battery case.  See 401 F.3d

at 1167-68. The Tenth Circuit held that the proffered SOP was irrelevant to the issues in the

case:

> In the exclusionary rule context, the Supreme Court has rejected the use of local police regulations as a standard for evaluating constitutionality of police conduct, on the ground that such a "basis of invalidation would not apply in jurisdictions that had a different practice." Whren v. United States, 517 U.S. 806, 815 (1996). That logic would seem to apply equally to damage suits under § 1983. This Court has consistently held that the violation of police regulations is insufficient to ground a § 1983 action for excessive force. Marquez v. City of Albuquerque, 399 F.3d 1216 (10th Cir. 2005); Medina[ v. Cram], 252 F.3d at 1133; Romero v. Board of County Com'rs of County of lake, State of Colo., 60 F.3d 702, 705 (10th Cir. 1995); Wilson v. Meeks, 52 F.3d 1547, 1554 (10th Cir. 1995). The plaintiffs in Romero argued that a police officer had contributed to the dangerous situation which led to his use of force, making him liable for the use of force his own actions helped make necessary. 60 F.3d at 704. The Romero plaintiffs supported their theory with evidence that the police officer's failure to handcuff the arrestee early in their encounter violated police regulations, and contended on appeal that this evidence should have precluded the trial court's grant of summary judgment. Id. We affirmed the trial court's ruling, holding that the police officer's failure to handcuff the arrestee was not relevant to the § 1983 inquiry and "did not become relevant simply because such actions may be required by state law and police procedures." Id. That an arrest violated police department procedures does not make it more or less likely that the arrest implicates the Fourth Amendment, and evidence of the violation is therefore irrelevant. If [the defendant] violated the SOP governing the use of force in effecting arrest, that fact might well be pertinent to the Albuquerque Police Department's future decisions to promote, retain, or discipline him; it is not relevant to determining if Plaintiff's arrest violated the reasonableness requirement of the Fourth Amendment.

Tanberg v. Sholtis, 401 F.3d at 1163-64 (alteration omitted). The Tenth Circuit further

explained:

> Although plaintiffs frequently wish to use administrative standards, like the Albuquerque SOPs, to support constitutional damages claims, this could disserve the objective of protecting civil liberties. Modern police departments are able -- and often willing -- to use administrative measures such as reprimands, salary adjustments, and promotions to encourage a high standard of public service, in excess of the federal constitutional minima. If courts treated these administrative standards as evidence of constitutional violations in damages actions under § 1983, this would create a disincentive to adopt progressive standards. Thus, we decline Plaintiffs' invitation here to use the Albuquerque Police Department's operating procedures as evidence of the constitutional standard.

- 12 -

Tanberg v. Sholtis, 401 F.3d at 1164.

In Medina v. Cram, the Tenth Circuit, in an opinion that the Honorable Deanell R. Tacha, then-Chief Judge for the Tenth Circuit, authored, and the Honorable Stephanie K. Seymour and Wade Brorby, United States Circuit Judges for the Tenth Circuit, joined, reviewed the relevance of SOPs to a Fourth Amendment excessive-force claim.  See 252 F.3d at 1133.  There, the police responded to a call regarding the plaintiff's refusal to return to jail on a bail bond violation and regarding the plaintiff's contention that he was armed.  See 252 F.3d at 1126.  After they arrived, the police tried to convince the plaintiff to leave his house peacefully.  See 252 F.3d at 1126. Instead, the plaintiff told the officers that he needed more time, was suicidal, and was armed with a handgun.  See 252 F.3d at 1126.  Ultimately, the plaintiff "emerged from the house with his left hand in a cup and his right hand wrapped in a towel concealing a staple gun, which [the plaintiff] intended as a representation of a weapon."  252 F.3d at 1126.  Although ordered to stop, the plaintiff walked toward and onto the street.  See 252 F.3d at 1126.  The officers used bean-bag rounds, which did not stop the plaintiff's movement.  See 252 F.3d at 1126.  After the bean-bag rounds failed to stop the plaintiff, "an officer released an attack dog, which bit him and released, returning to the officer."  252 F.3d at 1126.  The "attack dog was released a second time," causing the plaintiff to drop to the ground and expose the staple gun.  252 F.3d at 1126.  As he dropped to the ground, the plaintiff pointed the staple gun in the other officers' direction.  See 252 F.3d at 1126.  Two officers shot Medina five times.  See 252 F.3d at 1126.

In response to the officers' assertion of qualified immunity, Medina submitted an affidavit of an expert, who opined that the officers' use of force did not conform with accepted police guidelines and practices, and was therefore excessive.  See 252 F.3d at 1133.  The expert's affidavit did not persuade the Tenth Circuit:

> We have, of course, recognized that claims based on violations of state law and police procedure are not actionable under § 1983. <u>Romero</u>, 60 F.3d at 705 (state law and police procedure); <u>Wilson I</u>, 52 F.3d at 1554 (police department regulation); <u>see also</u> <u>Davis v. Scherer</u>, 468 U.S. 183, 194-96 (1984)(rejecting the argument that § 1983 liability may be based solely on a violation of a state statute or regulation).

252 F.3d at 1133.

In the most recent cases in which the Court has addressed this issue, the Court has ruled that evidence regarding a violation of police procedures is not admissible in excessive force cases.  <u>See</u> <u>Montoya v. Sheldon</u>, 2012 WL 5476882, at *9-10 (excluding evidence that defendants violated SOPs, where plaintiffs sought to introduce the evidence for the "jury to put into context and fully understand the significance of the Defendants' actions in detaining, arresting, charging and prosecuting Plaintiffs"); <u>Mata v. City of Farmington</u>, 798 F. Supp. 2d 1215, 1219 (D.N.M. 2011)(Browning, J.)(excluding, under rule 402 of the Federal Rules of Evidence, "evidence that the Defendant Officers did not follow SOPs and police training, because this evidence is not relevant"); <u>Jonas v. Bd. of Comm'rs</u>, 699 F. Supp. 2d 1284, 1299 (Browning, J.)("The clearly established law also does not permit a plaintiff to establish a constitutional violation with evidence that the officers violated SOPs and their training."); <u>Vondrak v. City of Las Cruces</u>, No. CIV 05-0172 JB/LAM, 2009 WL 3241555, at *14 (D.N.M. Aug. 25, 2009)(Browning, J.)(concluding that "expert testimony that refers to SOPs or other established law-enforcement standards" was inadmissible under Tenth Circuit precedent); <u>Chamberlin v. City of Albuquerque</u>, No. CIV 02-0603 JB/ACT, 2005 WL 2313527, at *4 (D.N.M. July 31, 2005)(Browning, J.)("[U]nder <u>United States v. Marquez</u> and <u>Tanberg v. Sholtis</u>, evidence of the SOPs is irrelevant to whether [the defendant officer] acted objectively reasonably.").

In Chamberlin v. City of Albuquerque, the primary issue was whether the Court should have allowed the plaintiff to introduce evidence of the Albuquerque Police Department's SOPs. See 2005 WL 2313527, at *1. Because of Tanberg v. Sholtis and Marquez v. City of Albuquerque, the Court granted the defendant police officer's motion in limine to exclude all evidence and testimony concerning the SOPs. See 2005 WL 2313527, at *4. The Court acknowledged that, although both Tanberg v. Sholtis and Marquez v. City of Albuquerque were distinguishable, because the SOPs which the plaintiff sought to introduce were different, and because there was no suggestion that the plaintiff also sought to introduce testimony about whether the police department disciplined the defendant police officer for violating any SOP, the language of Tanberg v. Sholtis was sufficiently broad and sweeping to encompass the SOPs at issue. See Chamberlin v. City of Albuquerque, 2005 WL 2313527, at *4. The Court concluded that, under Marquez v. City of Albuquerque and Tanberg v. Sholtis, evidence of the SOPs was irrelevant to whether the defendant police officer acted objectively reasonably. See 2005 WL 2313527, at *2-3.[4]

---

[4]The Court has indicated its disagreement with the Tenth Circuit's exclusion of SOPs in the excessive force context.

Coming from a civil background, the Court often saw that, when a plaintiff sued a corporation, a plaintiff would seek the defendant corporation's standard procedures, to show that the corporation acted unreasonably by not even complying with its own rules. As the Tenth Circuit has stated:

Although a company's internal policies do not alter the applicable standard of care, they are admissible to show negligence, even if the policies demand a higher standard of care than the applicable law. We have permitted admission of such policies when the jury is instructed that they are not admitted as legal standards of duty, but as evidence of the measure of caution that ought to be exercised in the situations to which they apply.

_____

Therrien v. Target Corp., 617 F.3d 1242, 1256 (10th Cir. 2010)(internal quotations and citations omitted). See LaVine v. Clear Creek Skiing Corp., 557 F.2d 730,733 (10th Cir. 1977)(recognizing "the principle that a regulation setting forth a standard is considered to be proper evidence . . . [And] that evidence of customary conduct is normally relevant and admissible.")(citing Prosser, Law of Torts 166 (1971); Restatement (Second) of Torts § 295A, cmt. b ("Any such custom of the community in general, or of other persons under like circumstances, is always a factor to be taken into account in determining whether the actor has been negligent.")).  Nevertheless, the Tenth Circuit law has taken a repeatedly narrow view of the relevance of SOP evidence in the Fourth-Amendment arena, and the Court has had to conform its opinions and rulings accordingly.

Montoya v. Sheldon, 2012 WL 5476882, at *14 (alterations in Montoya v. Sheldon but not in Lavine v. Clear Creek Skiing Corp.).

On a clean slate, the Court would still probably be where it was when it decided Taylor v. Hudson[, No. CIV 02-0775 JB/RHS, 2003 U.S. Dist. LEXIS 26736 (D.N.M. Nov. 21, 2003)(Browning, J.)].  Juries are smart and can use SOPs for all sorts of purposes other than equating a violation of a SOP with a violation of the Constitution.  The Court had experience with products liability before taking the bench, and it was routine to use SOPs and guidelines for a comparison.  They inform reasonableness, even if they do not define reasonableness.  The Tenth Circuit has not thought SOPs can serve this useful purpose in excessive-force cases.  If the Court were to allows SOPs in to test credibility, that rationale could be used to justify SOPs coming in in every excessive-force case.  They could have been added in Tanberg v. Sholtis and Marquez v. City of Albuquerque to test the officer's credibility, but the Tenth Circuit did not allow them in for any purpose.

Solis-Marrufo v. Bd. of Comm'rs, No. CIV 11-0107 JB/KBM, 2013 WL 1658278, at *20 (D.N.M. Mar. 29, 2013)(Browning, J.).

The Court can imagine many sound arguments to support the proposition that accepted practices, or well-established practices, if not SOPs, should be considered at least relevant to an inquiry into what a reasonable officer would do.  In fact, the Court wonders how the proposition that "violation of such standards is not *ipso facto* a Fourth Amendment violation" renders any reference to such standards in a reasonable-officer inquiry totally irrelevant.  The most the proposition appears to establish is that an officer may fall below well established practices without violating the Constitution.  Presumably, officers are trained and have developed established practices as a means of preventing improper conduct, including conduct that might result in excessive force, illegal searches and seizures, or other civil-rights violations.  Because established practices are, perhaps, more protective of arrestee's rights arguably does not mean they are irrelevant to a Fourth Amendment inquiry.  Even so, the Court does not believe it has the liberty to allow such testimony in light of Tenth Circuit law.  The Court

- 16 -

## LAW REGARDING TRAINING MATERIALS

"[T]he Tenth Circuit appears to have drawn a distinction between SOPs and training [materials]." Montoya v. Sheldon, 2012 WL 5476882, at *13. In the only published Tenth Circuit opinion analyzing whether training materials are admissible as evidence of reasonableness in a Fourth Amendment excessive force case, the Tenth Circuit held that the training materials were admissible, stating that "the reasonableness of an officer's actions must be assessed in light of the officer's training." Weigel v. Broad, 544 F.3d at 1155. In Weigel v. Broad, the Tenth Circuit, in an opinion that Judge Seymour authored,[5] reversed and remanded the district court's granting of summary judgment in favor of the defendant police officers. See 544 F.3d at 1155. The Tenth Circuit held that an issue of fact existed whether the officers used excessive force in causing the plaintiff's asphyxiation. See 544 F.3d at 1147. In reviewing the facts, the Tenth Circuit stated that "[t]he risk of such asphyxiation should have been familiar to [the] Troopers," and noted that, "[d]uring the troopers use-of-force training at the Wyoming Law Enforcement Academy (WLEA), they were provided with extensive written materials, oral

---

will accordingly prohibit any testimony that is framed up in reference to "national" or "well-established" practices.

Vondrak v. City of Las Cruces, 2009 WL 3241555, at *17. If the Court had a clean slate, it would permit evidence of SOPs in the Fourth Amendment context. The Court, however, does not have such a slate and will faithfully follow Tenth Circuit precedent.

[5]The Honorable Harris L. Hartz, United States Circuit Judge for the Tenth Circuit, concurred with Judge Seymour's opinion in all respects except on one point. See Weigel v. Broad, 544 F.3d at 1155 (Hartz, J., concurring). Judge Hartz opined that the officers did not violate the plaintiff's constitutional rights by merely applying pressure to his upper back, but that they may have violated his rights when they bound the plaintiff's feet and continued to apply pressure to his upper back. See 544 F.3d at 155 (Hartz, J.).
The Honorable Terrence L. O'Brien, United States Circuit Judge for the Tenth Circuit, dissented "from all aspects of the majority opinion," concluding that the defendant officers did not violate the plaintiff's constitutional rights, and that any violation was not of a clearly established right. Weigel v. Broad, 544 F.3d at 1156 (O'Brien, J., dissenting).

- 17 -

lectures, and audiovisual presentations regarding the dangers of Sudden Custody Death Syndrome and positional asphyxiation."  544 F.3d at 1150.

Regarding whether the officers acted reasonably in arresting the plaintiff, the Tenth Circuit held that there were factual issues regarding the police officers' reasonableness, based, in part, on information included in training materials:

> First, there is evidence a reasonable officer would have known that the pressure placed on Mr. Weigel's upper back as he lay on his stomach created a significant risk of asphyxiation and death.  His apparent intoxication, bizarre behavior, and vigorous struggle made him a strong candidate for positional asphyxiation.  And WLEA training materials made clear that the pressure applied to Mr. Weigel's upper torso would suffice to cause his suffocation.

544 F.3d at 1152 (citing Cruz v. City of Laramie, 239 F.3d 1183, 1188-89 (10th Cir. 2001))(citations omitted).  In discussing whether the law was clearly established that a police officer conducting an arrest must be cognizant of possible asphyxiation, the Tenth Circuit reasoned that the training materials showed that the law was clearly established, because the Tenth Circuit's opinion in Cruz v. City of Laramie "was apparently the reason for the extensive WLEA training on positional asphyxia."  Weigel v. Broad, 544 F.3d at 1154.  The Tenth Circuit, thus, concluded:

> If Cruz[ v. City of Laramie] had not been handed down, perhaps Wyoming troopers would not have received training on positional asphyxia and would be uninformed about the danger.  But the reasonableness of an officer's actions must be assessed in light of the officer's training.  The defendants' training informed them that the force they used upon Mr. Weigel produced a substantial risk of death.  Because it is clearly established law that deadly force cannot be used when it is unnecessary to restrain a suspect or secure the safety of officers, the public, or the suspect himself, the defendants' unnecessary use of deadly force violated clearly established law.

Weigel v. Broad, 544 F.3d at 1155.

In a prior unpublished opinion, the Tenth Circuit prohibited the admissibility of training materials in an excessive force case.  See Gianetti v. City of Stillwater, 216 F. App'x 756, 766

(10th Cir. Feb. 12, 2007)(unpublished).  In Gianetti v. City of Stillwater, the Tenth Circuit, in an

opinion that the Honorable Robert H. Henry, United States Circuit Judge for the Tenth Circuit,

authored, and the Honorable Mary B. Briscoe, United States Circuit Judge for the Tenth Circuit,

and the Honorable Julie A. Robinson, United States District Judge for the District of Kansas,

sitting by designation, joined, held that Tanberg v. Sholtis precludes a plaintiff from introducing

evidence of police department training materials as evidence of an officer's reasonableness.  See

216 F. App'x at 766.

> Mr. Giannetti also relies upon the training materials at the Stillwater police
> department as further evidence of the officers' unreasonable response.  However,
> our broad ruling in Tanberg v. Sholtis, 401 F.3d 1151 (10th Cir. 2005), forecloses
> this argument. In Tanberg, we held that the fact "[t]hat an arrest violated police
> department procedures does not make it more or less likely that the arrest
> implicates the Fourth Amendment, and evidence of the violation is therefore
> irrelevant."  Id. at 1163-64 (emphasis added).   "If [the officers] violated the
> [department procedures] governing the use of force in effecting arrest, that fact
> might well be pertinent to the [Stillwater police department's] future decisions to
> promote, retain, or discipline [them]; it is not relevant to determining if
> [Ms. Giannetti's] arrest violated the reasonableness requirement of the Fourth
> Amendment."  Id. at 1164; see also Groh v. Ramirez, 540 U.S. 551, 564 n. 7, . . .
> (2004)(noting that, standing alone, an official is not "deprived of qualified
> immunity whenever he violates an internal guideline").

Giannetti v. City of Stillwater, 216 F. App'x at 766 (brackets in Giannetti v. City of Stillwater

but not in Tanberg v. Sholtis).

     In his dissenting opinion in Weigel v. Broad, Judge O'Brien argued that training

materials are irrelevant to whether an officer's actions are reasonable under the Fourth

Amendment, relying in part on Tanberg v. Sholtis.   See 544 F.3d at 1167 (O'Brien, J.,

dissenting).

> I disagree that training has any relevancy in the qualified immunity analysis.  See,
> e.g., Davis v. Scherer, 468 U.S. 183, 194 & n.12 . . . (1984)("Officials sued for
> constitutional violations do not lose their qualified immunity merely because their
> conduct violates some statutory or administrative provision . . . unless that statute
> or regulation provides the basis for the provision sued upon."); Tanberg v. Sholtis,

> 401 F.3d 1151, 1159-60 (10th Cir. 2005)("Even if it were clear that Officer Sholtis
> had violated the [Albuquerque Police Department standard operating procedures],
> that violation would not transform an arrest supported by probable cause into an
> unconstitutional seizure."); Herring v. Keenan, 218 F.3d 1171, 1180 (10th Cir.
> 2000)("[W]ithout a stronger indication from the courts that a reasonable probation
> officer in Keenan's position would have known that she was violating Herring's
> constitutional rights by disclosing his HIV status, rather than simply violating an
> internal policy, we cannot say that Keenan violated Herring's clearly established
> constitutional right to privacy.").

544 F.3d at 1167 n.19 (O'Brien, J., dissenting).   Judge O'Brien concluded that an officer's

training is largely irrelevant, because either it restates the clearly established law or it prescribes

best practices beyond that which the law requires:

> At a minimum, instruction regarding behavioral standards imposed upon the
> police by a court decision in the relevant jurisdiction would be required because
> that is, by definition, clearly established law.  Beyond that, training might include
> instruction on procedures or best practices, seeking to impart skills and guidelines
> useful to officers in effectively and safely performing their duties.  The training
> may well reflect value judgments about matters beyond what established law
> requires.  But the law dictates officer training, not the other way around.

544 F.3d at 1173 (O'Brien, J., dissenting).   Judge O'Brien, thus, concluded that "an officer's

training (beyond explaining clearly established law) is irrelevant to the analysis."   544 F.3d

at 1173-74 (O'Brien, J., dissenting).

   In the majority opinion, Judge Seymour never distinguishes, overrules, or cites Tanberg

v. Sholtis or Gianetti v. City of Stillwater.  See Weigel v. Broad, 544 F.3d at 1143-55.  See also

Montoya v. Sheldon, 2012 WL 5476882, at *12.   Weigel v. Broad, however, is a published

opinion and Gianetti v. City of Stillwater unpublished; thus, the holding in Weigel v. Broad is

binding on the Court.   See 10th Cir. R. App. P. 32.1(A) ("Unpublished opinions are not

precedential, but may be cited for their precedential value."); United States  v. Lyons, 510 F.3d

at 1233 n. 2 ("Unpublished opinions are not binding precedent . . .  We mention [an unpublished

opinion] as we would an opinion from another circuit, persuasive because of its reasoned

analysis."); Montoya v. Sheldon, 2012 WL 5476882, at *13 ("Weigel v. Broad is a published opinion, however, and binding upon the Court at least to the extent of the holding.").[6]  Moreover, the Tenth Circuit recently reaffirmed the holding in Weigel v. Broad by considering a police officer's training to determine the reasonableness of the amount of force used by the officer. See Estate of Booker v. Gomez, 745 F.3d 405, 425 (10th Cir. 2014)(citing Weigel v. Broad, 544 F.3d at 1155).  Finally, the Court has always disagreed with Judge McConnell's bright-line-rule on SOPs in Tanberg v. Sholtis and the Tenth Circuit's reference to the rule in Marquez v. City of Albuquerque.  See Vondrak v. City of Las Cruces, at *17 (noting that SOPs and established police practices are relevant "to an Fourth Amendment inquiry," but noting that it does not have "the liberty to allow such testimony in light of Tenth Circuit law").  The Court is reluctant to extend that rule to training materials, and finds the Tenth Circuit's analysis in Weigel v. Broad more persuasive than the unpublished opinion of Gianetti v. City of Stillwater.

## LAW REGARDING THE RELEVANCY OF EVIDENCE

"The rules of evidence contemplate the admission of relevant evidence, and the exclusion of irrelevant and potentially prejudicial evidence."   Train v. City of Albuquerque, 629 F. Supp. 2d 1243, 1247 (D.N.M. 2009)(Browning, J.)(citing Fed. R. Evid. 401, 402, 403).

---

[6]This Court has previously criticized any distinction between SOPs and training material.

The Court cannot find a logically sound reason to distinguish between SOPs and training.  Both, the Court believes, are designed and used as guidelines to instruct officers what conduct is reasonable under given circumstances.  Logically, if training "duplicates the reasonableness standard that governs claims of excessive force under . . . the Fourth Amendment," Tanberg v. Sholtis, 401 F.3d at 1163, it should be excluded, as the Tenth Circuit held in Gianetti v. City of Stillwater.

Montoya v. Sheldon, 2012 WL 5476882, at *14.  Both Tanberg v. Sholtis and Weigel v. Broad are, however, published opinions and their holdings are clear; the Court will thus follow the law and permit the admission of training materials despite the prohibition against SOPs.  See Kerns v. Bd. of Comm'rs, 888 F. Supp. 2d 1176, 1227 (D.N.M. 2012)(Browning, J.)("The Court must faithfully follow the Tenth Circuit's decision and judgment.").

"Relevant evidence is evidence that has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."   United States v. Gutierrez-Castro, No. CR 10-2072 JB, 2011 WL 3503321, at *3 (D.N.M. Aug. 6, 2011)(Browning, J.)(citing Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.")).   "The standard for relevancy is particularly loose under rule 401, because '[a]ny more stringent requirement is unworkable and unrealistic.'"   United States v. Ganadonegro, 854 F. Supp. 2d 1088, 1127 (D.N.M. 2012)(Browning, J.)(quoting Fed. R. Evid. 401 advisory committee's notes).   Irrelevant evidence, or that evidence which does not make a fact of consequence more or less probable, however, is inadmissible.   See Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

## LAW REGARDING RULE 403

Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."   Fed. R. Evid. 403.   Under rule 403, the trial court must weigh the proffered evidence's probative value against its potential for unfair prejudice.   See United States v. Record, 873 F.2d 1363, 1375 (10th Cir. 1989).   "[I]t is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter [under rule 403]." United States v. Pettigrew, 468 F.3d 626, 638 (10th Cir. 2006)(quoting United States v. Sides, 944 F.2d 1554, 1563 (10th Cir. 1991))(internal quotation marks omitted).   "In performing the 403 balancing, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value."   Deters v. Equifax Credit Info. Servs., Inc., 202 F.3d

1262, 1274 (10th Cir. 2000).  The "exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly." United States v. Smalls, 605 F.3d 765, 787 (10th Cir. 2010).

The decision to admit or exclude evidence pursuant to rule 403 is within the trial court's discretion, see United States v. Lugo, 170 F.3d 996, 1005 (10th Cir. 1999), and the trial court's discretion to balance possible unfair prejudice against probative value is broad, see United States v. Bice-Bey, 701 F.2d 1086, 1089 (4th Cir. 1983); United States v. Masters, 622 F.2d 83, 87-88 (4th Cir. 1980).  The Supreme Court has noted:

> In deference to a district court's familiarity with the details of the case and its greater experience in evidentiary matters, courts of appeals afford broad discretion to a district court's evidentiary rulings . . . .  This is particularly true with respect to Rule 403 since it requires an "on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant."

Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008)(citation omitted).

Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response from the jury, or if the evidence otherwise tends to adversely affect the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged.  See United States v. Rodriguez, 192 F.3d 946, 951 (10th Cir. 1999). "Evidence is not unfairly prejudicial simply because it is damaging to an opponent's case." United States v. Caraway, 534 F.3d 1290, 1301 (10th Cir. 2008)(quoting United States v. Curtis, 344 F.3d 1057, 1067 (10th Cir. 2003)).  Rather, "[t]o be unfairly prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'"  United States v. Caraway, 534 F.3d at 1301 (quoting Fed. R. Evid. 403 advisory committee notes)(emphasis in original).

## <u>DEFINITION OF WILLFULLY UNDER 18 U.S.C. § 242</u>

Section 242 prohibits a defendant from "willfully subject[ing]" a person "to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or the laws of the United States."  18 U.S.C. § 242.  The deprivation of a constitutional or federal right and the willfulness of such deprivation are two separate elements.  <u>See</u> <u>United States v. Reese</u>, 2 F.3d 870, 884 (9th Cir. 1993)("[T]he violation of a federally protected right and the specific intent to violate that right are *separate* elements of the crime established by the statute." (emphasis in original)).

> To find the defendant guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:
>
> . . . .
>
> Second: the defendant deprived [name of person] of [his] [her] right to [name right], which is a right secured by the Constitution or laws of the United States.
>
> Third: the defendant acted willfully, that is, the defendant acted with a bad purpose, intending to deprive [name of person] of that right.

Tenth Circuit Pattern Jury Instructions Criminal § 2.17, at 103-104 (2011).

The Supreme Court, in <u>Screws v. United State</u>, 325 U.S. 91 (1945)("<u>Screws</u>"),[7] defined the term "willfully" in the § 242 context.[8]  The Supreme Court explained that the term "'willful'

---

[7]The opinion in <u>Screws</u> was a plurality opinion.  <u>See</u> <u>Screws</u>, 325 U.S. at 91.  A majority of the Supreme Court, however, has subsequently adopted the <u>Screws</u> reasoning.  <u>See</u> <u>Williams v. United States</u>, 341 U.S. 97, 81-82 (1951); <u>United States v. Guest</u>, 383 U.S. 745, 753-54 (1966); <u>United States v. Price</u>, 383 U.S. 787, 793 (1966); <u>Anderson v. United States</u>, 417 U.S. 211, 223 (1974).  <u>See also</u> <u>United States v. Johnstone</u>, 107 F.3d 200, 213 n.8 (3d Cir. 1997); <u>United States v. Reese</u>, 2 F.3d at 896 n.16.

[8]The Supreme Court in <u>Screws</u> construed the predecessor statute to 18 U.S.C. § 242 -- 18 U.S.C. § 52.  Courts interpret <u>Screws</u>' construction of the term "willfully" in the former § 52 as applicable to § 242.  <u>See</u> <u>United States v. Johnstone</u>, 107 F.3d at 207-09; <u>United States v. Bradley</u>, 196 F.3d 762, 769 (7th Cir. 1999); <u>United States v. Reese</u>, 2 F.3d at 896; <u>United States v. Couch</u>, 59 F.2d 171, No. 94-3292, at *3-4 (6th Cir. June 20, 1995)(unpublished).

is a word of 'many meanings, its construction often being influenced by its context.'" Screws, 325 U.S. at 101 (quoting Spies v. United States, 317 U.S. 492, 497 (1943)). The Supreme Court also noted that, in a criminal statute, willfully "generally means an act done with a bad purpose" and that it requires something more than merely doing "the act required by the statute." Screws, 325 U.S. at 101. For 18 U.S.C. § 242, the Supreme Court held that "the presence of a bad purpose or evil intent" by itself is insufficient to satisfy the "willfully" element. Screws, 325 U.S. at 103. To ensure that defendants are not punished for violating an unknown constitutional or federal right, the Court construed "willfully" as requiring a defendant to either "know or act[] in reckless disregard" in depriving a person "of a defined constitutional or other federal right." 325 U.S. at 104. As the Supreme Court stated, "[w]hen they act willfully in the sense in which we use the word, they act in open defiance or in reckless disregard of a constitutional requirement which has been made specific and definite." 325 U.S. at 105.

Accordingly, a conviction under § 242 requires proof that the defendant acted with the specific intent to deprive a person of some constitutional right. See Screws, 325 U.S. at 105. "[I]t [is] not sufficient that the defendants may have had a general bad purpose; . . . it [is] necessary that they have the actual purpose of depriving [the victim] of the constitutional rights enumerated in the indictment . . . ." Apodaca v. United States, 188 F.2d 932, 937 (10th Cir. 1951).

## <u>ANALYSIS</u>

The Court will grant the Motion. The training materials are relevant to whether Rodella acted willfully. Unlike SOPs, the Tenth Circuit permits the admission of training materials to show the reasonableness of an officer's conduct. Accordingly, the Court will permit the United States to introduce evidence of the training materials from the October, 2010, training course and

will permit the United States to introduce evidence of RASO's SOPs, assuming the United States is able to lay the foundation to establish that these SOPs are training materials that were part of the October, 2010, training course.

## I.      THE TRAINING MATERIALS ARE RELEVANT.

The training materials are relevant to whether Rodella acted willfully and whether he acted reasonably.   "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.  The United States must prove that Rodella "willfully" deprived Tafoya of "any rights, privileges, or immunities secured or protected by the Constitution or the laws of the United States."  18 U.S.C. § 242.  That is, the United States must prove that Rodella acted "in open defiance or in reckless disregard of a constitutional requirement which has been made specific and definite."  Screws, 325 U.S. at 105.  That burden is a high one; the United States must be given some leeway to prove the scienter requirement.  The training materials are relevant to show whether Rodella acted willfully.

After the Supreme Court identifies a new constitutional rule, law enforcement agencies change their training materials and their policies to conform to the new constitutional rule.  See Judith Resnik, Detention, The War on Terror, and the Federal Courts, 110 Colum. L. Rev. 479, 684 (2010)(noting that police policies and training materials were changed in response to Miranda v. Arizona, 384 U.S. 436 (1966), but noting that many changes were done to undercut the effectiveness of the so-called Miranda warnings); Anthony O'Rourke, Structural Overdelegation in Criminal Procedure, 103 J. Crim. L. & Criminology 407, 453 (2013)(noting that the Chicago Police Department "substantially revised its training protocols in response to the Supreme Court's decision in Mapp v. Ohio[, 367 U.S. 643 (1961)]").  See also Weigel v. Broad,

544 F.3d at 1154 (noting that a prior Tenth Circuit case was the reason for extensive law enforcement training on positional asphyxia).  Police training materials are formed, in part, to ensure that law enforcement officers do not violate other's constitutional rights.  These training materials also inform law enforcement officers of the rights that the Constitution secures.  The training that Rodella received, thus, may have partially informed him of the constitutional limitations of a high-speed chase.  Because of the training, Rodella may have been aware of Tafoya's constitutionally protected rights and aware of what he had to do to avoid violating those rights.  If it is shown that Rodella received training on how to properly perform a high-speed pursuit and it is shown that Rodella disregarded this training, then this information is relevant to whether Rodella willfully violated Tafoya's constitutional rights.  The training materials are probative to whether Rodella acted in open defiance or reckless disregard of Tafoya's constitutional rights.  See Screws, 325 U.S. at 105.  The training materials, and Rodella's adherence to them, has a "tendency" to make it more or less probable that he acted willfully, which is a fact of consequence in the case.  Fed. R. Evid. 401.  Accordingly, the training materials are relevant to whether Rodella acted willfully.

The training materials are also relevant to whether Rodella used excessive force.  Training materials may be used to show whether Rodella acted reasonably.[9]  See Weigel v. Broad, 544 F.3d at 1155.  Whether Rodella used excessive force will be judged under an objective reasonableness standard.  See Graham v. Connor, 490 U.S. 386, 395 (1989).  The

_____

[9]The United States requested only to use the training materials to show Rodella's state of mind and knowledge -- i.e., to show that he acted willfully.  See Motion at 3 ("In the instant case, the United States proposes to offer evidence of the defendant's training, which included training on RASO's SOPs, for the limited purpose of demonstrating the defendant's state of mind and his knowledge.").  The Tenth Circuit has held, however, that training materials may be used to show whether an officer acted reasonably.  See Weigel v. Broad, 544 F.3d at 1155.  The training materials are, thus, not only relevant to whether Rodella acted willfully, they are also relevant to whether Rodella acted reasonably.

Tenth Circuit has held that the reasonableness of an officer's conduct must be judged in light of the officer's training.  See Weigel v. Broad, 544 F.3d at 1155.  The training materials are, thus, also relevant to the reasonableness of Rodella's conduct, and have a tendency of making it more or less probable that Rodella used excessive force.  See Fed. R. Evid. 401.

## II.   TRAINING MATERIALS ARE ADMISSIBLE DESPITE THE TENTH CIRCUIT'S HOSTILITY TOWARDS THE ADMISSION OF SOPS.

The training materials are admissible at trial despite the Tenth Circuit's hostility towards the admission of SOPs.  Even though the Tenth Circuit has prohibited evidence of SOPs in excessive forces cases, see Tanberg v. Sholtis, 401 F.3d at 1168, it has permitted evidence of training materials, see Weigel v. Broad, 544 F.3d at 1155.  While there may not be a logical distinction between the two, see Montoya v. Sheldon, 2012 WL 5476882, at *14, the Tenth Circuit has drawn a distinction.  In adherence with Tenth Circuit precedent, the Court will permit the United States to introduce evidence of the training materials that Rodella received at the October, 2010, training course.

## III.   THE COURT WILL ALLOW EVIDENCE OF RASO'S SOPS IF THE UNITED STATES CAN FIRST SHOW THAT THE SOPS WERE PART OF THE OCTOBER, 2010, TRAINING MATERIALS.

The Court will allow evidence of RASO's SOPs if the United States can first establish that the SOPs were part of, and used in, the October, 2010, training course that Rodella attended.  The Tenth Circuit has taken a hard stance against the admissibility of SOPs in the excessive force context.  See Tanberg v. Sholtis, 401 F.3d at 1168.  The Tenth Circuit has held that evidence of SOPs and of an officer's adherence to them is irrelevant in the Fourth Amendment context.  See Tanberg v. Sholtis, 401 F.3d at 1168.  Despite this prohibition against SOPs, the Tenth Circuit permits the admission of training materials.  See Weigel v. Broad, 544 F.3d at 1155.

- 28 -

The same concerns that the Tenth Circuit expressed about SOPs, however, apply equally to training materials. The Tenth Circuit has expressed concern that SOPs may just duplicate "the reasonableness standard that governs claims of excessive force under . . . the Fourth Amendment." Tanberg v. Sholtis, 401 F.3d at 1163. This concern applies equally to training materials. Law enforcement agencies change their training materials in response to Supreme Court precedent. See Judith Resnik, supra, at 684; Anthony O'Rourke, supra, at 453. Both SOPs and training materials are, thus, just as likely to duplicate the reasonableness standard of the Fourth Amendment. The Tenth Circuit has also expressed concern that a jury may conclude that a violation of an SOP equates to a constitutional violation. See Tanberg v. Sholtis, 401 F.3d at 1165. The Tenth Circuit noted:

> The similarity of the SOP addressing excessive force to the objective standard employed by state and federal law would render jury confusion even more likely, tempting the jury to conclude that if experienced police officers interpreted [the defendant]'s actions as a violation of SOPs employing the same standards as the law, then [the defendant] must also have violated legal requirements.

Tanberg v. Sholtis, 401 F.3d at 1165. This concern also applies to training materials. A juror can just as easily assume that a violation of an SOP results in a constitutional violation as he or she can assume that a violation, or deviation from, an officer's training materials results in a constitutional violation. Each concern the Tenth Circuit expressed regarding SOPs applies with equal weight to training materials. Accordingly, "[t]he Court cannot find a logically sound reason to distinguish between SOPs and training [materials]." Montoya v. Sheldon, 2012 WL 5476882, at *14.

Despite the same concerns applying to both SOPs and training materials, the Tenth Circuit permits the admission of training materials to prove the reasonableness of an officer's conduct while prohibiting SOPs, and the Court agrees with the Tenth Circuit's rationale of

admitting training materials.  Because the "Court must faithfully follow the Tenth Circuit's decision and judgment," Montoya v. Sheldon, 2012 WL 5476882, at *14 (quoting Kerns v. Bd. of Comm'rs, 888 F. Supp. 2d at 1227), the Court will admit evidence of training materials even though the same concerns that the Tenth Circuit has expressed regarding SOPs apply equally to training materials.

Additionally, as in this case, when SOPs have been incorporated into an agency's training materials, and essentially become part of the training materials, the Court cannot see a logical reason for exclusion.  Once incorporated into the training materials, the SOPs should be treated like any other training material.  The concerns that the SOPs may duplicate the Fourth Amendment standard and may cause the jury to erroneously believe that a violation of the SOPs is a constitutional violation is just as relevant to the rest of the training materials as they are to the SOPs that are part of the training materials.  The Court cannot say that the SOPs are unique or that there is any additional prejudice in admitting training SOPs than in admitting any other training material.  Once incorporated into the training materials, SOPs do not contain any special or distinguishing characteristics that would warrant a different treatment than the rest of the training materials.  Accordingly, if SOPs are incorporated into a law enforcement officer's training materials -- and are used as part of the officer's training -- the SOPs should be admissible, like any other training material, to show the reasonableness of the officer's conduct.[10]

---

[10]Rodella argues that the SOPs do not apply to him, because they apply only to deputies and supervisors, rather than to the sheriff.  See Sept. 15, 2014, Tr. at 147:24-148:8 (Gorence). This argument might be applicable if the SOPs were being introduced as SOPs and were introduced to show that Rodella violated them, which the Tenth Circuit has prohibited.  See Tanberg v. Sholtis, 401 F.3d at 1164.  The SOPs are being introduced as training materials.  The SOPs will be used to show that Rodella was trained in the subject matter of the SOPs and not to show that Rodella was required to conform to SOPs.  It is irrelevant whether the SOPs apply to

The United States asserts that the SOPs were used as a part of the October, 2010, training course.  See Motion at 1.  Specifically, the United States asserts that Rodella was asked to bring RASO's SOPs regarding high-speed pursuits to the October, 2010, training course and that Rodella and the other trainees spent several hours discussing the SOPs during the course.  See Sept. 15, 2014, Tr. at 141:3-12 (Neda); id. at 142:3-143:21 (Neda, Court).  If the United States can show that this occurred, the Court will find that the SOPs were incorporated into the training materials.  If the SOPs were indeed used during the training course as part of the training materials, then they are admissible as training materials.  The United States, however, must first demonstrate that the SOPs were a part of the training materials and used during the training course.  If the SOPs were merely mentioned by the instructor in passing, or if Rodella and the other trainees were asked to review their respective agencies' SOPs as a homework assignment, then the SOPs may not have truly been a part of the training course and will be treated like any other SOP.  On the other hand, if the instructor used the SOPs during the course as part of his or her lesson and as a method to train the trainees on how to properly conduct a high-speed pursuit, then the SOPs may be considered training materials and are admissible.  As the proponent of the evidence, the United States has the burden of proving the SOPs' admissibility by proving that they are training materials.  See United States v. Bedford, 628 F.3d 1232, 1236-37 (10th Cir. 2010)(noting that "the government has the burden to establish the admissibility of its exhibits at trial and at sentencing").

---

Rodella.  If, for example, the instructors used SOPs from another sheriff department -- other than Rio Arriba County -- those SOPs would be admissible as training materials even though there is no question that Rodella is not required to conform to another sheriff department's SOPs.  The SOPs are being admitted as training materials, not as SOPs, and, thus, whether they apply to Rodella is irrelevant to their admissibility.

The United States must demonstrate that the SOPs were incorporated into the training materials for the SOPs to be admissible as training materials. The United States may accomplish this hurdle by either providing the Court with the SOPs before trial and demonstrating to the Court that the SOPs were part of the training materials, or by laying the foundation at trial that the SOPs were a part of Rodella's training materials. Either of these methods will suffice. If the United States cannot show that the SOPs were used during the October, 2010, training course, the Court will exclude them as ordinary SOPs. See Tanberg v. Sholtis, 401 F.3d at 1163.[11] If, however, the United States can show that the SOPs were incorporated in the training materials and were used as training materials during the October, 2010, training course that Rodella attended, the Court will allow their admittance as training materials. See Weigel v. Broad, 544 F.3d at 1155.

---

[11]The United States argues that, in United States v. Gould, the Court permitted evidence of a defendant's training and of SOPs "to show the defendant's state of mind and knowledge." Motion at 3 (citing United States v. Gould, 2007 WL 1302596, at *1). The situation in United States v. Gould is, however, distinguishable from the present case. See 2007 WL 1302596, at *8-9. In United States v. Gould, the United States brought a § 242 action against a defendant prison official for excessive force. See 2007 WL 1302596, at *1. The United States sought to introduce testimony that the defendant violated the prison's SOPs and acted contrary to his training. See 2007 WL 1302596, at *8-9. The Court noted that the training materials and SOPS were "not relevant for the purpose of showing that [the defendant] violated [the victim's] civil rights." 2007 WL 1302596, at *8 (citing Tanberg v. Sholtis, 401 F.3d at 1164 ("If [the officer] violated the [standard operating procedure] governing the use of force in effecting arrest . . . [that] is not relevant to determining if Plaintiff's arrest violated the [objective] reasonableness requirement of the Fourth Amendment.")(alterations in United States v. Gould but not in Tanberg v. Sholtis)). The Court, however, allowed evidence of the training materials and SOPs to support a charge that one of the defendants lied to the police when she told the police that she was unfamiliar with the weapons at the prison facility and that another defendant lacked training in a certain area. See 2007 WL 1302596, at *9. The Court permitted evidence of the training material and SOPs to be admitted for the purpose of proving that the defendant lied, and noted that it would "probably need to take objections one question at a time at trial." 2007 WL 1302596, at *9. Rodella has not been charged with lying about the training he received or about his familiarity with RASO's SOPs. The Court's conclusion in United States v. Gould is, thus, inapplicable to the present case. See 2007 WL 1302596, at *8-9.

**IT IS ORDERED** that the United States' Motion *In Limine* to Permit Evidence of Rio Arriba County Sheriff Office Procedures as Part of the Training Materials, filed September 9, 2014 (Doc. 45), is granted.  Plaintiff United States of America may introduce evidence of the training materials that Defendant Thomas R. Rodella received at the October, 2010, training course.  The United States may also introduce evidence of the Standard Operating Procedures that were used during the training course, if the United States can first establish that the SOPs were used during the training course that Rodella attended and were incorporated into the course's training materials that he used and reviewed.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Damon P. Martinez
  United States Attorney
Tara C. Neda
Jeremy Peña
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

        *Attorneys for the Plaintiff*

Robert J. Gorence
Louren M. Oliveros
Gorence & Oliveros PC
Albuquerque, New Mexico

        *Attorneys for the Defendant*