IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,                    §
                                             §
              Plaintiff,                      §
                                             §
       v.                                    §
                                             §   Case No. 14-CR-2783 JB
THOMAS R. RODELLA,                           §
                                             §
              Defendant.                      §
                                             §

## MOTION FOR RELEASE PENDING APPEAL

Defendant Thomas R. Rodella, through undersigned counsel, moves the Court under 18 U.S.C. §§ 3143(b) and 3145(c) for an order releasing him pending appeal.  Rodella is not a flight risk or a danger to the community.  His appeal is not for purpose of delay.  The appeal presents at least one substantial question:  the admission of evidence concerning three other incidents under Rule 404(b), combined with the prosecution's misuse of that evidence in closing argument.  That substantial question, if decided in Rodella's favor, is likely to result in reversal on both counts. And this case involves "exceptional reasons"--including the strength of Rodella's appeal, his poor health, the very low risk that he will commit acts of violence if released, the danger he faces while incarcerated, and his family's needs--that justify release under § 3145(c).[1]

## ARGUMENT

## I.     THE STANDARD FOR RELEASE PENDING APPEAL.

A court ordinarily must release a defendant pending appeal if it makes four findings:  (1) "the defendant has met his burden of proving by clear and convincing evidence that he is not

---

[1] This Court has jurisdiction to decide the motion for release pending appeal even after Rodella files his notice of appeal.  *See, e.g., United States v. Graham*, 488 Fed. Appx. 328 (10th Cir. 2012) (unpublished); *United States v. Meyers*, 95 F.3d 1475, 1488-89 n.6 (10th Cir. 1996).

likely to flee or pose a danger to the safety of any other person or to the community if released,"
(2) "the appeal is not for purpose of delay," (3) "the appeal raises a substantial question of law or
fact," and (4) "if that substantial question is determined favorably to defendant on appeal, that
decision is likely to result in reversal or an order for a new trial of all counts on which
imprisonment has been imposed."  *United States v. Affleck*, 765 F.2d 944, 953 (10th Cir. 1985)
(en banc) (quotation omitted); *see, e.g., United States v. Vigil*, 2007 U.S. Dist. LEXIS 17092, *9
(D.N.M. Feb. 16, 2007) (Browning, J.); 18 U.S.C. § 3143(b)(1).  When a defendant has been
convicted of a crime of violence--as Rodella has been--the Court must also find "exceptional
reasons" before it may release a defendant pending appeal.  18 U.S.C. §§ 3142(f)(1)(A),
3143(b)(2), 3145(c).

As we discuss below, Rodella meets these requirements.  The Court should therefore
release him on appropriate conditions.

## II.   FLIGHT RISK, DANGER, AND DELAY.

Rodella has established, through his conduct before and during trial and his presentations
at his initial release hearing and at sentencing, that he is neither a flight risk nor a danger to the
community.[2]  Nor is his appeal for purposes of delay.

First, Rodella is not a flight risk.  He has deep ties to the Northern New Mexico
community where he lives.  He was born in Espanola and has lived in the vicinity his entire life.
His family resides there, and he owns a home there.  PSR ¶¶ 44-50.  Rodella made every pretrial
and trial appearance, despite facing a potential sentence of up to life in prison (on Count 2) and a
mandatory minimum of seven years.  He is willing to wear a tracking device if ordered by the

---

[2] To the extent there is any question about the flight risk and danger prongs of the release
pending appeal standard, Rodella requests an evidentiary hearing at which he can meet his
burden of proof.

Court.  Under these circumstances, he is not a flight risk.  *See, e.g., United States v. Williamson*, 2013 U.S. Dist. LEXIS 55069, *41-*42 (D.N.M. Mar. 20, 2013) (Browning, J.); *Vigil*, 2007 U.S. Dist. LEXIS 17092, *16-*18.

Second, Rodella is not a danger to the community.  He has no criminal history, PSR ¶¶ 37-42, and the letters submitted to the Court in connection with the sentencing show that he has performed many good deeds.  As the Court found at sentencing, "I don't think [Rodella is] a threat to anyone as long as he's not a police officer or involved in law enforcement."  Sentencing T. 54; *see* Doc. 184 at 85.  Rodella is not currently a "police officer or involved in law enforcement," PSR ¶ 73, and his conviction in this case makes it extremely unlikely that he will ever again hold such a position.  He thus presents no danger.  *See, e.g., Vigil*, 2007 U.S. Dist. LEXIS 17092, *14-*16.

Third, Rodella's appeal is not for purpose of delay.  He pleaded not guilty, raised and preserved a number of issues at trial, and plans to pursue the appeal vigorously.  He has already ordered and received all transcripts, and he does not anticipate seeking any extensions of the briefing schedule once it is set.

## III.   THE RULE 404(b) ISSUE PRESENTS A SUBSTANTIAL QUESTION THAT, IF RESOLVED IN RODELLA'S FAVOR, WILL RESULT IN A NEW TRIAL.

Rodella will present at least one substantial question on appeal that, if decided in his favor, will result in a new trial on both counts:  the Court's admission of "other act" evidence under Fed. R. Evid. 404(b), combined with the prosecution's misuse of that evidence in closing argument.

The Tenth Circuit has held that "a 'substantial question' is one of more substance than would be necessary to a finding that it was not frivolous.  It is a close question or one that very well could be decided the other way." *Affleck*, 765 F.2d at 952 (quotations omitted); *see, e.g.,*

*United States v. Frownfelter*, 363 Fed. Appx. 675, 678 (10th Cir. 2010) (unpublished); *Williamson*, 2013 U.S. Dist. LEXIS 55069, at *29-*30.  In addition, the question must be "so integral to the merits of the conviction on which defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial." *Affleck*, 765 F.2d at 953 (quotation omitted); *see, e.g., Williamson*, 2013 U.S. Dist. LEXIS 55069, at *30.

The "substantial question" standard "does not require the district court to find that it committed reversible error."  *United States v. Pollard*, 778 F.2d 1177, 1181-82 (6th Cir. 1985).  As the Eleventh Circuit explained, "We . . . are unwilling to attribute to Congress the intention to deny bail pending appeal unless a district court judge found that he or she had committed error but was obstinately unwilling to grant a new trial or other relief to correct the error."  *United States v. Giancola*, 754 F.2d 898, 900 (11th Cir. 1985); *see Affleck*, 765 F.2d at 953 n.14.  Rather than find that it erred, the district court "need only make a judgment whether the question is close or one that 'very well' could go the other way."  *Vigil*, 2007 U.S. Dist. LEXIS 17092, at *23.

As we show in the following parts, the Rule 404(b) issue presents a "substantial question" that, if decided in Rodella's favor, will produce a new trial on both counts.

### A.      The Rule 404(b) Issue Is "Substantial."

The Court admitted testimony about three incidents entirely separate from the one at issue:  A traffic stop of Yvette Maes and her daughter on the night of January 14, 2014; a traffic stop of Jacob Ledesma and his family on March 20, 2013; and a traffic stop of Lisa Gonzales and her husband in August 2013.  Doc. 93.  The limits the Court attempted to place on the evidence-- finding it relevant only to motive, intent, plan, and absence of mistake or accident, *see id*. at 2, 37--were inadequate, because those issues either were not disputed, or were linked to the three

incidents by inferences that depended on propensity, or both.  Even if those limits had been adequate, the prosecution so far exceeded them in closing argument as to render them meaningless.  This case perfectly illustrates the dangers--and the abuse--of other act evidence introduced under Rule 404(b).

> **1.     The Evidence Was Not Relevant to Any Disputed Issue Except Through Propensity.**

Evidence of other acts may be admitted under Rule 404(b)--with a limiting instruction and subject to Rule 403 balancing--if it is relevant to a disputed issue other than propensity.  But it is not enough for the government to recite a non-propensity purpose for the evidence.  As the Tenth Circuit has explained, "evidence is admissible under Rule 404(b) only if it is relevant for a permissible purpose *and that relevance does not depend on a defendant likely acting in conformity with an alleged character trait*."  *United States v. Commanche*, 577 F.3d 1261, 1267 (10th Cir. 2009) (emphasis added); *see, e.g., United States v. Gomez*, 763 F.3d 845, 856 (7th Cir. 2014) (en banc) (Rule 404(b) "allows the use of other-act evidence only when its admission is supported by some propensity-free chain of reasoning").  Thus, the government must "explain how [the other act evidence] fits into a chain of inferences--a chain that connects the evidence to a proper purpose, *no link of which is a forbidden propensity inference*."  *United States v. Caldwell*, 760 F.3d 267, 277 (3d Cir. 2014) (quotation omitted; emphasis added); *see, e.g., United States v. Chapman*, 765 F.3d 720, 722 (7th Cir. 2014) (other act evidence may be admitted "*provided* that the evidence is relevant under a theory that does not rely on an inference about the actor's propensity") (emphasis in original).

With these principles in mind, we turn to the purposes for which the government offered the other act evidence.

**Motive and Intent:**

The Court found the other incidents relevant to show that "Rodella's motive and intent for pursuing Tafoya was to express his road rage, punish disrespect, and force Tafoya to submit to his authority and not to enforce any traffic law." Doc. 93 at 37; Doc. 129 at 9. It acknowledged that it was "most concerned about 404(b) evidence becoming propensity evidence . . . where the United States wants to use bad acts to prove intent in the crime charged." Doc. 93 at 36. It added: "The Court's concern is that this fuzzy link between the 404(b) evidence and the issue in the case is just a way for the United States to get in prohibited propensity evidence." *Id*.

Other courts have voiced similar concerns. The Seventh Circuit, for example, admonished courts to exercise "special caution when other-act evidence is offered to prove intent, which though a permissible non-propensity purpose is nonetheless most likely to blend with improper propensity uses." *Gomez*, 763 F.3d at 858; *see, e.g., United States v. Stacy*, 769 F.3d 969, 974 (7th Cir. 2014) (other act evidence offered to prove intent relied on improper propensity inference); *United States v. Miller*, 673 F.3d 688, 700 (7th Cir. 2012) ("When intent is an essential element of the charged crime, prior bad acts evidence directed to intent can easily be nothing more than propensity evidence.").

The Court's concern about the other act evidence becoming propensity evidence was well-founded; the "fuzzy link" between the three other incidents and Rodella's motive and intent during the Tafoya incident depended on Rodella "likely acting in conformity with an alleged character trait." *Commanche*, 577 F.3d at 1267. The Court's own explanation of relevance illustrates this point. The Court observed:

> Each incident involves allegations that Rodella engaged in road rage, that he was shown disrespect, and that he acted out aggressively during a situation in which the other driver did not recognize that he was a law enforcement officer. Although each incident is not identical . . . they are similar enough that they affect

the likelihood that Rodella acted willfully during the incident that resulted in the charged offense.

Doc. 93 at 30.  The other incidents "affect[ed] the likelihood that Rodella acted willfully during the [Tafoya] incident" because they show that he has a propensity for road rage and for acting aggressively when shown disrespect.  In other words, if Rodella displayed road rage and acted aggressively on other occasions, "he was more likely to have [displayed road rage and acted aggressively] this time.  This is precisely the propensity-based inferential logic that Rule 404(b) forbids." *Caldwell*, 760 F.3d at 282.  The Court itself obliquely recognized this point; it noted that "according to the account of [Maes, Ledesma, and Gonzales], [Rodella] may be a jerk, but there is no evidence that he has inappropriately used force."  Doc. 93 at 30.  That is the problem: the relevance of the government's evidence to motive and intent depended on showing Rodella to be a "jerk," coupled with the inference, "Once a jerk, always a jerk."  Rule 404(b), as interpreted in *Commanche*, forbids this inference.  *See, e.g., Gomez*, 763 F.3d at 862-63 (rejecting inference, "Once a drug dealer, always a drug dealer.").

**Plan:**

The Court admitted evidence of the three other incidents to show that "Rodella had a plan to drive in a threatening manner towards other motorists, and if he succeeded in provoking any disrespectful act, force the motorist to submit through a display of his authority.  The traffic encounters are part of a common plan Rodella had to require the citizens of Rio Arriba to submit to his authority."  Doc. 93 at 37; Doc. 129 at 9.  But there was no evidence of a "plan" in this case.  "Plan evidence is offered to show that the crime for which the defendant is accused is actually part of a pre-arranged plan or scheme."  *United States v. Smalls*, 752 F.3d 1227, 1239

n.5 (10th Cir. 2014).[3]  There was nothing "pre-arranged" about Rodella's encounter with Tafoya, or, for that matter, his encounters with Maes, Ledesma, and Gonzales.  What the government called a "plan" was just propensity by another name.  Indeed, the word "plan" in the Court's formulation can be replaced with "propensity" without changing the meaning.  The jury undoubtedly understood "plan" in this context to mean nothing more than that Rodella had a propensity for driving toward other motorists in a threatening manner and acting like a "jerk"--to use the Court's word--if they acted disrespectfully.

**Absence of Mistake or Accident:**

Finally, the Court admitted evidence of the other three incidents to show that "Rodella did not make a mistake or accidentally forget that his identity was not apparent to all motorists when he pursued Tafoya in a private jeep."  Doc. 93 at 37; Doc. 129 at 9.  The evidence could have been relevant for this purpose without an impermissible propensity-based inference--but, as discussed in more detail below, Rodella never claimed that he made a mistake with respect to Tafoya, or accidentally forgot that his identity as a law enforcement officer was not apparent to Tafoya.  *Compare United States v. Johnson*, 458 Fed. Appx. 727, 731-32 (10th Cir. 2012) (unpublished) (affirming admission of other acts of sexual touching where defendant claimed that charged act was accidental).  The government cannot erect a straw man--a non-existent claim of mistake or accident--as a pretext for introducing highly prejudicial other act evidence.

---

[3] In *United States v. Romine*, 377 F. Supp. 2d 1129 (D.N.M. 2005) (Browning, J.), for example, the Court found that evidence the defendant had distributed drugs on a previous occasion to a person he then tried to sexually assault might be relevant to show that he used the same plan-- providing drugs followed by sexual assault--on the occasion in question.  *See id*. at 1134.  It is unclear whether the Court's rationale squares with *Smalls*, but at least in *Romine* there was a discernible plan:  drug young women and then sexually assault them.  Here, there is no such plan.  There is only propensity.

### 2.     The Evidence Should Have Been Excluded Under Rule 403.

Before the Court admits other act evidence, it must determine under Fed. R. Evid. 403 whether the unfair prejudicial impact of the evidence substantially outweighs its probative value. *See, e.g., United States v. Trent*, 767 F.3d 1046, 1050 (10th Cir. 2014).   "This balancing requires great care on the part of the district court, because few categories of evidence bring greater risk of prejudice to the accused under Rule 403." *Caldwell*, 760 F.3d at 277 (quotation omitted).

**Unfair Prejudice:**

The Maes, Ledesma, and Gonzales evidence was extraordinarily prejudicial.   Such evidence is inherently prejudicial, because it "almost always carries some risk that the jury will draw the forbidden propensity inference." *Gomez*, 763 F.3d at 857.  Other act evidence "tends to distract the trier of fact from the main question of what actually happened on the particular occasion.  It subtly permits the trier of fact to reward the good man and to punish the bad man because of their respective characters despite what the evidence in the case shows actually happened.'" *Caldwell*, 760 F.3d at 284 (quoting Fed. R. Evid. 404(a), Advisory Committee Note); *see, e.g., United States v. Briley*, 770 F.3d 267, 277 (4th Cir. 2014) (other act evidence "carried a risk of shifting the trial's focus away from the confrontation whose violent and injurious nature had given rise to the prosecution, and toward the portrayal of a character of general disrepute").

The government increased the prejudice from the other act evidence in several ways.  It placed the evidence at the end of its case, where, under the "recency" principle, it would have the greatest impact on the jury.  *See, e.g.,* Ryan Patrick Alford, *Catalyzing More Adequate Federal Habeas Review of Summation Misconduct:  Persuasion Theory and the Right To an Unbiased Jury*, 59 Okla. L. Rev. 479, 513-15 (2006).  It elicited unnecessary details from the witnesses--including about how they felt when Rodella accosted them. *E.g.*, Trial T. 595 (Maes "extremely

upset"), 635-36 (Ledesma returned home through Farmington because his family was nervous about driving through Rio Arriba County), 697 (Gonzales works with and respects law enforcement, but what happened with Rodella was "frightening"; she and her husband sat beside the road for five minutes after the encounter with Rodella to "calm down").  And the government grossly misused the other act evidence in closing argument, as we discuss below.

The Court attempted to mitigate the prejudice through a limiting instruction.  Doc. 129 at 9.  Such instructions, although well-intended, have questionable value.  As Justice Jackson observed, "[T]he naive assumption that prejudicial effects can be overcome by instructions to the jury . . . all practicing lawyers know to be unmitigated fiction." *Krulewitch v. United States*, 336 U.S. 440, 453 (1949) (Jackson, J., concurring).  The instruction had particularly little effect here, because the jury could not have considered the other act evidence without drawing an impermissible propensity-based inference.  *See, e.g., Miller*, 673 F.3d at 702 ("For this case, it is enough to note that when the government cannot explain how the prior conviction relates to the question of intent without resorting to a propensity inference, it would be unfair to expect the jury to do so based only on this instruction.").

**Probative Value:**

The other act evidence had little probative value, for three principal reasons.  First, the Maes, Ledesma, and Gonzales incidents were dissimilar from the Tafoya incident in important ways.  None of the other incidents involved the use of force; the Tafoya incident did.  None of the other incidents involved the use of a private vehicle; the Tafoya incident did.  None of the other incidents involved a civilian driver; the Tafoya incident did.  None of the other incidents led to an arrest; the Tafoya incident did.  The only thing all four incidents had in common is that in each Rodella showed a propensity for behaving (in the Court's word) as a "jerk."  In other

10

words, the Maes, Ledesma, and Gonzales incidents had probative value primarily to show that Rodella has character flaws--precisely what Rule 404(b) forbids.

Second, the purported purposes of the other act evidence concerned matters that were largely undisputed.  As the Tenth Circuit has explained, "[W]hen an issue is not seriously disputed, there is little justification for admitting evidence that risks unfair prejudice."  *Trent*, 767 F.3d at 1050; *see, e.g., Chapman*, 765 F.3d at 727 ("[T]he degree to which the nonpropensity fact for which the other-act evidence is admitted actually is contested in the case is an important factor in the court's assessment of the probative value of the evidence under Rule 403."); *Gomez*, 763 F.3d at 857 ("One important issue in Rule 403 balancing in this context is the extent to which the non-propensity factual proposition actually is contested in the case."); *Caldwell*, 760 F.3d at 283 ("The probative value of prior act evidence is diminished where the defendant does not contest the fact for which supporting evidence has been offered.").

Rodella did not contend that his conduct toward Tafoya was the result of some "mistake" or "accident."  To the extent the other act evidence was relevant to those uncontested issues, it had little probative value.  Nor was there any issue concerning a "plan"; the government invoked the term solely to persuade the Court to admit the other act evidence.  There was no serious argument, and no evidence, that Rodella had some "plan" to accost motorists on the highways of Rio Arriba County.  Tellingly, the word "plan" never appears in the government's opening statement, and it appears in the closing argument only when the Court required the government to recite the Rule 404(b) "script" it had provided in its pretrial order.  Trial T. 1068.  The other acts evidence had no probative value with respect to any "plan."

Unlike lack of mistake or accident and plan, Rodella's motive and intent were at issue in the trial.  But those issues were of secondary importance.  The central dispute at trial was over

11

the underlying events:  Did Rodella's vehicle tailgate Tafoya?  Did Rodella's vehicle stop in the middle of the road after Tafoya pulled off and back up some 200 yards to confront him?  Did Tafoya spin his vehicle around in reverse in the cul de sac in a dangerous manner?  Did Rodella point his gun at Tafoya's head?  Was Tafoya roughly handled during his arrest?  The battle at trial was fought over these and related factual issues.  Rodella did not argue that he had acted as Tafoya contended, but had done so without intending to violate Tafoya's Fourth Amendment rights.  It was undisputed at trial that if Rodella had behaved as Tafoya claimed, the jury could readily have inferred that he acted willfully.  Rather than contest willfulness directly, Rodella presented a sharply different narrative of the encounter with Tafoya--a narrative that, if accepted by the jury, would have made it impossible to infer willfulness.  Thus, although willfulness was a contested issue, it was subsumed in the battle over the underlying facts.

Third, the other acts evidence was not necessary for the government to make its case, because there was ample direct evidence of the Tafoya incident.  Alleged victim Michael Tafoya, jogger Mark Thompson, Thomas Rodella, Jr., and four law enforcement officers (Undersheriff Vince Crespin, Lt. Randy Sanchez, Sgt. Andy Gutierrez, and Officer Frank Turrieta) all gave first-hand accounts of aspects of the incident.  As witness after witness took the stand, "the jury learned about the [Tafoya] incident from every angle."  *Briley*, 770 F.3d at 277.  The jury thus did not need evidence of the Maes, Ledesma, and Gonzales incidents to obtain a complete understanding of the charged incident.

For all these reasons, the other act evidence had minimal probative value.  The extraordinary--and unfair--prejudicial impact of the evidence far outweighed what little legitimate probative value it had.  The evidence thus should have been excluded under Rule 403.

### 3.      The Prosecution Used the Evidence To Show Propensity and for Other Impermissible Purposes in Closing Argument.

Admission of the other act evidence would have presented a close question on appeal even if the government had adhered scrupulously to the Court's restrictions on its use.  In closing argument, however, the prosecution disregarded the Court's "script" and flouted the limits it had placed on the other act evidence.  *See, e.g., United States v. Richards*, 719 F.3d 746, 763-65 (7th Cir. 2013) (reversing conviction where prosecution used other act evidence improperly in closing); *United States v. Simpson*, 479 F.3d 492, 503 (7th Cir. 2007) ("Just as introducing evidence to show propensity is improper, so too is arguing to a jury that it should convict a defendant based on the defendant's propensity to commit a crime.").  To gain the most power from the improperly admitted evidence, the government highlighted it at the beginning of its closing argument and again at the end of its rebuttal.  *See* Alford, *supra*, 59 Okla. L. Rev. at 513-15.

The government began its closing using the other act evidence explicitly to show Rodella's bad character.  It described Rodella as "a man who lets his distorted ego lead to aggression he cannot control."  Trial T.1036.  It turned immediately to the Maes incident:  "And then you met Yvette Maes, the woman who was traveling with her 15-year-old daughter, dead of night in the middle of nowhere, frightened to death by this man.  And what did she say about him?  'This man's ego is unbelievable.'"  Trial T.1036-37.  Having invoked Maes to establish that Rodella has an "unbelievable" ego--another way to describe him as arrogant--the prosecution contrasted Rodella's flawed character with Tafoya's admirable qualities:  "In contrast, you have the victim, Michael."  Trial T.1037.  The "victim," according to the prosecution, is "peaceful," "pleasant," "simple," and "not sophisticated."  Trial T.1037.  He has a "touch of gentleness" and

a "boat load of patience."  Trial T.1038.  The prosecution thus used the Maes incident for a forbidden purpose:  to contrast Rodella's arrogance with Tafoya's "gentleness."

After invoking the other act evidence to contrast Rodella's character with Tafoya's, the prosecution turned to the Tafoya incident itself.  It argued that "as [Tafoya] got onto 399, that SUV he had seen, all of a sudden, bam, on his tail.  Boy, is that familiar, considering what else you've heard.  Remember Ms. Yvette Maes?"  Trial T. 1039.  Defense counsel objected.  At the bench, the Court admonished the prosecution to "[b]e careful about comparing the incidents to this incident, and tie it to the willfulness."  Trial T.1039.  Rather than give an immediate limiting instruction, as the defense requested, the Court told the prosecution:  "You clean it up.  And we'll see how it goes."  Trial T.1040.

The prosecution ignored the Court's directive.  It mentioned the other act evidence once more in its first closing, again without tying it to willfulness:   "[Brian Coss] also taught [Rodella], you're never to pull alongside a car in a pursuit.  Do you remember--we'll get to Ms. Lisa Gonzales in a moment."  Trial T.1051.  This was a propensity argument; there was no evidence that Rodella's vehicle pulled alongside Tafoya's vehicle during their encounter.  The prosecution's point was that Rodella has a propensity for violating the instruction he received on conducting safe pursuits.

At the end of the prosecution's first closing, the defense again objected to its use of the other act evidence.  The defense requested an instruction that the prosecution's comments were improper and violated the Court's ruling, and it moved for a mistrial.  Trial T.1062-63.  The Court acknowledged that it was "concerned about it.  I made this real clear.  And you didn't do it."  Trial T.1063.  But the Court did not give the requested instruction or grant a mistrial.  Instead, it again directed the government to "clean[] it up" before the defense closing, by

"put[ting] that jury instruction on there and tell[ing] the jury it can only be used for this purpose." Trial T.1064.  When the jury returned, the prosecution placed the Court's limiting instruction on the displayer and read it to the jury--without, however, renouncing or retreating from its previous, propensity-based arguments.  Trial T.1067-68.

The prosecution returned to the other act evidence at the end of the rebuttal, when the evidence would have the most impact on the jury.  Again the prosecution ignored the limits the Court had attempted to place on the evidence.  It introduced this part of its argument with a pointed rhetorical question:   "What about the defendant's other victims?"  Trial T.1128.  It answered that question in emotional terms that focused directly on Rodella's character and the effect of his conduct on Maes, Ledesma, and Gonzales.  The prosecution described Maes as "a woman alone with her 15-year-old daughter in the middle of nowhere between 9:30 and 10:00 at night," confronted with Rodella "yell[ing] at her."  Trial T.1128-29.  Maes was "freaking out." Trial T.1128.  The prosecution argued: "If you remember, this happened around January 2014, but she had a difficult time, even today, here in September."  Trial T.1129.  It added that Rodella "threatened [Maes] with jail" and "lied to her" about having an emergency.  Trial T.1129.  None of this argument had anything to do with the purposes for which the Court admitted the other act evidence.  It served only to paint Rodella as a bad person who had inflicted needless emotional distress on Maes.

After a brief reference to Ledesma, the prosecution turned to Gonzales.  It described Rodella driving "into the oncoming lane.  It's only a two-lane highway, and now they're driving side by side, maybe 45 miles per hour.  Imagine that, imagine a law enforcement officer doing that."  Trial T.1131.  It argued that Rodella rolled down his window and told Gonzales' husband, "Pull the F over.  Can you imagine that?"  Trial T.1131.  It described Rodella "so enraged, not

worrying about the community safety.  Have you also noticed?  That he leaves the rear half of his truck in the traffic lane.  It's sitting on a highway."  Trial T.1131-32.  The prosecution noted that Rodella put his hand on his gun as he approached the Gonzales vehicle, and it added:  "And then he's wearing a cowboy hat, a black cowboy hat--suitable, by the way, should have been black--and he puts his head in the window.  Who does that?  What law enforcement officer does that, invades your space like that?  And starts yelling at her husband."  Trial T.1132.  The government again emphasized the effect Rodella's conduct had:  "They went through all of that.  And do you remember I asked her to enact the way he spoke.  She couldn't do it.  She was all choked up.  That happened August 2013, more than a year ago, and it still upsets her."  Trial T.1132.

The prosecution summed up the other act evidence this way, just minutes before the end of its rebuttal:

> So when you're thinking about Michael Tafoya, I'm going to ask you to think about Yvette Maes, and think about Lisa Gonzales.  It's been months and months, a year to Lisa Gonzales.  And a gun wasn't pointed at their heads.  How do you think Michael Tafoya felt?  Lisa Gonzales and her husband were so upset after that, they had to sit in their car for five minutes, if you remember, before they could even continue on their drive home.
>
> [Rodella] said he's not concerned about the community.  That's his mindset.  Not concerned about Maes, her daughter; Mr. Ledesma, his family; Lisa Gonzales; certainly not Michael Tafoya, willing to put a gun to his head to satisfy his ego.  His ego trumps all.  And this time it has caught up with him.

Trial T.1132-33.

This Court has observed that "[t]he genius of the Anglo-American criminal justice system is that a defendant is tried only for the crime with which the defendant is charged, and not for past crimes, uncharged criminal conduct, or bad acts. . . .  In other words, criminal defendants are tried only for the crime charged and not for being a bad person."  Doc. 93 at 34-35.  The prosecution ignored this principle.  Its closing argument exhorted the jury to punish Rodella

because he is a bad person--an arrogant and egotistical bully--who has inflicted emotional trauma on motorists in Rio Arriba County.  "Having obtained admission of the evidence for a specific, non-propensity purpose," the government then "deploy[ed] the Rule 404(b) evidence in support of some other argument or inference"--an "argument or inference" aimed directly at Rodella's character.  *Richards*, 719 F.3d at 763-64.  In light of the prosecution's tactical decision to flout the Court's "script" for the other act evidence, the Rule 404(b) issue is not merely a "close question or one that very well could be decided the other way," *Affleck*, 765 F.2d at 952 (quotations omitted); it strongly favors Rodella.  *See, e.g., United States v. Brown*, 327 F.3d 867, 871-72 (9th Cir. 2003) (reversing conviction where prosecution used other act evidence to argue defendant's criminal propensity in closing)

**B.     A Ruling in Rodella's Favor on the Rule 404(b) Issue Will Result in a New Trial on Both Counts.**

The admission of the other act evidence was not harmless, and thus a ruling in Rodella's favor on the Rule 404(b) issue will result in a new trial on both counts.

"A harmless error is one that does not have a substantial influence on the outcome of the trial; nor does it leave one in grave doubt as to whether it had such effect."  *Commanche*, 577 F.3d 1269 (quotation omitted); *see, e.g., Miller*, 673 F.3d at 701.  Here, there is little doubt that the other act evidence influenced the outcome.  The prosecution alluded in opening to "three other victims of the violence of this defendant."  Trial T. 36-37.  It presented the three witnesses near the end of the prosecution case, taking advantage of the "recency" effect.  It elicited emotional testimony from the witnesses about the effect of Rodella's behavior on them.  It began its first closing argument and ended its rebuttal with emotional, propensity-based arguments derived from the other act evidence.  And it obtained the intended result:  a guilty verdict so swift that the jury could not possibly have carefully weighed the evidence bearing on the Tafoya

incident. Under these circumstances, the error in admitting the evidence cannot be deemed harmless. *See, e.g., Caldwell*, 760 F.3d at 285 (error in admitting other act evidence not harmless, where defendant "vigorously maintained his innocence" and presented a substantive defense); *Miller*, 673 F.3d at 700-01 (error in admitting other act evidence not harmless even though the government's case was "certainly strong"; evidence "distracted the inquiry from what happened in [the charged incident] and invited the jury to decide guilt for the wrong reasons"); *Commanche*, 577 F.3d at 1269-70 (error in admitting other act evidence not harmless even though defendant testified and fact of conviction would have been admissible for impeachment under Rule 609; court recognizes that other act evidence is "strong medicine for juries").

## IV.    EXCEPTIONAL REASONS JUSTIFY RELEASE PENDING  APPEAL.

In the typical case, Rodella would be released pending appeal without any further showing. Because he has been convicted of a crime of violence, however, he must make a further showing of "exceptional reasons," 18 U.S.C. § 3145(c); *see id.* §§ 3142(f)(1)(A), 3143(b)(2), meaning reasons that are "clearly out of the ordinary, uncommon, or rare," *United States v. Mutte*, 383 Fed. Appx. 716, 718 (10th Cir. 2010) (unpublished) (affirming order granting release for exceptional reasons); *see, e.g., United States v. Ganadonegro*, 2012 U.S. Dist. LEXIS 47266, *12 (D.N.M. Mar. 14, 2012) (Browning, J.) (same); *United States v. Jager*, 2011 U.S. Dist. LEXIS 21203, *52-*53 (D.N.M. Feb. 17, 2011) (Browning, J.) (discussing "exceptional reasons" standard). In determining whether exceptional reasons for release exist, "'[a] wide range of factors may bear upon the analysis.'" *Id.* at *53 (quoting *United States v. Garcia*, 340 F.3d 1013, 1018 (9th Cir. 2003)); *see, e.g., Ganadonegro*, 2012 U.S. Dist. LEXIS 47266, at *12 (same). Here, there are five such reasons that, in combination, are "exceptional."

First, as shown at length above, Rodella has "an unusually strong chance [of] obtaining a reversal of his conviction on appeal." *Garcia*, 340 F.3d at 1020 ("The nature of the defendant's

arguments on appeal may also be considered by the district court in determining whether exceptional reasons exist. When there appears to be an unusually strong chance that the defendant will succeed in obtaining a reversal of his conviction on appeal he may be able to demonstrate exceptional reasons for delaying the commencement of his sentence."); *see, e.g., United States v. Hill*, 827 F. Supp. 1354, 1358 (W.D. Tenn. 1993) (finding exceptional reason for release where defendant had a strong chance of prevailing on appeal on his insufficiency of the evidence claim). Predicting the outcome of an appeal always involves a degree of speculation, but--particularly in light of the government's abuse of the other act evidence in closing--the Rule 404(b) issue gives Rodella a significant likelihood of success.

Second, Rodella's poor health constitutes an "exceptional reason" warranting release pending appeal. *See, e.g., Garcia*, 340 F.3d at 1019-20; *United States v. Smith*, 2014 U.S. Dist. LEXIS 99024, *39 (W.D. Pa. July 22, 2014) (recognizing "significant medical needs of the defendant" as a potential exceptional reason for release). The PSR details his health problems. PSR ¶¶ 56-57; *see* Doc. 184 at 80-82, 86 (discussing Rodella's health). Those problems have worsened during his incarceration at the Torrance County detention facility. Although, as the Court observes, the BOP "is more than capable of providing the necessary treatment" for Rodella's medical needs, Doc. 184 at 81, his health may constitute an "exceptional reason" for release even though "the requisite medical treatment is available in prison," *Garcia*, 340 F.3d at 1019-20. Moreover, Rodella will remain in Torrance County for some further period before he is designated and transported to a federal prison, and the detention facility, despite its efforts, cannot match the BOP's health care resources.

Third, "[t]he nature of the violent act itself" constitutes an exceptional reason for release. As the Court recognized at sentencing, the alleged violence in this case occurred in the context of

Rodella's role as a law enforcement officer.  He is not otherwise a danger to anyone.  Sentencing T. 54; *see* Doc. 184 at 85 ("[A]s long as Rodella is not a law enforcement officer, it is unlikely the Court needs to use incarceration to protect the public from Rodella.").  Rodella no longer holds a law enforcement position, and there is no chance he will have such a position while his appeal is pending or, very likely, ever again.  Because Rodella has been permanently removed from the environment where his violence allegedly occurred and otherwise presents very low risk of future violence, he is likely "not the type of violent person for whom Congress intended the mandatory detention rule."  *Garcia*, 340 F.3d at 1019.

Fourth, Rodella's status as a former law enforcement officer "impose[s] exceptional risks . . . involving his physical . . . well-being."  *Id.* at 1020.  He has received threats since his incarceration in Torrance County.[4]  Although the danger attendant on Rodella's status as a former law enforcement officer may not alone constitute an "exceptional reason" justifying release-- there is no "law enforcement exception" to § 3145(c)--it is a factor the Court can consider.  *See, e.g., United States v. Koon*, 6 F.3d 561, 568 (9th Cir. 1993) (Reinhardt, Noonan, and Kozinski, JJ., dissenting) (arguing that former police officers who are first offenders, raise no risk of continued violence, and "for whom any prison sentence may entail substantial risks" present exceptional reasons for release); Doc. 184 at 89 ("[W]hile the Court is confident that the BOP will protect [Rodella's] physical safety, anytime a police officer is sent to prison there is a concern.").

Finally, Rodella's family circumstances weigh in favor of release under § 3145(c).  *See, e.g., United States v. Kaquatosh*, 252 F. Supp. 2d 775, 778-79 (E.D. Wis. 2003) (concluding that unusual family circumstances can constitute an "exceptional reason" for release); *United States v.*

---

[4] To the extent the Court wishes evidence on this issue, we ask leave to present it in camera.

*Franklin*, 843 F. Supp. 2d 620, 623-24 (W.D.N.C. 2012) (finding "exceptional reasons" for release for additional three months where defendant's son suffered from mental illness and wife needed assistance with him).  Of course, "many defendants' families have to face the harsh reality that one of their family members will go to prison," *Ganadonegro*, 2012 U.S. Dist. LEXIS 47266, at *15, but Rodella's separation "will be particularly hard here," Doc. 184 at 90, for his children, in whose lives he plays an important role, and also for his mother and his wife of 28 years.  If his conviction is affirmed, then his family will have to pay the price for his conduct. But during the period the appeal is pending, his family's needs provide an "exceptional reason" for release.

In combination, these circumstances constitute "exceptional reasons" that make it "unreasonable to incarcerate [Rodella] prior to the appellate court's resolution of his appeal." *Garcia*, 340 F.3d at 1019.

## CONCLUSION

For the foregoing reasons, the Court should release Rodella on appropriate conditions pending appeal.

Respectfully submitted,

___*/s/  Robert J. Gorence*_____
Robert J. Gorence
Louren Oliveros
Gorence & Oliveros, P.C.
1305 Tijeras Avenue, NW
Albuquerque, NM 87102
Phone: (505) 244-0214
Fax:    (505) 244-0888
Email: gorence@golaw.us
Email: oliveros@golaw.us

21

_____/s/ John D. Cline_____
John D. Cline
Law Office of John D. Cline
235 Montgomery Street, Suite 1070
San Francisco, CA  94104
Phone: (415) 322-8319
Fax:     (415) 524-8265
Email: cline@johndclinelaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing pleading was emailed to

counsel of record by CM/ECF this 6th day of February, 2015.

                                                   *__/s/ John D. Cline_____*
                                                   John D. Cline