**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

THOMAS R. RODELLA,

       Movant,

vs.

                                     No. CV 19-0275 JB\CG

                                     No. CR 14-2783 JB

UNITED STATES OF AMERICA,

       Respondent.

**<u>MEMORANDUM OPINION AND ORDER</u>**

**THIS MATTER** comes before the Court on the Amended Motion to Vacate under 28 U.S.C. § 2255, filed December 11, 2019 (Doc. 22)("Amended Motion"). The primary issues are: (i) whether Movant Thomas Rodella is time-barred from bringing his Motion; and (ii) whether the Supreme Court of the United States of America's decision in <u>United States v. Davis</u>, 139 S. Ct. 2319 (2019), retroactively applies to, and thus invalidates, Rodella's conviction and sentence under 18 U.S.C. § 924(c)(1)(A)(ii). The Court concludes that (i) Rodella is not time-barred from bringing his Amended Motion because (i) 28 U.S.C. § 2255(f)(3) permits him to bring a claim under the new substantive rule of criminal procedure announced in <u>United States v. Davis</u>; and (ii) the Supreme Court's decision in <u>United States v. Davis</u> retroactively applies to Rodella's conviction and sentence but does not invalidate his sentence because the Court concludes that he was sentenced under the elements clause, which <u>United States v. Davis</u> did not declare unconstitutionally vague, and not the residual clause, which <u>United States v. Davis</u> did declare unconstitutionally vague.[1]

**<u>FACTUAL BACKGROUND</u>**

---

[1]An evidentiary hearing is scheduled for January 24, 2020. The parties may make arguments and/or present evidence at that hearing.

The Court previously has laid out the underlying case's factual background in its Memorandum Opinion and Order in United States of America v. Thomas R. Rodella & Thomas R. Rodella, Jr.:

> Given the jury's verdict, the Court takes the facts from the evidence in a light most favorable to the United States. On March 11, 2014, Michael Tafoya pulled his car out of a driveway and onto the road, while a green jeep was traveling down the same road. Thomas R. Rodella, Jr., who was driving the jeep, began flashing the jeep's headlights and began tailgating Tafoya's car for the next quarter mile. Tafoya slowed down his car and pulled over to the side of the road to allow the jeep to pass. Once stopped, Tafoya raised his hands and said: "What the hell?" The jeep passed Tafoya's car, but then stopped in the middle of the road and backed up, until it parked about twenty-five feet in front of Tafoya's car. Rodella and Rodella, Jr. got out the jeep and began walking towards Tafoya's car while motioning for Tafoya to get out of his car and saying "come on." Because Tafoya thought that Rodella and Rodella, Jr. wanted to fight, and because he did not know whom they were, he was afraid. Wanting to avoid a confrontation, Tafoya drove away, and Rodella and Rodella, Jr. got back into the jeep and began chasing him.
>
> Tafoya sped up, and eventually turned onto a private dirt road to escape from Rodella and Rodella, Jr. When Tafoya reached the end of the dirt road, he tried to turn his car around while Rodella got out of the jeep with a gun in his hand. Tafoya backed up his car until it hit a pole that was behind it. Rodella opened the passenger door of Tafoya's car and jumped in with his gun in his hand. Rodella attempted to point the gun at Tafoya's face, and Tafoya begged for Rodella not to kill him. While Tafoya was begging Rodella not to kill him, Rodella twice yelled: "It's too late." From the driver's side of the car, Rodella, Jr. grabbed Tafoya by his arm and shirt, pulled him out of the car, and threw him to the ground. Rodella, Jr. held Tafoya on the ground and told Tafoya that Rodella was the sheriff. Tafoya asked to see Rodella's badge, and Rodella pulled Tafoya's head up by his hair and said: "You want to see my badge mother fucker? Here's my badge." Rodella then struck Tafoya in his face with the badge. Before being hit in the face with the badge, Tafoya did not see Rodella display his badge and did not know that he was the sheriff. The Rio Arriba County Deputy Sheriffs arrived, and Tafoya was handcuffed and arrested.

101 F. Supp. 3d 1075, 1081-82 (D.N.M. 2015)(Browning, J.).

## PROCEDURAL BACKGROUND

Rodella was convicted of: (i) violating Tafoya's constitutional rights by using unreasonable force and for conducting an unlawful arrest in violation of 18 U.S.C. § 242; and (ii) using a firearm

during a crime of violence's commission in violation of 18 U.S.C. § 924(c)(l)(A)(ii) on September 26, 2014, see United States v. Thomas R. Rodella & Thomas R. Rodella, Jr., No. CR 14-2783, Verdict at 1-2, filed September 26, 2014 (Doc. 127)("Verdict"), and the Court sentenced him to 121 months in prison, see United States v. Thomas R. Rodella & Thomas R. Rodella, Jr., No. CR 14-2783, Second Amended Judgment at 3, filed February 18, 2015 (Doc. 206)("Judgment"). This Judgment became final on October 3, 2016. See Petition for Writ of Certiorari Denied by an Order of Supreme Court of the United States as to Thomas R. Rodella, filed October 3, 2016 (Doc. 238). Rodella brings this action to vacate his sentence. See Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, filed March 25, 2019 (Doc. 1)("Motion").

1.     **The Trial.**

After a five-day trial, a jury convicted Rodella of (i) violating Tafoya's constitutional rights by using unreasonable force and for conducting an unlawful arrest in violation of 18 U.S.C. § 242; and (ii) using a firearm during a crime of violence's commission in violation of 18 U.S.C. § 924(c)(l)(A)(ii). See Verdict at 1-2. At trial, Rodella did not call David Thompson, who called 911 and reported that someone had a gun at the scene. See United States' Answer to Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence at 7, filed July 8, 2019 (Doc. 7)("Answer to Original Motion"). In its instructions to the jury, the Court described the second count of the instructions as follows:

> On or about March 11, 2014, in Rio Arriba County in the District of New Mexico, the defendant, THOMAS R. RODELLA, during and in relation to a crime of violence for which the defendant may be prosecuted in a court of the United States, specifically, deprivation of civil rights under color of law, as charged in Count I of this indictment, knowingly carried and brandished a firearm, and in furtherance of such crime, possessed and brandished said firearm.

All in violation of 18 U.S.C. § 924(c)(l)(A)(ii).

Court's Final Jury Instructions (with citations) at 12, filed September 26, 2014 (Doc. 129)("Final Jury Instructions")(citing Stipulated Jury Instructions, Parties' Stipulated Instruction No. 12 at I, 18, filed September 10, 2014 (Doc. 59)(12. Superseding Indictment Charges)(adapted); Superseding Indictment at 1-2, filed September 9, 2014 (Doc. 54)).  The Court gave the jury the following instructions regarding Count 2:

> Mr. Rodella is charged in Count 2 with a violation of 18 U.S.C. section 924(c)(l).
>
> This law makes it a crime to use or carry and brandish a firearm during and in relation to any crime of violence for which a person may be prosecuted in a court of the United States.
>
> To find Mr. Rodella guilty of this crime you must be convinced that the United States has proved each of the following beyond a reasonable doubt:
>
> *First*: Mr. Rodella committed the crime of deprivation of civil rights, as charged in Count I of the indictment. If you find Mr. Rodella committed the crime of deprivation of civil rights, as charged in Count I of the indictment, you are instructed that deprivation of civil rights is a crime of violence;
>
> *Second*: Mr. Rodella used or carried a firearm and brandished that firearm;
>
> *Third*: during and in relation to the crime of deprivation of civil rights;
>
> The phrase "during and in relation to" means that the firearm played an integral part in the underlying crime, that it had a role in, facilitated (i.e., made easier), or had the potential of facilitating the underlying crime.
>
> Mr. Rodella knowingly "uses" a firearm when it (1) is readily accessible and (2) is actively employed during and in relation to the underlying crime.
>
> Mr. Rodella knowingly "carries" a firearm when he (1) possesses the firearm through the exercise of ownership or control and (2) transports or moves the firearm from one place to another.
>
> A defendant knowingly "brandishes" a firearm when he displays all or part of the firearm, or otherwise makes the presence of the firearm known to another person, with the intent to intimidate that person, regardless of whether the firearm

is directly visible to that person.

> In determining whether Mr. Rodella knowingly used or carried and brandished a firearm during and in relation to the underlying crime, you may consider all of the facts received in evidence including the nature of the crime, the usefulness of a firearm to the crime, the extent to which a firearm actually was observed before, during and after the time of the crime, and any other facts that bear on the issue.

> A firearm plays an integral part in the underlying crime when it furthers the purpose or effect of the crime and its presence or involvement is not the result of coincidence.  The government must prove a direct connection between Mr. Rodella's use or carrying of the firearm and the underlying crime but the crime need not be the sole reason Mr. Rodella used or carried the firearm.

> The term "firearm" means any weapon that will or is designed to or may readily be converted to expel a projectile by the action of an explosive.  The term "firearm" also includes the frame or receiver of any such weapon, or any firearm muffler or firearm silencer, or destructive device.

Final Jury Instructions at 25-26 (citing Tenth Circuit Pattern Jury Instructions Criminal 2.45, at 153-54 (2011)(**USING/CARRYING A FIREARM DURING COMMISSION OF A DRUG TRAFFICKING CRIME OR CRIME OF VIOLENCE - 18 U.S.C. § 924(c)(l)**)(modified); United States' Second Set of Requested Jury Instructions, United States' Requested Instruction No. 10 at 2, 16-17, filed September 18, 2014 (Doc. 89)(10.2.45 Using/Carrying a Firearm During Commission of a Drug Trafficking Crime or Crime of Violence)(modified); 18 U.S.C. § 924(c)(4)).  The Court sentenced Rodella to 121 months in prison.  See Judgment at 3.

### 2.    __Relevant Post-Conviction Proceedings.__[2]

Rodella unsuccessfully appealed his case to the United States Court of Appeals for the Tenth Circuit.  See Notice of Appeal, filed February 6, 2015 (Doc. 194).  Rodella petitioned the

---

[2]In this Memorandum Opinion and Order, the Court does not summarize the procedural history regarding the Writ of Garnishment, filed May 28, 2015 (Doc. 218), and related motions and orders.

Supreme Court for a writ of certiorari on March 17, 2016 (Doc. 238). The Supreme Court denied the writ of certiorari. See Petition for Writ of Certiorari Denied by an Order of Supreme Court of the United States as to Thomas R. Rodella, filed October 3, 2016 (Doc. 238).

**3.       The Motion.**

Rodella filed his Motion, which is a pro se motion that asks the Court to "issue a writ of habeas corpus and vacate [Rodella's] sentence." Motion at 33. Rodella states six grounds in support of his request. See Motion at 4-24. First, Rodella argues that he was deprived of effective assistance of counsel when his attorney, Robert Gorence, did not call Rodella as the first defense witness. See Motion at 4. Rodella contends that Mr. Gorence deprived him of the opportunity to be heard and the "fundamental due process right to present his case." Motion at 4. Rodella states that he has not raised this issue during any previous appeal or post-conviction proceeding, because he was "deprived of effective assistance of counsel." Motion at 11. Second, Rodella argues that he was "deprived of effective assistance of counsel" during trial preparation, because Mr. Gorence did not investigate issues essential to the case. Motion at 12. Rodella argues, therefore, that his trial was "fundamentally unreliable," because Mr. Gorence's lack of investigation "deprived [him] of his due process right to present critical defense evidence at trial." Motion at 12. Rodella states that he has not raised this issue during any previous appeal or post-conviction proceeding, because he was "deprived of effective assistance of counsel." Motion at 15. Third, Rodella argues that he was deprived of effective assistance of counsel when Mr. Gorence did not object to plain errors during trial. See Motion at 16. Rodella identifies two "plain errors": (i) the Court erred when, instead of permitting the jury to determine whether Rodella committed a violent act, it used a "preponderance of the evidence" standard to determine that Rodella committed a violent act; and (ii) the predicate the Court used for 18 U.S.C. § 924(c), deprivation of civil rights, is an improper

predicate under 18 U.S.C. § 924(c). Motion at 16-17. Rodella elaborates on the second "plain error," stating that the deprivation of rights does not fall under § 924(c)'s "elements clause," and, therefore, the deprivation of rights must fall under the § 924(c)'s "residual clause."[3] Rodella argues that, because § 924(c)(3)(b) "is now unconstitutional," and his 18 U.S.C. § 924(c) predicate falls under the residual clause, the Court must vacate his 18 U.S.C. § 924(c) conviction. Motion at 17. Rodella states that he has not raised this issue during any previous appeal or post-conviction proceeding, because he was "deprived of effective assistance of counsel." Motion at 18.

Fourth, Rodella argues that the Court did not have the jurisdiction to impose his sentence, and Mr. Gorence's failure to object to the Court's lack of jurisdiction was ineffective assistance of counsel. See Motion at 19. Rodella states that he has not raised this issue during any previous appeal or post-conviction proceeding, because he was "deprived of effective assistance of counsel." Motion at 21. Fifth, Rodella argues that his counsel "failed to raise certain plain errors on direct appeal" and thus he "received ineffective assistance of counsel." Motion at 22. Rodella states that he has not raised this issue during any previous appeal or post-conviction proceeding, because he was "deprived of effective assistance of counsel." Motion at 23. Sixth, Rodella argues that his sentence is a "weaponization of the federal criminal justice system that has resulted in a violation of the thirteenth amendment." Motion at 24. He contends that the United States Forest Rangers are in a "civil dispute" with the Rio Arriba County Sheriff's office over jurisdiction, and

---

[3]Section 924(c) increases the criminal penalties for a person who uses, carries, or possess a firearm "during and in relation to any crime of violence or drug trafficking crime." 18 U.S.C. § 924(c)(l). A "crime of violence" is defined as a felony that meets one of two other requirements. 18 U.S.C. § 924(c)(3). First, under the "elements clause," the felony is a crime of violence if it has an element of attempted, threatened, or actual physical force. See 18 U.S.C. § 924(c)(3). Second, under the "residual clause," the felony is a crime of violence if it, "by its nature, involves a substantial risk that physical force" may occur during the crime's execution. 18 U.S.C. § 924(c)(3)(B).

that Rodella's prosecution is the result of that dispute.  Motion at 24.  Rodella states that he has

not raised this issue during any previous appeal or post-conviction proceeding, because he was

"deprived of effective assistance of counsel."  Motion at 21.  In response to question 13 of the

Motion,[4] which asks if the motion raises any new grounds not raised previously in federal court,

Rodella states that "[t]his is the first round collateral motion."  Motion at 31.  Rodella contends

that his Motion is timely under 28 U.S.C. § 2255 "under the actual innocence exceotion [sic]

established by the Supreme Court."  Motion at 32.

       **4.**      **Amended Motion.**

      Rodella filed the Amended Motion on December 11, 2019.  See Amended Motion at 1.

First, Rodella asserts that his Amended Motion is timely.  See Amended Motion at 7.   Rodella

argues that, when the Supreme Court held that 18 U.S.C. § 924(c)(3)(B) was unconstitutionally

vague in United States v. Davis, 139 S. Ct. at 2319, the Supreme Court created a new right that

applies retroactively to cases on collateral review.  See Amended Motion at 7.  Rodella alleges that

the Tenth Circuit's recent decisions support his allegation.  See Amended Motion at 7 (citing

United States v. Bowen, 936 F.3d 1091, 1098 (10th Cir. 2019); In re Mullins, 942 F.3d 975, 979

(10th Cir. 2019)).   Thus, Rodella contends, his challenge meets 28 U.S.C. § 2255(f)(3)'s

requirements and, therefore, is timely.  See Amended Motion at 7.

      Second, Rodella argues that equitable tolling applies to his claim for two reasons: (i) he

has "diligently pursued his claims to the best of his ability," Amended Motion at 9; and

(ii) "extraordinary circumstances" prevented him from filing his motion, Amended Motion at 9.

Rodella states that he diligently pursued his claims by making requests to "government authorities"

---

[4]The Motion is a pro se motion in which the movant responds to form questions.

for evidence and for his records before the statute-of-limitations period ended.  Amended Motion at 10.  Rodella makes an alternative argument that the miscarriage-of-justice exception to 28 U.S.C. § 2255(f)'s timeliness requirement applies to his case.  See Amended Motion at 10.

Rodella says that 18 U.S.C. § 924(c)(3)(B)'s residual clause is one of the two definitions of "crime of violence" for the "rest of the statute."  Amended Motion at 12.  Rodella then explains that he was charged with 18 U.S.C. § 242, Deprivation of Rights, but that a 18 U.S.C. § 242 charge is no longer a crime of violence after United States v. Davis.  See Amended Motion at 13.  Rodella cites two cases, a United States District Court for the Western District of New York case and a Tenth Circuit case, that vacated 18 U.S.C. § 924(c) convictions where the predicate offense was a 18 U.S.C. § 242 violation.  See Amended Motion at 13-14 (citing Acosta v. United States, No. CIV 16-0401, 2019 WL 4140943, at *8 (W.D.N.Y. September 2, 2019)(Telesca, J.)("Acosta"); United States v. Ryle, 778 F. App'x 598 (10th Cir. 2019)(unpublished)).  Rodella notes that, in the Tenth Circuit case, the United States conceded that a 18 U.S.C. § 242 charge is no longer a crime of violence after United States v. Davis.  See Amended Motion at 14.  Rodella then argues that the Court must reach the same conclusion, because the rule of lenity requires Courts to resolve ambiguity in criminal laws in the defendant's favor.  See Amended Motion at 15.

Rodella next argues that the Court should grant him a new trial, because the United States committed a Brady v. Maryland violation.  See Amended Motion at 15 (citing Brady v. Maryland, 373 U.S. 83, 87 (1964)("Brady")).  Rodella explains that a Brady violation occurs when: (i) the evidence is in the accused's favor, because it is either exculpatory or impeaching; (ii) the United States either willfully or inadvertently suppressed the evidence; and (iii) the violation resulted in prejudice.  See Amended Motion at 16 (citing Strickler v. Greene, 527 U.S. 263, 280-81 (1999)).  Rodella alleges that "the first two elements are easily met," because neither he nor his counsel had

a recording of the 911 call.  See Amended Motion at 16.  Rodella says that the fact that neither he nor his counsel had the recording is evidence that the United States either willfully or inadvertently suppressed the recording.  See Amended Motion at 16.   Rodella argues that the third element is met, because "there is a reasonable probability that if the jury had a chance to hear the 911 tape of the caller testified as to seeing the motorist with a gun, then a different result, either at guilt or sentencing phases, may have occurred."   Amended Motion at 17.   Rodella argues that, alternatively, he is entitled to a new trial because of ineffective assistance of counsel, given that his counsel did not investigate or obtain the 911 recording.  See Amended Motion at 19.

Rodella concludes his motion with several requests.  See Amended Motion at 19-20.  First, he requests that the Court grant his motion, and "stay the proceedings on issues two and three, entertain Movant's first issue on an expedited basis, enter an order vacating the conviction and sentence for § 924(c), and order Movant released from the custody of the Department of Justice and placed on supervised release."  Amended Motion at 20.  Rodella also requests that the Court hold a hearing on the newly discovered evidence and provide Rodella an opportunity to demonstrate that the Court must vacate his conviction.  See Amended Motion at 20.

5.     **The Response**.

The United States responded to the Amended Motion.  See United States' Answer to Amended Motion Under 28 U.S.C. § 2255 to Vacate/Set Aside/ Correct Sentence, filed December 12, 2019 (Doc. 23)("Response").   The United States first responds to Rodella's timeliness contention.  See Response at 5.  The United States notes that Rodella challenged his 18 U.S.C. § 924(c) conviction's validity before United States v. Davis.  See Response at 5.  The United States also notes that the Tenth Circuit concluded that 18 U.S.C. § 924(c)'s residual clause was unconstitutional in May, 2018.  See Response at 5.  The United States acknowledges that, because

the Tenth Circuit concluded that United States v. Davis gave a new rule of constitutional law, Rodella "has *asserted* a newly recognized right."  Response at 6 (emphasis in original).  The United States argues that the timeliness of one claim does not render other claims timely, and, therefore, Rodella's claims that are not based upon United States v. Davis are still subject to the statute of limitations and procedural default defenses.  See Response at 6.

The United States then counters Rodella's assertion that he is entitled to relief under United States v. Davis.  See Response at 6.  The United States' arguments track the Tenth Circuit's two-part framework for analyzing "claims of error regarding reliance on the residual clause."  Response at 9-10.  The stages are (i): whether the sentencing court relied on the residual clause; and (ii) whether the error was harmless, because the offense was a crime of violence under current law.  See Response at 10, 14 (citing United States v. Trent, 767 F. 3d 1046, 1052 (10th Cir. 2014), abrogated by Mathis v. United States, 136 S. Ct. 2243 (2016)).

The United States begins with the first stage of the analysis and argues that the sentencing court did not rely upon the now-unconstitutional residual clause when sentencing Rodella.  See Response at 10.  The United States explains that Rodella must show that the sentencing court "'more likely than not'" relied upon the residual clause for the sentence, but that the record is silent whether the sentencing court relied upon the residual clause.  Response at 10 (quoting United States v. Driscoll, 892 F. 3d 1127, 1135 (10th Cir. 2018)).  See id. at 11.  The United States then looks at the legal environment at the time Rodella was sentenced "to determine whether the [sentencing] court would have *needed* to rely on the residual clause."  Response at 11 (emphasis in Response)(citing United States v. Driscoll, 892 F. 3d at 1132; United States v. Snyder, 871 F.3d 1122, 1130 (10th Cir. 2017), cert. denied, 138 S. Ct. 1696)).  The United States first states that, at the time of sentencing, courts "presumably follow[ed] the well-known principle that the specific

controls the general" and that, therefore, courts would have relied on the specific elements clause rather than the residual clause unless the movant demonstrated the necessity of relying on the residual clause. Response at 11. The United States next discusses the Tenth Circuit's use of the "'modified categorial approach'" at the time of sentencing. Response at 12 (quoting United States v. Trent, 767 F. 3d at 1052). This approach directs courts to examine the statute under which a defendant was convicted for alternative terms. See Response at 12-13. The United States argues that, in this case, a court using the modified categorical approach would have examined the statute for alternative terms, found the elements clause, and sentenced Rodella under the elements clause. See Response at 13. The United States then undermines Rodella's reliance on Acosta by noting that the defendant in that case had established that the sentencing court more likely than not relied on the residual clause during sentencing. See Response at 13.

The United States moves to the second stage of the analysis and argues that, if the sentencing court relied on the residual clause in sentencing, that error is harmless, because Rodella's offense is a crime of violence under current law. See Response at 14. The United States contends that 18 U.S.C. § 242 is divisible into three provisions -- plus seven offenses within those three provisions -- and, therefore, the Court should use the modified categorical approach. See Response at 15. The United States argues that the Court can use statutory text, interpreting law, and record documents to decide whether the alternative offenses are means or elements. See Response at 15-16 (citing United States v. Hamilton, 889 F.3d 688, 696 (10th Cir. 2018); United States v. Brown, 2018 WL 582536, at *3-4 (S.D. Fla. January 25, 2018)(Rosenberg, J.), aff'd, 934 F.3d 1278 (11th Cir. 2019); United States v. Titties, 852 F.3d 1257, 1268 (10th Cir. 2017); Mathis v. United States, 136 S. Ct. at 2243)). The United States contends that the record documents are the "decisive" tool, and that, in this case, an assessment of the jury instructions demonstrates that

Rodella's offense is a crime of violence under the elements clause. Response at 16-17. The United States sets forth an alternative argument: "If the court finds the second clause of § 242 indivisible under current law, it would still qualify as a crime of violence under the elements clause." Response at 17.

Finally, the United States undermines Rodella's reliance on United States v. Ryle. See Response at 17-19. The United States notes that the case "has no precedential value," because, unlike this case, "the United States conceded the merits and filed a motion to vacate." Response at 18. Moreover, the United States argues, the predicate offense in United States v. Ryle, which is "depriving another of civil rights under color of law *with acts including kidnapping or an attempt to kidnap*," is different then the predicate offense in this case, which is depriving another of civil rights under color of law. Response at 17 (emphasis in original). The United States argues that it "consistently has conceded" that a kidnapping charge does not have a physical force element and that, therefore, the sentencing was based on the residual clause. Response at 17. The United States concludes that United States v. Ryle, which involves a sentencing based solely on the residual clause, does not affect this case, because the Court may have used the elements clause in deciding Rodella's sentence. See Response at 19.

Finally, the United States refutes Rodella's contention that the United States committed a Brady violation. See Response at 19. It "maintains each of the arguments it made previously regarding the 911 transcript." Response at 19. The United States reiterates that Rodella and his counsel were in possession of the 911 call since August, 2015, and that, therefore, there was no newly discovered evidence and Rodella's counsel cannot be considered ineffective for failing to obtain the 911 call. The United States further reiterates that Rodella's counsel was "at least not []" constitutionally deficient" when counsel omitted the "red herring argument about a non-existent

gun."  Response at 20.

6.      **The Reply**.

Rodella replies.  See Movant's Reply to the United States' Response, filed January 2, 2020 (Doc. 26)("Reply").  In Rodella's introduction, he notes that he "voluntarily withdraws the  second and third claims in his amended motion arguing a potential Brady violation and ineffective assistance of counsel."   Reply at ii n.1.   Rodella's first argument is that current law does not support the United States' position that 18 U.S.C. § 242 qualifies as a crime of violence under 18 U.S.C. § 924(c)(3)(B)'s elements clause.  See Reply at 1.  Rodella supports this argument in four ways.  See Reply at 1-6.  First, Rodella undermines the United States' reliance on United States v. Brown, 2018 WL 582536.  Rodella argues that, although the United States relies on United States v. Brown for the proposition that 18 U.S.C. § 242 is divisible into seven crimes, a recent case has stated that the statute is divisible into only three crimes.  See Reply at 1 (citing Acosta, No. 16-0401, 2019 WL 4140943, at *5).  Next, Rodella argues that Acosta is "the only case to analyze the elements of § 242 since Davis [and] is most instructive in this case."  Reply at 2.  Before Acosta was issued, the Second Circuit affirmed Acosta's sentence, concluding that the deprivation of civil rights resulting in bodily injury or involving a dangerous weapon under 18 U.S.C. § 242 is a "crime of violence."  Reply at 2 (quoting Acosta, 2019 WL 4140943, at *1).  Rodella explains that the Honorable Michael A. Telesca, Senior United States District Judge for the United States District Court for the Western District of New York, concluded that United States v. Davis' ruling was an intervening law that "required the sentencing court to use the 'categorical approach' to determine whether the 'ordinary case' of the charged predicate offense entails the requisite use of physical force."  Reply at 2 (quoting Acosta, 2019 WL 4140943, at *6).  Senior Judge Telesca concluded that the United States Court of Appeals for the Second Circuit adopted a United States Court of

Appeals for the Fifth Circuit holding that stated that "the use, attempted use, or threatened use of a dangerous weapon creates a ***substantial risk*** of physical force for purposes of § 924(c)(3)(B)." Reply at 3 (emphasis in original)(citing Acosta, 2019 WL 4140943, at *6; United States v. Williams, 343 F.3d 423, 432 n.5 (5th Cir. 2003)).   Rodella says that Senior Judge Telesca concluded that, because of the United States v. Davis decision and because of the Second Circuit's adoption of the United States v. Williams decision, "the prior decisions finding the second clause of § 242 satisfies the force clause of §924(c) are called into question by the Supreme Court's decision in *Davis*."  Reply at 2-3 (citing Acosta, 2019 WL 4140943, at *6)).  Rodella notes that the Tenth Circuit also adopted the United States v. Williams holding.  Reply at 3 (citing United States v. Verbickas, 75 F. App'x 705, 707 (10th Cir. 2003)(unpublished)).

Rodella then compares Acosta with this case.  See Reply at 3.  Rodella argues that Acosta, in contrast, the United States, states that a court should apply "*current* case law when determining whether a constitutional error was harmless or prejudicial in the habeas context."  Reply at 3 (emphasis in original).  Rodella argues that in both Acosta and this case, the United States does not present evidence that the sentencing court relied upon the elements or the residual clause.  See Reply at 3.  Rodella states that, as in this case, the "mere presence of a gun" was sufficient for a residual clause violation.  Reply at 3.   Rodella states that Senior Judge Telesca "rightfully concluded that 'the sentencing court might have relied upon the residual clause in finding [Acosta's] § 242 convictions qualified as crimes of violence' and that 'more likely than not, his sentences for the § 242 convictions rested on the residual clause.'"  Reply at 4 (quoting Acosta, 2019 WL 4140943, at *7).  Rodella extrapolates that, because the minimum conduct required to convict Rodella "falls within the residual clause of § 924(c)," his conviction "is unconstitutional and must be vacated."  Reply at 4.

Rodella next supports his initial argument by stating that United States v. Davis alters the analysis for whether a predicate offense is a crime of violence.  See Reply at 4.  Rodella argues that United States v. Davis requires a categorical approach, rather than the "semi-case specific reading" the United States suggests.  Reply at 4-5.  Rodella says that the Supreme Court articulated two concerns in United States v. Davis: (i) "that a jury should not be allowed to find a felony to be a crime of violence *solely* because the defendant used a firearm" and (ii)  "that the vast majority of federal felonies could become predicates for § 924(c)."   Reply at 5 (citing United States v. Davis, 139 S. Ct. at 2331-32.  Rodella concludes that the United States' attempt to argue that "use of a firearm" is a crime of violence under 18 U.S.C. § 924's element clause contravenes the Supreme Court's "explicit warning."  Reply at 5.

Finally, Rodella supports his first argument by stating that, regardless of whether the Court concludes "Rodella's conviction falls within the residual clause, this court should find that Rodella successfully demonstrated constitutional error and should vacate his conviction for § 924(c)."  Reply at 5.   Rodella argues that the rule of lenity requires the Court to resolve uncertainty as to the clause under which Rodella was sentenced in Rodella's favor.  See Reply at 5-6 (citing United States v. Davis, 139 S. Ct. at 2333; United States v. Santos, 553 U.S. 507, 514 (2008)).  Rodella argues that, furthermore, Rodella needs to prove only "that the court *might* have relied on a unconstitutional alternative when it found § 242 qualified as a crime of violence."  Reply at 6 (emphasis in original)(citing Acosta, 2019 WL 4140943, at *7; United States v. Ladwig, 192 F. Supp. 3d 1153, 1158-59 (E.D. Wash. 2016)(Whaley, J.)).  Because the United States did not present evidence that the sentencing court relied upon the elements clause, Rodella concludes that the Court can vacate his sentence if it determines that it "*might* have relied on the residual clause." Reply at 6 (emphasis in original).

## LAW REGARDING 28 U.S.C. § 2255

Rodella seeks collateral review of his sentence under 28 U.S.C. § 2255.  Section 2255 provides:

> A prisoner in custody under a sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).  The defendant is to file the initial motion under 28 U.S.C. § 2255 with the court that imposed the sentence, for that court's consideration.  See Browning v. United States, 241 F.3d 1262, 1264 (10th Cir. 2001).  Rule 4(b) of the Rules Governing Section 2255 Proceedings states:

> The judge who receives the motion must promptly examine it.  If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party.

Rule 4(b) of the Rules Governing Section 2255 Proceedings.  Section 2255 has a one-year limitations period that begins to run when a defendant's conviction becomes final.  See 28 U.S.C. § 2255(f)(1).  A judgment against a defendant who does not appeal his or her conviction becomes final fourteen days after judgment.  See United States v. Prows, 448 F.3d 1223, 1227 (10th Cir. 2006); United States v. Sandoval, 371 F. App'x 945, 948 n.2 (10th Cir. 2010)(The "2009 Amendments to the Federal Rules of Appellate Procedure extended the time to appeal a final judgment in a criminal case from ten to fourteen days.").  On the other hand, if a defendant appeals the conviction, "a judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction." Clay v. United States,

537 U.S. 522, 525 (2003).  See United States v. Gonzales, No. CIV 12-0816 JB\SMV, 2012 WL 5476232, at *1 (D.N.M. Oct. 26, 2012)(Browning, J.).   Under rule 4 of the Rules Governing Section 2255 cases, the Court is under an obligation to review a 28 U.S.C. § 2255 motion and to summarily dismiss the motion if the filings and the record in the movant's underlying criminal proceeding establish that the movant is clearly not eligible for relief.   See Rule 4(b) of the Rules Governing Section 2255 Proceedings.  See also Roybal v. United States, 262 F. Supp. 3d 1161, 1162-63 (D.N.M. 2017)(Browning, J.)

Section 2255(f) provides the statute-of-limitations period for motions for collateral review of convictions and sentences:

> A 1-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of --
>
> > (1) the date on which the judgment of conviction becomes final;
> >
> > (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> >
> > (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."

18 U.S.C. § 2255(f).

The Court can grant an exception to the statute-of-limitations period in certain circumstances.  See, e.g., Mathis v. United States, 136 S. Ct. at 2243.  First, the Court may decide the statute-of-limitations period does not bar the defendant's claim if the defendant files a habeas

application within one year of "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively available to cases on collateral review." 18 U.S.C. § 2255.  See, e.g., Mathis v. United States, 136 S. Ct. at 2243.   Second, the Court may allow a defendant to avoid the statute-of-limitations bar if the defendant is able to prove actual innocence.  See, e.g., McQuiggin v. Perkins, 569 U.S. 383 (2013).   Third, the Court may lift the statute-of-limitations bar when a miscarriage of justice would otherwise result.  See, e.g., McQuiggin v. Perkins, 569 U.S. at 395. Courts should "severely confine" the miscarriage-of-justice exception to "cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'"  McQuiggin v. Perkins, 569 U.S. at 384 (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995).  Fourth, the Court may hear the defendant's claim on a lack of subject-matter jurisdiction after the one-year period.  See United States v. Morales-Ramirez, No. CIV 10-0030 JB\WDS, No. CR 05-0920 JB, WL 11505929 (D.N.M. Nov. 30, 2010)(Browning, J).

The Court can toll the statute-of-limitations period when "'an inmate diligently pursues his claims and demonstrates that the failure to timely file was caused by extraordinary circumstances beyond his control.'"  United States v. Gabaldon, 522 F.3d 1121, 1124 (10th Cir. 2008)(quoting Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000)).  The Tenth Circuit has stated:

> "Equitable tolling would be appropriate, for example, when a prisoner is actually innocent, when an adversary's conduct -- or other uncontrollable circumstances -- prevents a prisoner from timely filing, or when a prisoner actively pursues judicial remedies but files a defective pleading during the statutory period. . . . Moreover, a petitioner must diligently pursue his federal habeas claims; a claim of insufficient access to relevant law . . . is not enough to support equitable tolling."

United States v. Gabaldon, 522 F.3d at 1124 (quoting Gibson v. Klinger, 232 F.3d at 808)(citations omitted)).  "Equitable tolling is only appropriate in 'rare and exceptional circumstances.'"  United

States v. Sheridan, 561 F. App'x 689, 692 (10th Cir. 2014)(unpublished)(quoting Gibson v. Klinger, 232 F.3d at 808).[5]   The inmate must provide a factual basis to demonstrate that extraordinary circumstances exist.   See United States v. Sheridan, 561 F. App'x at 692. Extraordinary circumstances require more than inability to obtain transcripts or legal materials. See United States v. Ryan, No. CIV 12-0654, No. CR 08-0797, 2012 WL 12904135 (D.N.M. Aug. 20, 2012)(Parker, J.)(citing Washington v. United States, 221 F.3d 1354, 1354 (10th Cir. July 18, 2000)(unpublished table opinion); Miller v. Marr, 141 F.3d 976, 978 (10th Cir. 1998)).

## LAW REGARDING THE UNITED STATES' DUTY TO DISCLOSE IN CRIMINAL CASES.

In Brady, the Supreme Court explained that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87.   In United States v. Giglio, the Supreme Court extended the prosecution's disclosure obligation to evidence that is useful to the defense in impeaching government witnesses, even if

---

[5]United States v. Johnson is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A)("Unpublished opinions are not precedential but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted).  The Court concludes that United States v. Johnson; United States v. Hernandez-Mejia, 406 F. App'x at 336; McGee v. Hayes, 43 F. App'x 214, 217 (10th Cir. 2002); United States v. Sheridan, 561 F. App'x 689, 692 (10th Cir. 2014); and United States v. Ohiri, 133 F. App'x 555 (10th Cir. 2005), have persuasive value with respect to a material issue, and will assist the court in its disposition of this Memorandum Opinion and Order.

the evidence is not inherently exculpatory.  See United States v. Giglio, 405 U.S. 150, 153 ("Giglio"); Douglas v. Workman, 560 F.3d at 1172-73 ("[N]o distinction is recognized between evidence that exculpates a defendant and 'evidence that the defense might have used to impeach the [State's] witnesses by showing bias and interest.'"(quoting United States v. Bagley, 473 U.S. 667, 676 (1985)).  The Supreme Court has refined Brady and clarified that it is not necessary that a defendant request exculpatory evidence; "regardless of request, favorable evidence is material, and constitutional error results from its suppression by the government 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'"  Kyles v. Whitley, 514 U.S. 419, 433 (1995)(quoting United States v. Bagley, 473 U.S. at 682).  See Douglas v. Workman, 560 F.3d at 1172 ("The government's obligation to disclose exculpatory evidence does not turn on an accused's request."); United States v. Summers, 414 F.3d 1287, 1304 (10th Cir. 2005)("[T]he prosecution has an affirmative duty to disclose exculpatory evidence clearly supporting a claim of innocence even without request.").  On the other hand, "[i]t is well settled that there is no affirmative duty upon the government to take action to discover information which it does not possess."  United States v. Badonie, No. CR 03-2062 JB, 2005 WL 2312480, at *2 (D.N.M. Aug. 29, 2005)(Browning, J.)(internal quotation marks omitted).  "A prosecutor does not have a duty . . . to obtain evidence from third parties." United States v. Badonie, 2005 WL 2312480, at *2.

## LAW REGARDING 18 U.S.C. § 924(C)

Section 924 of Title 18 of the United States Code provides penalties for crimes of violence involving firearms.  Section 924(c)(1)(A)(ii) states that

   **(c)(1)(A)** Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including

a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—

> **(ii)** if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years;

18 U.S.C. § 924(c)(1)(A)(ii).  The statute provides the definition for "crime of violence":

> **(3)** For purposes of this subsection the term "crime of violence" means an offense that is a felony and—
>
> > **(A)** has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> >
> > **(B)** that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).  Courts have titled the first clause, 18 U.S.C. § 924(c)(3)(A), the "elements clause," and the second clause, 18 U.S.C. § 924(c)(3)(B), the "residual clause."  E.g. United States v. Davis, 139 S. Ct. at 2325.  Because the residual clause is "almost identical" to clauses in related statutes, United States v. Davis, 139 S. Ct. at 2325 (discussing the similarity between the residual clauses in the Armed Career Criminal Act and the Immigration and Nationality Act), the courts have interpreted these clauses in a consistent manner,  see United States v. Davis, 139 S. Ct. at 2329 (stating that "the same language in related statutes carries a consistent meaning").   The key similar features are "an ordinary-case requirement and an ill-defined risk threshold -- combined in the same constitutionally problematic way."  Sessions v. Dimaya, 138 S. Ct. at 1207.

The Tenth Circuit generally uses the "categorical approach" when deciding whether a predicate offense qualifies as a crime of violence under 18 U.S.C. § 924(c)(3)(b), as long as the statute of conviction is indivisible.  United States v. Melgar-Cabrera, 892 F.3d 1053, 1061 (10th

Cir. 2018); United States v. Bowen, 936 F.3d 1091, 1102 (10th Cir. 2019).  When the court uses the categorical approach to determine whether the predicate act is a crime of violence, the court looks "only to the fact of conviction and the statutory definition of the prior offense, and do not generally consider the particular facts disclosed by the record of conviction.'"  United States v. Bowen, 936 F.3d at 1102 (quoting United States v. Serafin, 562 F.3d 1105, 1107-08 (10th Cir. 2009))(quotations omitted in original).  The Court compares the "scope of conduct covered by the elements of the crime" with the statute's "'definition of crime of violence.'"  United States v. O'Connor, 874 F.3d at 1147, 1151 (10th Cir. 2017)(quoting U.S.S.G. § 4B1.2(a)).  The Court must decide which statutory provision it relied upon for conviction.  United States v. Driscoll, 892 F.3d at 1135.  The Tenth Circuit has stated that the movant carries the burden at the merits stage of the movant's first § 2255 challenge to prove that it is "'more likely than not'" that the sentencing court used the residual clause as the basis of sentencing.  See United States v. Driscoll, 892 F.3d at 1135 (quoting from and adopting the test of Beeman v. United States, 871 F.3d 1215, 1221-22 (11th Cir. 2017)).[6]

The Court must modify the approach "in a narrow range of cases where the statute of conviction is divisible"—meaning that the statute's subparts describe alternative crimes as opposed to different ways of committing the same offense.  United States v. Pam, 867 F.3d at 1203 (citing Descamps v. United States, 133 S. Ct. at 2281). If divisible, this "modified categorical approach" allows the Court to "consult record documents from the defendant's prior case for the limited purpose of identifying which of the statute's alternative [crimes] formed the basis of the

---

[6]Although the Tenth Circuit announced this rule in a Johnson v. United States, 135 S. Ct. 2551 (2015), challenge, the Tenth Circuit has treated both the Johnson v. United States and United States v. Davis residual clauses interchangeably, so the Court treats the challenges to those clauses using law applicable to both clauses.

prior conviction." United States v. Titties, 852 F.3d at 1266 (10th Cir. 2017). Once identified, the

Court "compares those elements" of the alternative crime to the statute's definition of "crime of

violence" as it would under the categorical approach.  United States v. Titties, 852 F.3d at 1266

(quoting Descamps v. United States, 133 S. Ct. at 2281); United States v. Henry, No. CR 11-2660

JB, 2017 WL 6729963, at *4 (D.N.M. Dec. 31, 2017)(Browning, J.)

## LAW REGARDING 18 U.S.C. § 242

18 U.S.C. § 242 provides:

> Whoever, under color of any law, statute, ordinance, regulation, or custom,
> willfully subjects any person in any State, Territory, Commonwealth, Possession,
> or District to the deprivation of any rights, privileges, or immunities secured or
> protected by the Constitution or laws of the United States, or to different
> punishments, pains, or penalties, on account of such person being an alien, or by
> reason of his color, or race, than are prescribed for the punishment of citizens, shall
> be fined under this title or imprisoned not more than one year, or both; and if bodily
> injury results from the acts committed in violation of this section or if such acts
> include the use, attempted use, or threatened use of a dangerous weapon,
> explosives, or fire, shall be fined under this title or imprisoned not more than ten
> years, or both; and if death results from the acts committed in violation of this
> section or if such acts include kidnapping or an attempt to kidnap, aggravated
> sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to
> kill, shall be fined under this title, or imprisoned for any term of years or for life,
> or both, or may be sentenced to death.

18 U.S.C. § 242.

## LAW REGARDING THE UNITED STATES' DUTY TO DISCLOSE UNDER THE DUE PROCESS CLAUSE OF THE CONSTITUTION

The Due Process Clause of the Constitution requires that the United States disclose to the

defendant any evidence that "is material either to guilt or to punishment, irrespective of the good

faith or bad faith of the prosecution."  Brady, 373 U.S. at 87.  The Supreme Court has extended

the prosecution's disclosure obligation to include evidence that is useful to the defense in

impeaching government witnesses, even if the evidence is not inherently exculpatory.  See Giglio,

405 U.S. 153; Douglas v. Workman, 560 F.3d at 1172-73 ("[N]o distinction is recognized between evidence that exculpates a defendant and 'evidence that the defense might have used to impeach the [United States'] witnesses by showing bias and interest.'" (quoting United States v. Bagley, 473 U.S. at 676); United States v. Abello-Silva, 948 F.2d 1168, 1179 (10th Cir. 1991)("Impeachment evidence merits the same constitutional treatment as exculpatory evidence."). Finally, the Supreme Court has refined Brady and clarified that it is not necessary that a defendant request exculpatory evidence: "Regardless of request, favorable evidence is material, and constitutional error results from its suppression by the government." Kyles v. Whitley, 514 U.S. at 433 (quoting United States v. Bagley, 473 U.S. at 682). See Douglas v. Workman, 560 F.3d at 1172 ("The government's obligation to disclose exculpatory evidence does not turn on an accused's request."); United States v. Summers, 414 F.3d at 1304 ("[T]he prosecution has an affirmative duty to disclose exculpatory evidence clearly supporting a claim of innocence even without request.").

      1.    **Material Exculpatory Evidence Under Brady.**

"The Constitution, as interpreted in Brady, does not require the prosecution to divulge every possible shred of evidence that could conceivably benefit the defendant." Smith v. Sec'y of N.M. Dep't of Corr., 50 F.3d 801, 823 (10th Cir. 1995). Brady requires disclosure only of evidence that is both favorable to the accused, and "material either to guilt or to punishment." Brady, 373 U.S. at 87. "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. at 682. See United States v. Allen, 603 F.3d 1202, 1215 (10th Cir. 2010). A "reasonable probability," is a "probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. at 682 (internal quotation marks omitted). The Tenth

Circuit has noted that "[t]he mere possibility that evidence is exculpatory does not satisfy the constitutional materiality standard." United States v. Fleming, 19 F.3d 1325, 1331 (10th Cir. 1994). The Tenth Circuit has also stated that evidence is material if it "might meaningfully alter a defendant's choices before and during trial . . . including whether the defendant should testify." Case v. Hatch, 731 F.3d 1015 (10th Cir. 2013)(quoting United States v. Burke, 571 F.3d 1048, 1054 (10th Cir. 2009))(internal quotation marks omitted).

"To be material under Brady, undisclosed information or evidence acquired through that information must be admissible." Banks v. Reynolds, 54 F.3d 1508, 1521 n.34 (10th Cir. 1995)(quoting United States v. Kennedy, 890 F.2d at 1059). The Supreme Court in Cone v. Bell, 556 U.S. 449 (2009), noted:

> Although the Due Process Clause of the Fourteenth Amendment, as interpreted by Brady, only mandates the disclosure of material evidence, the obligation to disclose evidence favorable to the defense may arise more broadly under a prosecutor's ethical or statutory obligations. See Kyles, 514 U.S. at 437 ("[T]he rule in Bagley (and, hence, in Brady) requires less of the prosecution than the ABA Standards for Criminal Justice Prosecution Function and Defense Function 3-3.11(a) (3d ed. 1993)"). See also ABA Model Rules of Professional Conduct 3.8(d) (2008)("The prosecutor in a criminal case shall" "make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal").

Cone v. Bell, 556 U.S. at 470 n.15.

The government bears the burden of producing exculpatory materials; the defendants have no obligation to first note that such materials exist. See Kyles v. Whitley, 514 U.S. at 437 (stating that the prosecution has an affirmative duty to disclose evidence, because "the prosecution, which alone can know what is undisclosed, must be assigned the consequent responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of 'reasonable

probability' is reached"); United States v. Deutsch, 475 F.2d 55, 57 (5th Cir. 1973)(granting a mistrial for failure to produce personnel files of government witnesses), overruled on other grounds by United States v. Henry, 749 F.2d 203 (5th Cir. 1984); United States v. Padilla, No. CR 09-3598 JB, 2011 WL 1103876, at *6 (D.N.M. March 14, 2011)(Browning, J.).  This obligation means that the United States must "volunteer exculpatory evidence never requested, or requested only in a general way."  Kyles v. Whitley, 514 U.S. at 433 (internal quotation marks omitted). Additionally, "[u]nder Brady, the good or bad faith of government agents is irrelevant."  United States v. Quintana, 673 F.2d 296, 299 (10th Cir. 1982).  "This means, naturally, that a prosecutor anxious about tacking too close to the wind will disclose a favorable piece of evidence."  Kyles v. Whitley, 514 U.S. at 439.

### 2.      Timing of the Disclosure Under Brady.

"The obligation of the prosecution to disclose evidence under Brady can vary depending on the phase of the criminal proceedings and the evidence at issue."  United States v. Harmon, 871 F. Supp. 2d 1125, 1149 (D.N.M. 2012)(Browning, J.), aff'd, 742 F.3d 451 (10th Cir. 2014).  As a general matter, "[s]ome limitation on disclosure delay is necessary to protect the principles articulated in Brady v. Maryland."  United States v. Burke, 571 F.3d at 1054.  The Tenth Circuit has recognized, however, that "[i]t would eviscerate the purpose of the Brady rule and encourage gamesmanship were we to allow the government to postpone disclosures to the last minute, during trial."  United States v. Burke, 571 F.3d at 1054.  "[T]he belated disclosure of impeachment or exculpatory information favorable to the accused violates due process when an 'earlier disclosure would have created a reasonable doubt of guilt.'"  United States v. Burke, 571 F.3d at 1054.  The Tenth Circuit has stated:

Where the district court concludes that the government was dilatory in its compliance with Brady, to the prejudice of the defendant, the district court has discretion to determine an appropriate remedy, whether it be exclusion of the witness, limitations on the scope of permitted testimony, instructions to the jury, or even mistrial.

United States v. Burke, 571 F.3d at 1054.  Notably, "not every delay in disclosure of Brady material is necessarily prejudicial to the defense."  United States v. Burke, 571 F.3d at 1056.  "To justify imposition of a remedy, the defense must articulate to the district court the reasons why the delay should be regarded as materially prejudicial."  United States v. Burke, 571 F.3d at 1056.

Once a prosecutor's obligations under Brady have been triggered, however, they "continue[] throughout the judicial process."  Douglas v. Workman, 560 F.3d at 1173.  For instance, the prosecutor's obligation to disclose Brady material can arise during trial.  See United States v. Headman, 594 F.3d at 1183 (10th Cir. 2010)("Although Brady claims typically arise from nondisclosure of facts that occurred before trial, they can be based on nondisclosure of favorable evidence (such as impeachment evidence) that is unavailable to the government until trial is underway.").  The disclosure obligation continues even while a case is on direct appeal.  See United States v. Headman, 594 F.3d at 1183; Smith v. Roberts, 115 F.3d 818, 819, 820 (10th Cir. 1997)(applying Brady to a claim that the prosecutor failed to disclose evidence received after trial but while the case was on direct appeal).

The Supreme Court has held that Brady does not require "preguilty plea disclosure of impeachment information."  United States v. Ruiz, 536 U.S. 622, 629 (2002)("We must decide whether the Constitution requires that preguilty plea disclosure of impeachment information.  We conclude that it does not.").  The Supreme Court recognized that "impeachment information is special in relation to the fairness of a trial, not in respect to whether a plea is voluntary."  United States v. Ruiz, 536 U.S. at 632.  The Supreme Court acknowledged that, "[o]f course, the more

information the defendant has, the more aware he is of the likely consequences of a plea, waiver, or decision, and the wiser that decision will likely be," but concluded that "the Constitution does not require the prosecutor to share all useful information with the defendant."  United States v. Ruiz, 536 U.S. at 632.  The Supreme Court added:

> [T]his Court has found that the Constitution, in respect to a defendant's awareness of relevant circumstances, does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor.

United States v. Ruiz, 536 U.S. at 630.  The Supreme Court explained that "a constitutional obligation to provide impeachment information during plea bargaining, prior to entry of a guilty plea, could seriously interfere with the Government's interest in securing those guilty pleas that are factually justified, desired by defendants, and help to secure the efficient administration of justice."  United States v. Ruiz, 536 U.S. at 630.  The Tenth Circuit has reiterated these principles from United States v. Ruiz:

> Johnson asserts that his plea was not knowing and voluntary because he did not know that he was giving up a claim that the government failed to disclose impeachment evidence.  The Supreme Court, however, foreclosed this exact argument in United States v. Ruiz, by holding that the government has no constitutional obligation to disclose impeachment information before a defendant enters into a plea agreement.  Ruiz emphasized that "impeachment information is special in relation to the fairness of a trial, not in respect to whether a plea is voluntary."  Rather, "a waiver [is] knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply in general in the circumstances -- even though the defendant may not know the specific detailed consequences of invoking it."

United States v. Johnson, 369 F. App'x 905, 906 (10th Cir. 2010)(unpublished)(quoting United States v. Ruiz, 546 U.S. at 630).

The Tenth Circuit has held, however, that United States v. Ruiz does not apply to exculpatory evidence, but rather applies only to impeachment evidence:

> Ruiz is distinguishable in at least two significant respects.  First, the evidence withheld by the prosecution in this case is alleged to be exculpatory, and not just impeachment, evidence.  Second, Ohiri's plea agreement was executed the day jury selection was to begin, and not before indictment in conjunction with a "fast-track" plea.  Thus, the government should have disclosed all known exculpatory information at least by that point in the proceedings. By holding in Ruiz that the government committed no due process violation by requiring a defendant to waive her right to impeachment evidence before indictment in order to accept a fast-track plea, the Supreme Court did not imply that the government may avoid the consequence of a Brady violation if the defendant accepts an eleventh-hour plea agreement while ignorant of withheld exculpatory evidence in the government's possession.

United States v. Ohiri, 133 F. App'x 555, 562 (10th Cir. 2005)(unpublished).  The Tenth Circuit

qualified its holding in United States v. Ohiri, however, stating that the case presented "unusual

circumstances."  133 F. App'x at 562.

### 3.    Evidence Must Be in the United States' Possession.

"It is well settled that there is no 'affirmative duty upon the government to take action to

discover information which it does not possess.'"  United States v. Tierney, 947 F.2d 854, 864

(8th Cir. 1991)(quoting United States v. Beaver, 524 F.2d 963, 966 (5th Cir. 1975)).  Accord

United States v. Kraemer, 810 F.2d 173, 178 (8th Cir. 1987)(explaining that the prosecution is not

required "to search out exculpatory evidence for the defendant"); United States v. Badonie, 2005

WL 2312480, at *2.  On the other hand, "a prosecutor's office cannot get around Brady by keeping

itself in ignorance, or by compartmentalizing information about different aspects of a case." Carey

v. Duckworth, 738 F.2d 875, 878 (7th Cir. 1984).  Under Brady, "[a] prosecutor must disclose

information of which it has knowledge and access."  United States v. Padilla, No. CR 09-3598 JB,

2011 WL 1103876, at *7 (citing United States v. Bryan, 868 F.2d 1032, 1037 (9th Cir. 1989)).  "A

prosecutor may have a duty to search files maintained by other 'governmental agencies closely

aligned with the prosecution' when there is 'some reasonable prospect or notice of finding

exculpatory evidence.'" United States v. Padilla, No. CR 09-3598 JB, 2011 WL 1103876, at *7

(quoting United States v. Brooks, 966 F.2d 1500, 1503 (D.C. Cir. 1992)).  A prosecutor does not

have a duty, however, to obtain evidence from third parties.  See United States v. Combs, 267 F.3d

1167, 1173 (10th Cir. 2001)(observing that Brady does not oblige the government to obtain

evidence from third parties).

## ANALYSIS

The Court first addresses the threshold question of whether the statute of limitations bars

Rodella from bringing this claim and concludes that Rodella can bring this claim.  The Court then

addresses whether United States v. Davis vacates Rodella's sentence and concludes that, although

it retroactively applies to Rodella's conviction and sentence, it does not vacate Rodella's sentence.

The Court then addresses Rodella's two withdrawn claims,[7] and the Court concludes that the

United States did not commit a Brady violation and that ineffective assistance of counsel does not

entitle Rodella to a new trial.

## I.   THE STATUTE OF LIMITATIONS DOES NOT BAR RODELLA FROM BRINGING THIS CLAIM.

Rodella argues that he is entitled to bring his claim after the statute-of-limitations period

expired, because (i) 28 U.S.C. § 2255(f)(3) permits him to bring a claim under the new substantive

rule of criminal procedure announced in United States v. Davis; (ii) equitable tolling applies

because he pursued his claims diligently despite extraordinary circumstances; and (iii) equitable

tolling does not apply because the miscarriage-of-justice exception does not apply.  The Court

---

[7]Although Rodella "voluntarily withdraws the second and third claims in his amended motion arguing a potential Brady violation and ineffective assistance of counsel," the Court briefly addresses these claims regardless.  Reply at ii.

concludes that Rodella's claim is timely because of the Supreme Court's decision in <u>United States</u> <u>v. Davis</u>. The Court also concludes, however, that equitable tolling does not apply to his statute-of-limitations period.

### A.     RODELLA'S MOTION IS TIMELY UNDER 28 U.S.C. § 2255(f)(3).

At first blush, Rodella's Motion appears untimely.  Rodella's conviction became final when the Supreme Court denied his writ of certiorari petition on October 3, 2016.  He did not file his Motion until March 25, 2019, which is almost two-and-a-half years after his judgment was final, and one-and-a-half years after the statute-of-limitations period expired.  <u>See</u> Motion at 1. While Rodella's Motion was pending, the Supreme Court issued <u>United States v. Davis</u>. <u>See</u> 139 S. Ct. at 2319.  Although new procedural constitutional rules do not apply retroactively in criminal cases, new substantive constitutional rules do apply retroactively in criminal cases.  <u>See</u> <u>United</u> <u>States v. Hopkins</u>, 920 F.3d 690, 699 (10th Cir. 2019)(citing <u>Teague v. Lane</u>, 489 U.S. 288 (1989)). The Tenth Circuit has concluded that the <u>United States v. Davis</u> rule is substantive and, therefore, applies retroactively to cases on collateral review.  <u>See</u> <u>In re Mullins</u>, 942 F.3d 975, 977 (10th Cir. 2019).   When a new constitutional right is recognized and retroactive on collateral review, the petitioner has one year from the date of the decision to bring a § 2255 claim.   <u>See</u> 28 U.S.C. § 2255(f)(3).  Because <u>United States v. Davis</u> was decided on June 24, 2019, and because Rodella brought his Amended Motion on December 12, 2019, which is within one year of the <u>United States</u> <u>v. Davis</u> decision, the statute of limitations does not bar his claim.  <u>See</u> 28 U.S.C. § 2255(f)(3).

### B.     THE COURT WILL NOT TOLL THE STATUTE OF LIMITATIONS, BECAUSE RODELLA  HAS NOT DEMONSTRATED DUE DILIGENCE NOR EXTRAORDINARY CIRCUMSTANCES.

Although Rodella's Amended Motion is timely under 28 U.S.C. § 2255(f)(3), the Court does not equitably toll Rodella's statute-of-limitations period.  Equitable tolling applies when the

movant has "'diligently pursue[d] his claims and demonstrates that the failure to timely file was caused by extraordinary circumstances beyond his control.'"  United States v. Gabaldon, 522 F.3d at 1124 (quoting Marsh v. Soares, 223 F.3d at 1220).  Rodella argues that he diligently pursued his claims by requesting his records from "government authorities," and by contacting reporters and other third parties for assistance in investigating his case before the statute-of-limitations period expired.[8]  Amended Motion at 10.  Rodella attaches no exhibits showing that he requested documents and records before the expiration of the statute-of-limitations period.  See Amended Motion to Vacate under 28 U.S.C. 2255, Appendix A, filed December 11, 2019 (Doc 22-1). Compare with United States v. Oakes, 445 F. App'x 88, 94 (10th Cir. 2011)(unpublished)("The showing of due diligence requires more than the sending of one letter [before the statute-of-limitations period expired.]").  In fact, he attaches eleven written record requests, all of which are dated between May, 2018, and August, 2018.[9]  See, e.g., Privacy Act Request from Thomas Rodella (executed May 21, 2018), filed December 11, 2019 (Doc 22-1); Right to Inspect Public Records Request from Thomas R. Rodella to Marco Serna (dated July 16, 2018), filed December 11, 2019 (Doc 22-1); Right to Inspect Public Records Request from Thomas R. Rodella to Pete

---

[8]Rodella notes that the statute-of-limitations period expired on October 3, 2017.  See Motion at 10; 28 U.S.C. § 2255(f).

[9]Rodella has a footnote in his Motion that states that "Rodella maintains that he is not in possession of a copy of every request he made.  The copies attached are for the purposes of illustrating some of his attempts, but not all."  Motion at 10 n. 10.  Although the Court does not need "every request" a petitioner made for the Court to make a due diligence determination, an absence of any records explained away by a footnote is insufficient for the Court to conclude that there was due diligence.  Cf. United States v. Gabaldon, 522 F.3d 1121, 1127 (10th Cir. 2008)(concluding that the inmate's "statement under penalty of perjury asserting that he made multiple requests . . . a statement under penalty of perjury by his cellmate regarding his requests. . . [and] copies of written requests that he had submitted to prison staff" demonstrated the inmate's due diligence in retrieving records).

Kassetas (dated July 16, 2018), filed December 11, 2019 (Doc 22-1); Right to Inspect Public Records Request from Thomas R. Rodella to Sheriff James Lujan (dated August 14, 2018), filed December 11, 2019 (Doc 22-1); Right to Inspect Public Records Request from Thomas R. Rodella to Sheriff James Lujan (dated August 14, 2018), filed December 11, 2019 (Doc 22-1); Right to Inspect Public Records Request from Thomas R. Rodella (dated August 16, 2018), filed December 11, 2019 (Doc 22-1); Freedom of Information Mediation Request Letter from Thomas R. Rodella to Deborah Waller (dated August 31, 2018), filed December 11, 2019 (Doc 22-1); Privacy Act Request from Thomas R. Rodella to Deborah Waller (dated September 4, 2018), filed December 11, 2019 (Doc 22-1).   That Rodella began the fact-gathering stage of the writing process approximately one-and-a-half years after his statute-of-limitations-period expired does not demonstrate that Rodella diligently pursued his claim before the statute-of-limitations period expires.

Moreover, Rodella neglects to explain how the lack of responses from reporters or the lack of records prevented him from filing his Motion before the statute-of-limitations period expired. See United States v. Oakes, 445 F. App'x at 94 (concluding that a petitioner's claim that lack of library access prevented him from timely filing his § 2255 motion was meritless, in part, because the petitioner did not provide "'specific[ally]'" "how the lack of library access prevented him from timely filing his [] motion")(quoting Miller v. Marr, 141 F.3d 976, 978 (1998)).   Rodella asserts that "roadblocks and delays" prevented him from receiving the 911 call transcript.   Amended Motion at 11.   He supports this assertion with only a September 4, 2018, letter following up on a June, 2018, request for records.   See Appendix A at 66.   Rodella does not attach the June, 2018, request.   See generally Appendix A.   The Court, thus, concludes that Rodella does not set forth a factual basis for his assertion that, had he requested the information in a timely manner, he would

not have received the 911 call transcript before the expiration of the statute-of-limitations period.

Further, the Court concludes that Rodella has not demonstrated extraordinary circumstances warranting an exception to the statute of limitations. The remedy Rodella requests is available only in "'rare and exceptional circumstances.'" United States v. Sheridan, 561 F. App'x at 692 (quoting Gibson v. Klinger, 232 F.3d at 808). Rodella appears to believe that a lack of assistance from reporters or third-parties is an extraordinary circumstance entitling him to relief. See Motion at 10. Although the Court does not have statistical information available, the Court concludes that most prisoners do not receive investigative assistance from reporters. Rodella's lack of assistance from reporters, thus, is not extraordinary. Moreover, an inability to obtain transcripts or legal materials is insufficient without "due diligence to warrant an equitable tolling." United States v. Oakes, 445 F. App'x at 94. If the movant alleges that he or she was denied access to legal materials that the movant diligently pursued, the movant must put forth a "factual basis" for the Court to find his or her circumstances extraordinary. United States v. Sheridan, 561 F. App'x at 692. Because Rodella does not present any facts showing that he requested information before the statute-of-limitations period expired or that his timely requests were denied, the Court concludes that no extraordinary circumstances exist. The Court, thus, does not toll Rodella's statute-of-limitations period.

### C.   THE COURT WILL NOT TOLL THE STATUTE OF LIMITATIONS BECAUSE THE MISCARRIAGE-OF-JUSTICE EXCEPTION DOES NOT APPLY.

The Court concludes that the miscarriage-of-justice exception does not apply to this case and, therefore, the Court does not equitably toll the statute of limitations period. For the miscarriage-of-justice exception to apply, the movant must present new evidence that shows "'it is more likely than not that no reasonable juror would have convicted [the petitioner.]'"

McQuiggin v. Perkins, 569 U.S. at 384 (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)). Rodella presents no new evidence.  His attorney received the 911 transcript on August 26, 2014. See Response, Exhibits 1-3, filed December 12, 2019 (Docs. 23-1, 23-2, 23-3).  Even if his attorney did not receive the 911 transcript, the Court concludes that the statement of one eyewitness stating that Tafoya had a gun is insufficient to say that it is more likely than not that no reasonable juror would have convicted Rodella.  McQuiggin v. Perkins, 569 U.S. at 384.  Notably, Rodella does not contend that Tafoya had a gun -- he suggests only that a jury "could [have] easily believe[d]" that Tafoya had a gun.  Amended Motion at 12.  The Court, thus, concludes that the miscarriage-of-justice exception is inapplicable to this case.

## II.   THE COURT WILL NOT VACATE RODELLA'S SENTENCE BECAUSE OF UNITED STATES V. DAVIS.

Rodella correctly states that United States v. Davis invalidates 18 U.S.C. § 924's residual clause and that this holding applies retroactively.  See Amended Motion at 1.   Rodella does not show, however, that it is more likely than not that he was sentenced under the residual clause. Because this Court likely used the elements clause, not the residual clause, when sentencing Rodella, Rodella was not sentenced under an unconstitutional clause and, therefore, the Court will not vacate his sentence.

### A.   RODELLA DOES NOT PRESENT EVIDENCE THAT THE COURT RELIED ON THE RESIDUAL CLAUSE FOR HIS SENTENCE.

At the merits stage of a § 2255 challenge, Rodella must demonstrate that it is more likely than not that the sentencing court relied upon the residual clause when sentencing him.  See United States v. Driscoll, 892 F.3d at 1135("We now further adopt Breeman[v. United States, 871 F.3d 1215, 1221-22 (11th Cir. 2017)]'s 'more likely than not' burden of proof here, at the merits stage of a first § 2255 challenge.")(quoting Breemanv. United States, 871 F.3d at 1221-22).   The Court

begins by determining whether there is any mention of the residual clause in the sentencing record. See United States v. Driscoll, 892 F.3d at 1132. The Court concludes that the sentencing record is silent whether the Court relied upon the residual clause or the elements clause when sentencing Rodella. See Redacted Indictment, United States v. Rodella, No. CR 14-2783 JB\CG, filed August 12, 2014 (Doc. 2); Redacted Superseding Indictment, United States v. Rodella, No. CR 14-2783 JB\CG, filed September 9, 2014 (Doc. 55); Memorandum Opinion and Order, United States v. Rodella, No. CR 14-2783 JB\CG, filed February 5, 2015 (Doc. 184)(regarding Rodella's Objection to Presentence Investigation Report, filed January 12, 2015 (Doc. 157)); Judgment, United States v. Rodella, No. CR 14-2783 JB\CG, filed February 6, 2015 (Doc. 192); Amended Judgment, United States v. Rodella, No. CR 14-2783 JB\CG, filed February 9, 2016 (Doc. 198); Second Amended Judgement, United States v. Rodella, No. CR 14-2783 JB\CG, filed February 18, 2015 (Doc. 206); Transcript of Jury Discussions No. 4 and No. 5, United States v. Rodella, No. CR 14-2783 JB\CG, filed June 9, 2015 (Doc. 224); Transcript of Motion Proceedings, filed December 5. 2019 (Doc. 244)(transcript of January 21, 2015 sentencing hearing). Cf. United States v. Snyder, 871 F.3d at 1130 (concluding that the sentencing court did not rely upon the residual clause in sentencing, because "there is no mention whatsoever of the residual clause in the [PSR] or any of the court district court pleadings or transcripts"). Rodella does not put forth any facts indicating that the Court relied upon the residual clause when sentencing him. Although Rodella might have overcome a silent or ambiguous record "by submitting background law foreclosing the [] elements clause," United States v. Copeland, 921 F.3d at 1243, he does not submit that background law. The Court concludes, therefore, that Rodella has not demonstrated that it is more likely that the

Court relied upon the residual clause than the elements clause.[10]

The Court also looks at whether the relevant legal background foreclosed the elements clause, and, thus, whether the Court needed to rely on the residual clause during sentencing. See United States v. O'Connor, 874 F.3d at 1148. At the time of sentencing, January, 2015, the Tenth Circuit instructed sentencing courts determining whether a predicate offense is a crime of violence to use one of two approaches: (i) the "categorical approach" when a statute is indivisible; or (ii) the "modified categorical approach" when a statute is divisible into alternative terms. United States v. Trent, 767 F.3d at 1052 (10th Cir. 2014), abrogated by Mathis v. United States, 136 S. Ct. at 2243.[11] At the time of sentencing, the Tenth Circuit considered the statute of conviction divisible

---

[10]Rodella argues that he must show only that the sentencing court "*might* have relied on an unconstitutional alterative [sic] when it found § 242 qualified as crime of violence." Reply at 12 (citing Acosta, 2019 WL 4140943, at *7 (citing United States v. Ladwig, 192 F. Supp. 3d at 1158-59)). In Acosta, Judge Telesca noted that the United States Court of Appeals for the Second Circuit had yet to address "the petitioner's burden in showing reliance when it is unclear from the sentencing record whether he was sentenced under the residual clause or the force/elements clause," a burden on which the Courts of Appeals are split. 2019 WL 4140943, at *7 n.6. Judge Telesca, therefore, applied both burdens that the Courts of Appeals use to decide the case. See 2019 WL 4140943, at *7. Telesca notes that the Tenth Circuit is one of the Courts of Appeals that has "found that a petitioner must demonstrate reliance, by a preponderance of the evidence, on an unconstitutional ground for sentencing." Acosta, 2019 WL 4140943, at *7 n.6 (citing United States v. Snyder, 871 F.3d 1122, 1128-1130 (10th Cir. 2017)). Judge Telesca notes that the Court of Appeals for the Fourth Circuit, the Fifth Circuit, and the Court of Appeals for the Ninth Circuit use the burden that the petitioner need only demonstrate that his or her sentence "'may have rested' on an unconstitutional provision," which is the burden Rodella cites. 2019 WL 4140943, at *7, n.6 (quoting United States v. Geozos, 870 F.3d 890, 896 (9th Cir. 2017)). The Court, therefore, assesses whether Rodella has met the burden that the Tenth Circuit prescribes.

[11]The Court uses United States v. Trent because it was good law at the time of Rodella's sentencing. Mathis v. United States abrogated United States v. Trent by stating that, if an element of the predicate crime of conviction is broader than an element of the generic offense because the statute of conviction lists multiple factual means of satisfying an element, a prior conviction under that statute will not qualify as a generic form of burglary, arson, or extortion for purposes of predicate violent felony offenses under the Armed Career Criminal Act. Mathis v. United States, 136 S. Ct. at 225.

when it "contained alternative terms, regardless of whether those terms described different means of committing a single crime or different elements delineating separate crimes." United States v. Titties, 852 F.3d at 1262.  Rodella was convicted of a deprivation of civil rights under 18 U.S.C § 242, which has three separate clauses carrying three separate offenses that can be further parsed into alternative terms.   See United States v. Verbickas, 75 F. App'x 705, 707 (10th Cir. 2003)(unpublished)(stating that "the three clauses of § 242 define separate offenses with different elements")(citing Apprendi v. New Jersey, 530 U.S. 466 (2000)).  The Court thus concludes that the statute was divisible under the law at the time of sentencing, so the Court uses the modified categorical approach to determine for which 18 U.S.C. § 242 offenses Rodella was convicted.

In this case, the modified categorical approach permits the Court to consult judicial records "'to determine which part of the statute was charged against the defendant, and thus, which portion of the statute to examine on its face.'"  United States v. Martinez-Zamaripa, 680 F.3d 1221 (10th Cir. 2012)(quoting United States v. Venzor-Granillo, 668 F.3d 1224, 1228-30 (10th Cir. 2012)(further quotations omitted)).  See Johnson v. United States, 559 U.S. 133, 144 (2010)(listing the following documents as part of the trial record for purposes of the modified categorical approach: "charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms").  The Court, thus, considers the verdict forms when determining the relevant clauses.   The verdict form lists several questions for the jury to answer, including: (i) whether Rodella "caused" "bodily injury"; and (ii) whether "Rodella used or threatened to use a dangerous weapon."  Redacted Jury Verdict at 1, filed September 26, 2014 (Doc. 127).  Dividing up these clauses into two questions supports

the conclusion that each clause is an individual inquiry into an individual offense.[12]  Furthermore,

the Final Jury Instructions state that Rodella was charged with deprivation of civil rights that

"resulted in bodily injury to M.T. and included the use and threatened use of a dangerous weapon."

Final Jury Instructions, Instruction No. 12 at 13, filed September 26, 2014 (Doc. 130). The Court,

therefore, concludes that two terms from 18 U.S.C. § 242 are relevant to this case: (i) "if bodily

injury results from the acts committed in violation of this section"; and (ii) "such acts include the

use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined

under this title or imprisoned not more than ten years, or both."  18 U.S.C. § 242.

The Court next compares the "scope of conduct covered by the elements of the crime" with

the statute's "'definition of crime of violence.'"  United States v. O'Connor, 874 F.3d at 1151

(quoting U.S.S.G. § 4B1.2(a)). See Mathis v. United States, 136 S. Ct. at 2254 n.4 (stating that the

modified approach adds "a mechanism for making that comparison [between the crime's elements

and the generic offense's elements] when a statute lists multiple alternative elements").   Section

924's element clause defines "crime of violence" as a felony that "has an element [of] the use,

attempted use, or threatened use of physical force against the person or property of another."  18

U.S.C. § 924(c)(3)(A).  First, the Court compares "the use, attempted use, or threatened use of a

dangerous weapon," 18 U.S.C. § 242, with "the use, attempted use, or threatened use of physical

force,"  18  U.S.C.  §  924(c)(3)(A).   The  Court  can  conclude  that  18  U.S.C.  §  242's

dangerous-weapon clause is a predicate offense only if it "'would qualify as a predicate offense in

---

[12]Had the Court instead asked the jury a single question whether they found that Rodella had caused Tafoya to suffer bodily injury and/or used or threatened to use a dangerous weapon, the Court would have conveyed to the jury that unanimity was not required and that causing bodily injury and using or threatening to use a dangerous weapon are two means of committing one element, a distinction on which the Court will elaborate in the next section.

all cases or in none.'" <u>United States v. O'Connor</u>, 874 F.3d at (quoting <u>Descamps v. United States</u>, 570 U.S. 254, 267(2013)).  The Supreme Court counsels district courts engaging in this analysis that "*violent* force -- that is force capable of causing physical pain or injury to another person" <u>United States v. Johnson</u>, 559 U.S. at 140 (emphasis in original) -- is required for a statute to meet 18 U.S.C. § 924(c)(3)(A)'s "physical force" requirement.  The Tenth Circuit has held that assault with a dangerous weapon constitutes physical force under the elements clause: "purposefully threatening or engaging in menacing conduct toward a victim, with a weapon capable of causing death or great bodily harm, threatens the use of 'force capable of causing physical pain or injury' in two different ways." <u>United States v. Ramon Silva</u>, 608 F.3d 663, 670 (10th Cir. 2010)(quoting <u>Johnson v. United States</u>, 559 U.S. at 141).  <u>See</u> <u>United States v. Mitchell</u>, 653 F. App'x at 645. The Court holds that any use of a dangerous weapon under 18 U.S.C. § 242 also threatens the use of violent force that could result in injury.   The Court, therefore, concludes that 18 U.S.C. § 242's dangerous-weapon clause is a predicate offense, because all offenses committed under that clause carry the necessary violent force that 18 U.S.C. § 924(c)(3)(A) requires.

Second, the Court compares "causing bodily injury" with "the use, attempted use, or threatened use of physical force."  18 U.S.C. § 242; 18 U.S.C. § 924(c)(3)(A).  The Court would need to find that every "willful" deprivation of civil rights resulting in bodily injury involves "the use, attempted use, or threatened use of physical force" for causing bodily injury to be a crime of violence.  18 U.S.C. § 924(c)(3)(A).   A corrections officer who willfully deprives a prisoner of medication that results in the prisoner's painless death cannot be said to be engaging in the violent force necessary to meet the "physical force" requirement under 18 U.S.C. § 924(c)(3)(A).   The Court, therefore, concludes that 18 U.S.C. § 242's bodily-injury clause is not a predicate offense for an 18 U.S.C. § 924(c)(3)(A) enhancement.

Although only the "dangerous weapons" clause meets 18 U.S.C. § 924(c)(3)(A)'s physical force requirements, only one alternative needs to meet the physical force requirement. United States v. Trent, 767 F.3d at 1052.  Because the "dangerous weapons" clause is a "crime of violence" under 18 U.S.C. § 924(c)(3)(A), legal background does not foreclose the Court's use of the elements clause.  The Court concludes that, because legal background did not foreclose the elements clause and Rodella does not demonstrate that the Court relied upon the residual clause, historical fact shows that it sentenced Rodella under the elements clause.

### B.   RODELLA'S PREDICATE CRIME QUALIFIES UNDER CURRENT LAW AS A CRIME OF VIOLENCE UNDER THE ELEMENTS CLAUSE.

The Tenth Circuit directs district courts to use the categorical approach when determining whether a prior conviction is a crime of violence under § 924(c) "when the statute of conviction is indivisible -- i.e. when it lacks alternative elements." United States v. Titties, 852 F.3d at 1267. Before 2016, district courts made no distinction between elements and means, see Mathis v. United States, 136 S. Ct. at 2248, and so the Court's inquiry into a statute's divisibility was simpler.   In

2016, the Supreme Court, in <u>Mathis v. United States</u>, distinguished between elements, or

"'different crimes,'" and means, or "'different methods of committing one offense.'"  136 S. Ct.

at 2248 (quoting <u>Descamps v. United States</u> 133 S. Ct. 2276, 2285, n.2).   If the statute lists

alternative elements, then the statute is divisible, and the court should use the modified categorical

approach.  <u>See</u> <u>United States v. Titties</u>, 852 F.3d at 1267.  If, however, the statute lists alternative

means, then the statute is indivisible, and the Court should use the categorical approach.  <u>See</u>

<u>United States v. Titties</u>, 852 F.3d at 1267.  The Supreme Court gives district courts three tools for

determining whether a statute is divisible: (i) the statute's text; (ii) state court interpretation of the

statute; and (iii) the underlying court record.  <u>See</u> <u>United States v. Pam</u>, 867 F.3d 1191, 1206 (10th

Cir. 2017).

The  textual  threshold  question  when  determining  whether  the  statute  lists  alternative

elements or alternative means is whether the alternatives carry different statutory penalties.  <u>See</u>

<u>Mathis v. United States</u>, 136 S. Ct. at 2248 ("Likewise, the statute on its face may resolve the issue.

If statutory alternatives carry different punishments, then under <u>Apprendi</u> [v. New Jersey, 530,

U.S. at 466], they must be elements.").   In this case, the statute carries different statutory penalties

> if bodily injury results from the acts committed in violation of this section or if such
> acts include the use, attempted use, or threatened use of a dangerous weapon,
> explosives, or fire, shall be fined under this title or imprisoned not more than ten
> years, or both; and if death results from the acts committed in violation of this
> section or if such acts include kidnapping or an attempt to kidnap, aggravated
> sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to
> kill, shall be fined under this title, or imprisoned for any term of years or for life,
> or both, or may be sentenced to death.

18 U.S.C. § 242.  The Court, thus, concludes that the statute is divisible into different elements,

not different means, and therefore that the modified categorical approach applies.

Under the new caselaw regarding means and elements, the Court must decide how to divide

up the statute.  See Mathis v. United States, 136 at 2256 (stating that the district court's "first task" is "to determine whether its listed items are elements or means").  Rodella argues that the statute is divisible into only three elements and the United States argues that the statute is divisible into three provisions that list a total of seven elements.  The Court agrees with the United States.  The Court first looks at the text.  See United States v. Abeyta, 877 F.3d 935, 941 (10th Cir. 2017).  The Court determines that the three different statutory penalties split the statute into three provisions based on the three different punishments.  The Court also looks at the surrounding text: there is no question that resulting death, kidnapping, and aggravated sexual abuse are three means of committing a single crime.  The structure of the text therefore suggests that each provision is divisible into different elements.  The Court next looks at state court decisions.  The Court did not find, and neither party offers, a "'state court decision [that] definitively answers the question.'" United States v. Abeyta, 877 F.3d at 942 (quoting United States v. Mathis, 136 S. Ct. at 2256), nor does the Court find this tool relevant in this federal context of a federal statute.  The Court finally examines the prior conviction's record.  The jury verdict shows that the Court, agreeing with Rodella's objection, treated the bodily injury clause and the dangerous weapons clause as separate elements, requiring a finding of unanimity on either clause for a conviction.  See  United States v. Rodella, No. CR 14-2783 JB, 2015 WL 711949, at *30 (D.N.M. Feb. 6, 2015)(Browning, J.)(agreeing with Rodella that the United States' jury verdict form "does not accurately reflect the elements of the charged offense" because "it does not require the jury to find a civil rights violation, a bodily injury, or the use of a weapon before finding him guilty or not guilty").[13]  All jurors had

---

[13]The Court included these interrogatories precisely if anyone wanted to know exactly what part of the statute Rodella violated.  The Final Jury Instructions asked individually whether the jury found beyond a reasonable doubt whether Rodella (i) caused Tafoya to suffer bodily injury; and (ii) Rodella used or threatened to use a dangerous weapon.  Final Jury Instructions at 33.  The

to be unanimous on whether the offense caused bodily injury or the use or threatened use of a dangerous weapon for Rodella to be subject to the clause " shall be fined under this title or imprisoned not more than ten years."  18 U.S.C. § 242.  <u>See</u> Verdict at 1.  If, as in this case, only half the jury thought that the offense caused bodily injury and only the other half thought that the offense involved the use or threatened use of a dangerous weapon, the Defendant would not be subject to the ten-year imprisonment clause.  <u>See</u> 18 U.S.C. § 242; Verdict at 1 (stating that if the jury concludes that Rodella either caused Tafoya to suffer bodily injury or used or threatened to use a dangerous weapon, then the jury was to proceed to the fifth question).  Therefore, each clause is its own element.  If, in contrast, only half the jury thought that the offense caused bodily injury and only the other half thought that the offense involved the use or threatened use of a dangerous weapon and the Defendant was still convicted, the clauses would be means of committing the same

---

Jury Instructions then stated that "If your answer to *both* question 3 or 4 above is no, you must return a verdict of Not Guilty in favor of the Defendant as to Count 1 and Count 2.  If your answer to *either* question 3 or 4 is yes, then proceed to question 5."  Final Jury Instructions at 34 (emphasis in original).  Neither the United States nor Rodella included this instruction in their initial proposed jury instructions.  <u>See</u> United States' Requested Jury Instructions at 18, filed September 10, 2014 (Doc. 60)(not including any instruction beyond "If your verdict on Count 1 is 'guilty,' do you also find beyond a reasonable doubt that the defendant caused M.T. to suffer bodily injury" and "If your verdict on Count 1 is guilty, do you also find beyond a reasonable doubt that the defendant used or threatened to use a dangerous weapon"); Defendant's Proposed Jury Instructions, filed September 10, 2014 (Doc. 63)(asking "Do you find beyond a reasonable doubt that Mr. Rodella caused Michael Tafoya to suffer bodily injury?" and "Do you find beyond a reasonable doubt that Mr. Rodella used or threatened to use a dangerous weapon?," and stating "[i]f you answer no to *either* you must return a verdict of Not Guilty in favor of the Defendant as to Count 1 and Count 2.  If your answer to both question 2.A and 2.B is yes, then proceed to question 3.").  Moreover, the Court deemed the United States' instructions "insufficient" because the United States' "requested instruction does not ask the jury to find beyond a reasonable doubt that Tafoya suffered a bodily injury, or that Rodella used or threatened to use a firearm."  <u>See</u> <u>United States v. Rodella</u>, No. CR 14-2783 JB, 2015 WL 711949, at *22 (D.N.M. Feb. 6, 2015)(Browning, J.).  Because the Court indicated that the jury was required to answer each of these questions, the Court must have concluded that they were elements, and not means of committing an element, because it is not necessary for a jury to dispose of each means of committing an offense.

offense.  See United States v. Rodella, No. CR 14-2783 JB, 2015 WL 711949, at *22 ((stating that

the "bodily injury" and "dangerous weapon" clauses are necessary "element[s]" that must be

included in the jury instructions, and that the jury needs to find "beyond a reasonable doubt that

Tafoya suffered a bodily injury, or that Rodella used or threatened to use a firearm").  The Court,

therefore, concludes that the provision is divisible into a bodily-injury offense and a

dangerous-weapons offense under current law.    Because the Court stated the statutory

enhancement for the dangerous-weapons offense is appropriate under the modified categorical

approach, supra 36, the Court concludes that Rodella's sentence is appropriate under current law.

Rodella argues that the United States cannot take the position that Rodella's § 242

conviction is a crime of violence when it took the position that § 242 is not a crime of violence in

United States v. Ryle.  The United States disagrees, contending that the crime of violence in United

States v. Ryle is a § 242 deprivation of civil rights with acts including attempted kidnapping or

kidnapping, an offense that the United States "consistently" has conceded does not include a

physical force element and, therefore, could have been considered a crime of violence only under

the residual clause.   Response at 18 (citing United States v. Sanford, 779 F. App'x 568, 570 (10th

Cir. 2019)(unpublished)).   The Court agrees with the United States.   Because, as the Court has

discussed, 18 U.S.C. § 242 is a divisible statute, the United States can take a position that one

offense under the statute is a crime of violence under the elements clause and another offense is a

crime of violence under the residual clause.  The Court, therefore, concludes that the United States'

positions are reconcilable.

Rodella argues that the Court should apply the rule of lenity to resolve the ambiguous

statute in his favor.  See Amended Motion at 15.  The Court does not find the statute ambiguous.

Rodella cannot substitute his own standard of review and avoid his burden by asking for lenity.

The Court, thus, declines to apply the rule of lenity to resolve the case in Rodella's favor.

### III.    THE UNITED STATES DID NOT COMMIT A BRADY VIOLATION.

Rodella contends that the United States committed a Brady violation by withholding the 911 call tape,[14] and that he is, therefore, entitled to a new trial. See Motion at 15. Brady requires disclosure only of evidence that is both favorable to the accused and of "material either to guilt or to punishment." Brady, 373 U.S. at 87. When a defendant requests a new trial based on a Brady violation, the defendant must demonstrate that "'(1) the prosecution suppressed evidence, (2) the evidence was favorable to the defendant, and (3) the evidence was material.'" United States v. Rodella, No. CR 14-2783 JB, 2015 WL 711931, at *23 (quoting United States v. Velarde, 485 F.3d 553, 558 (10th Cir. 2007)). To determine that evidence is sufficiently "material" for the Court to grant a new trial on a Brady violation, the Court must decide that there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. at 682. The Court does not see, nor does Rodella present, any differences between the 911 call's recording and the 911 call's transcript that would have altered the outcome.[15] In fact, Rodella's only argument is that, had "the jury had a

---

[14]In his first motion, Rodella states that the United States committed a Brady violation by withholding the 911 call transcript, but he changes the United States' omission to the 911 call recording in his Amended Motion.

[15]Only the United States presents any relevant difference between the 911 call recording and the 911 call transcript. See Answer to Original Motion at 7 ("One would have to listen to the inflection on the recording to discern whether the caller, David Thompson, clearly distinguished whether the person in the car had a gun or whether the putative cop had a gun."). The Court notes that Rodella did not call Thompson to testify at trial for clarification, despite his knowledge that Thompson placed the 911 call. See Answer to Original Motion at 6-8. That Rodella did not call Thompson at trial to seek the clarification the recording may have given undercuts Rodella's argument that this distinction was material to the outcome of that case. The Court understands why Rodella would have made the strategic decision not to call Thompson, who saw unmarked cars and men in plain clothes, to testify that one of the men, likely Rodella, had a gun.

chance to hear the 911 tape or the caller testified as to seeing the motorist with a gun, then a different result, either at guilt or sentencing phases, may have occurred." Motion at 17. Rodella knew, however, that Thompson mentioned a gun, because Rodella had been in possession of the information found in the 911 call recording since August 26, 2014, see Response at 19, but decided to not call Thompson regardless, see Answer to Original Motion at 7. Had Rodella wanted to pursue the allegation that Tafoya had a gun, he could have called Thompson to the stand, called Rodella to the stand, asked Rodella or Rodella, Jr. about the alleged gun, or cross-examined Veronica Quintana, whom Rodella identifies as the 911 dispatcher who handled the call, see Response to Order to Show Cause at 3, filed May 13, 2019 (Doc. 4), about her present sense impressions. Moreover, the Court concludes that it is unlikely that, if Rodella had received the same information in two formats, he would have altered his trial strategy. The Court concludes that the United States did not commit a Brady violation and that Rodella is not entitled to a new trial on this issue's basis.

IV.     **RODELLA IS NOT ENTITLED TO A NEW TRIAL BECAUSE OF INEFFECIVE ASSISTANCE OF COUNSEL.**

Rodella argues that his counsel was ineffective, because his counsel did not investigate or obtain the 911 recording. See Amended Motion at 19. Counsel is not required to obtain or investigate information that they already have in their possession. Moreover, it is objectively reasonable for counsel to omit evidence from a single eyewitness that contradicts other evidence in the case and does not support the defense's witnesses' testimony. See Response to Order to Show Cause at 3. The Court concludes that Rodella's counsel was not ineffective because he did not investigate or obtain the 911 recording.

**IT IS ORDERED** that the Amended Motion to Vacate under 28 U.S.C. § 2255, filed

December 11, 2019 (Doc. 22), is denied and the proceeding is dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Paul D. Mannick
Coppler & Mannick, P.C.
Santa Fe, New Mexico

--and--

Susan J. Clouthier
Cloutheir Law, P.L.L.C.
The Woodlands, Texas

      *Attorneys for the Petitioner*

John C. Anderson
   United States Attorney
Jeremy Pena
   Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

      *Attorneys for the Respondent*